**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

DATA MOUNTAIN SOLUTIONS, INC., et al. )
                                                 )
        Plaintiffs,                 )
                                                  )
v.                                                      )    Civil Action No. _____ _____
                                                  )
                                                  )
GREGG GIORDANO, et al.            )
                                                  )
        Defendants.              )

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

Plaintiffs, Data Mountain Solutions, Inc. ("DMS"), Derek McUmber ("McUmber") and Frederick Hill ("Hill"), by and through undersigned counsel, apply for a temporary restraining order against the defendants, Gregg Giordano, John Thomas and Anthony Watson, as follows:

A. temporarily enjoining the defendants from taking any actions as stockholders or directors of DMS until it is revealed and/or determined who has, or should have, proper shares of stock in that corporation, including temporarily, preliminarily, and permanently enjoining (1) any sales, transfers, or assignments to the defendants of any shares of DMS' stock, and (2) any actions or attempts by any of the Defendants to purportedly update, correct, change, modify, or otherwise alter the corporate books of DMS to cancel, reduce, or increase the shares of DMS stock recorded on the records previously produced by the defendants, as issued and outstanding to any shareholder or prospective shareholder of DMS; and

B. ordering, commanding, mandating and directing the defendants to deposit into the regular (operating) bank account of DMS any and all contract proceeds, checks, drafts, vouchers, income and revenues of DMS or due DMS whether in the possession, custody and/or control of the defendants, or a customer, client or other business relation of DMS,

and to cooperate with the plaintiffs by perform all actions and approve and execute all documents necessary to allow the plaintiffs to (1) continue the ordinary and necessary operations of DMS and (2) pay all reasonable and necessary obligations of DMS which are presently due, or overdue, (3) maintain the business of DMS, including its contractual and support obligations under DMS's contract with Native Technologies, Inc. ("NTI") and existing employment and consulting contracts related to existing business of the Corporation; and

C. ordering, commanding, mandating and directing the defendants to immediately pay to the plaintiffs those sums that are due the plaintiffs for services performed for, on or behalf of DMS and/or its contract with NTI; and

D. temporarily, enjoining any transfer, sale, liquidation, or other disposition of any property, business, business opportunity or other asset of DMS, without an express order of this Court through Motion made upon reasonable notice to all parties and all shareholders of DMS; and

Immediate and irreparable injury, loss and damage will result to the plaintiffs if the relief sought herein is not granted and the status quo maintained. It clearly appears from the specific facts shown by the Verified Complaint that the defendants are currently making efforts to control all of the assets and property of DMS, thus endangering the Corporation's ability to remain in business, all for the obvious purpose of converting Corporate assets to the individual defendants. Additionally, it appears that the defendants have made efforts and are continuing to make immediate efforts to irreparably deprive the plaintiffs of their rightful stock holdings in DMS, the value of the assets of the Corporation and the value of substantial business opportunities which the defendants, by their control of the stock of the Corporation could manipulate for their own benefit to the detriment of all shareholders, including the plaintiffs, McUmber and Hill.

In support of this Application for Temporary Restraining Order, the plaintiffs respectfully refer this Honorable Court to the Verified Complaint with Exhibits, and the Memorandum of

Points and Authorities in Support of Plaintiff's' Application for Temporary Restraining Order and Motion for Preliminary Injunction, all filed simultaneously herewith.

WHEREFORE, the plaintiffs pray for an order, as follows:

1. granting their Application for a Termporary Restraining Order on the terms and conditions set forth in this Application, the Verified Complaint filed herein and in the Memorandum of Points and Authorities filed in support of this Application; and

2. granting an expedited hearing on the plaintiffs' Motion for a Preliminary Injunction and for a declaratory judgment; and

3. for such other and further relief as may be just and proper

Dated:  September 27, 2006                    HUGHES & BENTZEN, PLLC

By: _____

Philip J. McNutt
Federal Bar No. MD08555
DC Bar No. 491258
1100 Connecticut Avenue, NW
Suite 340
Washington, D.C.  20036
Tel: (202) 293-8975

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

DATA MOUNTAIN SOLUTIONS, INC., et al.  )
                                       )
        Plaintiffs,                 )
                                       )
v.                                       )    Civil Action No. _____
                                       )
                                       )
GREGG GIORDANO, et al.            )
                                       )
        Defendants.             )

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs, Data Mountain Solutions, Inc., Derek McUmber, and Frederick S. Hill, Jr.,
by their attorneys, Hughes & Bentzen, PLLC, pursuant to, *inter alia*, Fed. R. Civ. P. 65(b) &
Local Civ. R. 5.1, 7, 11.2 & 65.1, submit the following Memorandum of Points and
Authorities in support of their Application for a Temporary Restraining Order and Motion
for a Preliminary Injunction:

I. SUMMARY:

      The Plaintiffs are seeking injunctive relief to prevent the defendants from seizing
control of the plaintiff corporation, Data Mountain Solutions, Inc. ("DMS" or the
"Corporation"), in violation of the Shareholders Agreement executed by the shareholders
holding approximately 90% of the Corporation and the Corporation's By-laws. Presently,
the Defendants have failed and are refusing to turn over the originals of DMS' stock
registry, stock transfer, and other corporate books and records in their possession, despite
repeated recent demands therefor from the Plaintiffs. At this immediate moment, the
Defendant have threatened to use, and are in sole possession poised to use, DMS' stock
registry and stock transfer books against the individual Plaintiffs by eliminating most of
Plaintiff Hill's shares as having been purchased by DMS, while leaving untouched the

shares of DMS' stock in the hands of Defendants Giordano and Watson that they allege were previously swapped back to DMS in exchange for the cash and other corporate assets discovered taken from DMS by those Defendants.

The Plaintiffs are also attempting to prevent the collapse of the Corporation's business due to the seizure by the defendants of the income and receipts of the Corporation, thus jeopardizing the Corporation's primary source of revenue, its subcontract with Native Technologies, Inc. ("NTI") to provide the sole email platform for all federal government emails.

The Plaintiffs seek temporary and preliminary injunctive relief because the plaintiffs are threatened with immediate and irreparable harm. The defendants are withholding from DMS funds necessary for the immediate and continuing operations of DMS. Without those funds, DMS will be unable to continue its business. That business includes the sole platform for all email traffic for all federal agencies and governmental entities and their personnel. The defendants are in the process of attempting to convert their minority stock ownership into a majority interest in DMS, in direct violation of the by-laws of the Corporation and contrary to the express provisions of a Shareholders Agreement executed by McUmber, Hill, Giordano and Watson. The defendants intend to use their control of the corporation's stock to convert the business and assets of the Corporation for their own use, to the detriment of all other shareholders, including the plaintiffs. Without injunctive relief, the plaintiffs will be unable to operate the business of the Corporation and will be unable to protect the assets of the Corporation from further conversion, destruction and disbursal by the defendants.

2

A recitation of the specific events leading up to this Application for Temporary Restraining Order and Motion for Preliminary Injunction[1], and the reasons why injunctive relief such should be granted, as requested, follows.

## II. BACKGROUND:

The individual parties to this action, plaintiffs, McUmber and Hill, and defendants, Giordano and Watson, are the founding shareholders of DMS and the owners, collectively of as much as 90% of the issued and outstanding stock of DMS[2]. At the conception of the Corporation, the founding shareholders entered into a Shareholders Agreement, the purpose of which was to assure that, without agreement of the Shareholders, no one shareholder could acquire a disproportionate share of the ownership of the Corporation. The Shareholders Agreement was dated June 2, 2003 and was executed by and among McUmber, Watson, Hill and Giordano (the "Shareholders Agreement"). *See* Shareholders Agreement, Exhibit 2, at 1.

Under the Shareholders Agreement the parties agreed that the equitable allocation of ownership in DMS among the founding shareholders would be "one-fourth owned by each." The founding shareholders further agreed that it was essential to maintain the same ownership proportions among those four shareholders. *See* Shareholders Agreement, Exhibit 2, at para. 12. Accordingly, the parties agreed that no Shareholder, "without the

---

[1]Pursuant to Fed. R. Civ. P. 65(b)(1) & Local Civ. R. 11.2, the facts recited herein are supported by the individual Plaintiffs' verifications of such facts, under oath, as set forth in Plaintiffs' verified Complaint filed simultaneously herewith (the "Verified Complaint"). The Verified Complaint is incorporated by reference as if fully set forth herein. All Exhibits referenced in this Memorandum are attached to the Verified Complaint, and are likewise incorporated herein by reference.

[2]Because of stock transactions that the Plaintiffs believe were agreed by all parties, some of the stock interest of Hill and all of the stock interest of Watson were bought by DMS and are now treasury stock of DMS. Thus the stock interests of the parties and their percentage of the total stock in the Corporation may be less than 90%.

3

prior written consent of **all** the Shareholders" may directly or indirectly sell, assign, mortgage, hypothecate, transfer or otherwise voluntarily or involuntarily dispose of **any** shares of DMS stock owned by him. *See id.*, at para. 3(a)(emphasis added).  The Shareholders Agreement further provides that any unauthorized disposition of shares "shall be null, void and without effect" as against the Corporation and the other Shareholders. *See id.*, at para. 4(e) (emphasis added), and para. 3(a), respectively.

Despite the express language of the Shareholders Agreement and the absence of authority or approval from the Corporation, Giordano issued and negotiated a check payable to "Cash", in the amount of $40,000, and issued another check in the amount of $20,000, both **out of the DMS bank account  "starter-kit."** The checks were withdrawn for the purpose of purchasing cashier's checks in like-amounts.  Defendant Giordano, a minority shareholder and the corporate secretary of DMS, converted and misappropriated the $60,000 he took without permission or authority from the DMS bank account and used those funds as part of a scheme whereby he attempted to acquire, personally, the DMS stock of defendant Watson[3], such that  Giordano now claims that he is the majority shareholder and thereby in "control" of DMS. That stock, pursuant to the agreement of the shareholders and the terms of the Shareholders Agreement, was to be acquired by the Corporation and returned to the Treasury of the Corporation.  All of Giordano's actions, even if they were otherwise valid, were in direct violation of the terms and conditions of the Shareholders

---

[3] The Corporation and the founding shareholders did approve a transaction with defendant, Watson, whereby Watson agreed to convey  his shares of stock in DMS to the treasury of DMS in exchange for cash of $28,406, plus the source code, logo and other rights to the website platform and related assets known as "SecuriCabinet," along with other consideration.  This transaction did occur, and consideration, in the form of cash and the SecuriCabinet assets and property, was transferred to the defendant, Watson, such that Watson's shares of DMS stock have already been transferred back to DMS' treasury, and thus could not have been acquired by Giordano.

Agreement, which mandates that the four founding shareholders shall continue to share an equal allocation of stock ownership. The Shareholders Agreement also required that **all** the shareholders give their prior written consent to any stock transfer between or among DMS shareholders.

Using his wrongful reasoning that he is now majority owner of NTI and allegedly now "controls" the NTI contract, Giordano has intercepted and now holds substantial payments from NTI that are intended for and payable to plaintiffs DMS and McUmber. According to the agreements of the parties, the NTI income is (or at least should be) deposited into the DMS bank account and then a portion of that income is disbursed to Giordano and to McUmber, for services to DMS under the NTI contract. Those payments were approved by the shareholders and directors. However, presently, Giordano is collecting the checks. They are not being deposited into the Corporation's account and have not been for at least three months. Moreover, although Giordano has apparently paid himself the amounts due each month under the parties' agreements, no payments have been deposited into the Corporation's account and no payments have been made to McUmber.

DMS' stock registry, stock transfer books, and similar corporate record books are in the possession of defendant Thomas and Luman, Lange, Thomas & McMullen , his law firm ("LLTM"), who have already taken shares of DMS stock without any record of authorization or approval. The shares were allegedly issued to Thomas/LLTM as payments for legal services rendered during time-periods concerning which they have denied providing **any** such services.

Despite demand from the Plaintiffs, McUmber and Hill, Thomas and LLTM have failed and refused to turn over the original corporate books and records in his/its possession. Furthermore, the limited copies which were provided after nearly a month of requests and

5

demands are incomplete, representing only a portion of the records of which the Plaintiffs have knowledge.

Giordano and Thomas have threatened to use, and are in sole possession poised to use, DMS' stock registry and stock transfer books against the plaintiffs by eliminating most of Hill's shares as having been purchased by DMS, while leaving untouched the shares of the Defendants' stock that were allegedly purchased by DMS through transfers of valuable consideration -- including cash and other corporate assets such as "Secure-a-Cabinet" -- to the Defendants, Giordano and Watson.

It is clear from the failure to produce the originals of any corporate records and the failure to produce copies of all of the records that the defendants are hiding what they have already done and are now planning to create changes to the original corporate documents in their possession.

The retention of the original documents, and presumably the failure to produce copies of all originals, were done on the orders of DMS' corporate secretary, Giordano, who also stands accused of concealed self-dealing with the assets and stock of DMS. To worsen matters, Giordano has just issued orders to Thomas/LLTM to "correct", change, modify, or otherwise wrongly alter the corporate books so that Giordano emerges as the majority shareholder of DMS, to the detriment of all other DMS shareholders, including the plaintiffs herein.

Thomas apparently has or will again follow Giordano's orders by taking, in Thomas' words: "actions" - which will cancel Hill's certificate(s) for his DMS stock shares, while leaving intact Watson's shares that Giordano now claims he owns. By such scheme, Giordano has already claimed that he stands, and he will emerge on corporate records, as the majority or "controlling" shareholder of DMS, thereby able to condone and dictate

6

payments to the defendants out of the remuneration being received on account of DMS' contracts with it clients -- including the substantial sums being paid under the subject DMS contract with NTI – all without having to spend **any** of his personal finances. The result will be the ultimate leveraged buyout, without any of Giordano's own money and without approval of the Corporation or its shareholders, including the plaintiffs herein.

Plaintiffs therefore request that this Honorable Court preserve the status quo as existent before the aforesaid predicate bad acts of defendants: namely, to temporarily, preliminarily, and permanently enjoin any actions of the Defendants as stockholders or directors of DMS until it is revealed and/or determined who has, or should have, proper shares of stock in that corporation, including temporarily, preliminarily, and permanently enjoining any sales, transfers, or assignments to Giordano of any shares of DMS' stock claimed as once-owned by Watson, and any actions or attempts by any of the Defendants to purportedly update, correct, change, modify, or otherwise alter the corporate books of DMS to cancel or reduce the shares of DMS stock recorded as issued and outstanding to Hill or McUmber. Such requested and appropriate equitable relief should also include a mandatory injunction ordering the disgorge from and transfer to the plaintiffs of any and all contract proceeds, checks and other payments due the plaintiffs but that are being wrongfully retained or withheld by the defendants, and an appropriate Court-order to temporarily, preliminarily, and permanently enjoin any wasting, misappropriation and/or the selling, liquidation or disposing of any of the Companies' assets by any of the defendants, pending final disposition of this case.

The Shareholders Agreement provides that Court-Ordered injunctive relief is an appropriate remedy for resolving disputes with DMS' shareholders, which disputes and

contractually-agreed injunctive remedy are respectively recited above and requested below. *See* Shareholders Agreement, at 10, para. 10(b).

III.    ARGUMENT:

A.    **The Plaintiffs Have Fulfilled the Requisite Four-Pronged Standard For Granting  Preliminary Injunctive Relief.**

The case law in this District (and uniformly throughout the country)sets forth a four-pronged standard for granting preliminary injunctive relief -- i.e., (1) there is a substantial likelihood that plaintiff will succeed on the merits; (2) that the plaintiffs will suffer irreparable harm if the injunction is not granted; (3) that other interested parties will not suffer substantial harm if the injunction is granted; and (4) the public interest will be served by the issuance of the requested orders *See Sea Containers, Ltd. v. Stena, AB,* 281 U.S.App.D.C. 400, 890 F.2d 1205, 1208 (D.C. Cir. 1989);  *Petroleum Jobbers Association v. Federal Power Commission*, 104 U.S. App. D.C. 106, 259 F.2d 921, 925 (D.C. Cir. 1958); *Washington Metropolitan Transit Commission v. Holiday Tours, Inc.*, 182 U.S. App. D.C. 220, 559 F.2d 841 (D.C. Cir. 1977).

As set forth herein, the plaintiffs are clearly entitled under applicable law to the temporary and preliminary injunctive relief they request.

B.    **There Is Substantial Likelihood That The Plaintiffs Will Prevail On The Merits.**

1.    Defendants Have No Basis To Withhold Corporate Documents and Funds from the Plaintiffs

By now asserting that he is the majority or controlling shareholder of DMS, Giordano has, and will continue to, dictate the terms and conditions of, the work being performed upon, all communications related to, and all of the funds to DMS from its multi-million dollar contract with NTI and from its other contracts, whether presently in existence or prospective.  The plaintiffs, Hill and McUmber, are not only substantial minority

8

shareholders of the Corporation (at least 33%), they are also officers and directors of DMS. Hill is the President and McUmber is the CEO of the Corporation.

The equitable relief prayed herein, related to the stock issuance, stock books and records and receipts of the Corporation, is appropriate and recognized by the Courts and by the parties' own Shareholders Agreement. Indeed, the Shareholders Agreement -- which forms the base of the plaintiffs grounds for much of the relief sought herein -- is a commonly used legally enforceable agreement binding upon the parties. *See, generally, Carr America Realty Corp. v. Kaidanow*, 355 U.S.App. D.C. 180, 321 F.3d 165 (D.C. Cir. 2003).

The defendant, Giordano, is the corporate secretary of DMS. He is not the treasurer or bookkeeper. He has no authority to retain any funds of the Corporation outside the Corporation's bank account(s). Yet, he has stolen and converted over $150,000 of the Corporation's funds, first to purchase shares in the corporation in violation of the Shareholders Agreement and the By-laws of the Corporation; and second, to threaten the business of the Corporation and the livelihood of the plaintiff, McUmber, all without approval or authority.

> 2. <u>Defendants Cannot Manipulate the Ownership and Control of the Corporation in Violation of the Stockholders' Agreement the Corporation's By-laws, and Previous, Valid Actions of the Corporation.</u>

The plaintiffs are entitled to a declaratory judgment adjudging the relative rights of the parties under the Shareholders Agreement on an expedited basis. Under the Federal Declaratory Judgment Act, 28 U.S.C. §2201, the court may issue declaratory judgments if two prescribed tests are met: (1) an actual controversy exists; and (2) there exists a separate basis for federal jurisdiction. *See Maryland Casualty Co. V. Pacific Coal & Oil Co.,* 312 U.S. 270 (1941)

A well-reasoned declaratory judgment will focus the parties' dispute and save judicial resources in the long run. Accordingly, the plaintiffs seek a Declaratory Judgment that the plaintiffs can enforce those provisions of the Stockholders' Agreement which prevent the seizure by Giordano, or other defendants of a majority stock interest in the Corporation, or any additional stock interest in the Corporation, and that the funds from the Corporation's contracts should be deposited into the Corporation's account for the purpose of conducting the business of the Corporation, paying the obligations of the Corporation and, to the extent applicable, equitably distributing them to the shareholders, as their interests are found by this Court. This Court is plainly empowered to issue such a declaratory judgment concerning the rights and liabilities of the parties to Shareholders Agreement and the various contracts and rights established by the By-laws and other agreements among the parties. *See* Fed. R. Civ. P. 57, referencing 28 U.S.C. §2201. *See also, Maryland Casualty Co. V. Pacific Coal & Oil Co., supra* in which the court stated:

> the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Id.*, at 273.

Courts have held that stockholders' derivative suits fit within the framework of the Federal Declaratory Judgment Act. *See, e.g. Motor Terminals, Inc. V. National Car Co.*, 92 F.Supp. 155, (D.Del. 1949), *aff'd* 182 F.2d 732 (3rd Cir. 1950).

As stated above, the plaintiffs are entitled to a declaratory judgment, on an expedited basis, and corresponding injunctive relief related to the stock records, stock issuance and receipts and disbursements of the Corporation. The defendants are simply not entitled to seize control over the Corporation and its assets and property without first determining the various rights and obligations of the parties to this action and then following the proper

10

corporate requirements and the express dictates of the Shareholders Agreement. Therefore, the plaintiffs are entitled to an expedited hearing on both their request for injunctive relief and their Declaratory Judgment Count of the Verified Complaint.

C.    **The Plaintiffs Are In Danger Of Suffering Irreparable Harm During The Pendency Of The Action.**

The Plaintiffs are faced with immediate and irreparable damage to, or actual loss of, the Corporation's primary contract (with NTI), loss of funds necessary to operate the Corporation on a continuing basis and loss of business opportunities by virtue of the deadlock over control of the Corporation and the withholding by the Defendants of the necessary corporate documents and assets, namely, income from the NTI contract, and/or other sources.

The defendants' continuing systematic campaign to destroy the ability of the plaintiffs to assert their rights as owners, officers and directors of the Corporation has already resulted in the conversion of contract sums due McUmber, as well as essentially all of the income due the Corporation from its NTI contract. In the meantime, no sums due the defendants have been withheld or converted. Moreover, with each passing day that Giordano remains in control of the assets and the books of the Companies he continues to drain the Corporation of funds and business opportunities, all for the defendants' own benefit and to the detriment of the shareholders, including the plaintiffs.

All these ploys are obviously aimed to "clear the field" for Giordano to control all of the assets of the Corporation, assets which were developed by McUmber for the benefit of the Corporation and all its shareholders, not just the defendants. One could not imagine a more clear danger of irreparable harm, while this case winds its course, than that already undertaken by the defendants, that is,  the seizure of a substantial majority of the stock of the Corporation and all of the Corporation's assets and property, including its valuable contract

11

rights and software source code, all without any authority, in direct contradiction of the Shareholders Agreement and without the defendants spending a dime of their own money.

D.    **Greater Harm Will Result To the Plaintiffs From Denial Of The Requested Injunction Than Will Result To Defendants From Grant Of The Injunction.**

The requested injunction  seeks to prevent the systematic destruction of the rights of the plaintiff, shareholders and the Corporation, DMS, due to the concealment, conversion, manipulation and fraud of the defendants.  However, if the injunction is granted nothing more will happen than that the company will continue to do business, will continue to seek additional business opportunities and its current obligations, including those to Giordano and McUmber, will be paid.  In short, no harm will come to the defendants by the issuance of the injunction.  Even if their stock rights are different than those alleged by the plaintiffs, such rights will only be stayed for a short enough time to orderly determine those rights, while still protecting the rights of all shareholders, including the plaintiffs and all minority shareholders. The Corporation's  ability to <u>lawfully</u> do business should be unaffected by the granting of the requested injunction, whereas the plaintiffs' substantial interest in DMS is being diminished by the defendants on an almost daily basis, and there is an immediate danger of loss of control of the Corporation and loss of Corporate assets and sums due the plaintiff, McUmber, unless injunctive relief is timely granted.  Furthermore, there is immediate risk to the Corporation's operations not the least of which risk is to the entire federal government email network platform of which the Corporation's software, hardware and source code is an essential part.

After defendants' predicate bad acts, these parties are not on any kind of equal footing. Giordano controls the Corporation's receipts and thereby its continuing business but is obviously holding the receipts as ransom for the blackmail of the plaintiffs to recognize

12

Giordano as the *de facto* "president" and majority stockholder of the Corporation, all outside the express language of the Shareholders Agreement. As a result of Giordano's unlawful acts, the plaintiffs are forced to stand by while the defendants control income and assets that should be owned and controlled equally by Giordano and each of the plaintiffs,[4] and used for the benefit of all shareholders, not just the defendants.   This Honorable Court should enjoin defendants as requested, until trial of the plaintiffs' claims against them.

Before the parties rights are finally determined herein,  there is little likelihood of any harm to the defendants because all the assets of the Corporation will be preserved for the shareholders to the full extent of their actual interest in the Corporation and any funds currently due by contract with Giordano will be paid.  It is substantially more likely that the plaintiffs will preserve the assets of the Corporation rather than the defendants, who have directly or indirectly converted substantial assets of the Corporation to their own use and have deliberately withheld contractual payments from the plaintiff, McUmber.

E.     **The Public Interest Will Be Served By The Issuance Of The Requested Injunction.**

This is hardly the first time that two (or more)  businessmen have associated with the hope of mutual benefit, only to come to a point where they can no longer work together. Allowing the defendants to continue their tactics inequitably makes the formations of businesses jointly a dangerous and foolhardy proposition.

The public interest is best served if, upon reaching a point of dispute the founding corporate parties can expect the equal control and fair division of the ownership, property and assets that existed at the outset of their relationship.  It is this essential fairness that is being violated by the actions of the defendants and the need for this fairness is why the

---

[4]Subject to the determination of Hill's actual interest which could be as little as 8% of the Corporation.

public interest is served by the granting of the requested injunction, protecting the plaintiffs' rights in the joint business assets, property rights, contract rights and business opportunities.

Finally, the public interest is served by sending a Court- message that one's life invested in a company and the livelihood flowing therefrom cannot be "withheld" to coerce settlement on the terms of the remaining principal who (illegally) controls the funds, contracts and assets. Defendants' ideas that monies due and owing an employee can be withheld for any reason, let alone for the obvious blackmail employed here, and that his stock ownership can be irreparably impaired and diluted in direct violation of agreements and statutes, should be dealt with severely in equity. The public interest mandates the issuance of the requested injunctions.

### F. **Nominal or No Bond Should Be Required of the Plaintiffs.**

By illegally controlling the funds of the plaintiff Corporation and the income (a portion of which is) due the Plaintiff, McUmber, the defendants have essentially waged a war of attrition on the plaintiffs attempting to compel a situation in which Giordano is the controlling stockholder of DMS, without the expenditure of any of his own funds, and by the sole use of misappropriated Corporate Funds.

Applicable case law interpreting the injunction security provisions of Fed. R. Civ. P 65(c) holds that although such bonding requirement is phrased in mandatory terms, the exact amount thereof is always left to the trial Court's discretion. *See Federal Prescription Service v. American Pharmaceutical Association*, 205 U.S. App. D.C. 47, 636 F.2d 755, 759 (D.C. Cir. 1980), citing *Urbain v. Knapp Bros. Manufacturing Co.*, 217 F.2d 810, 815-6 (6th Cir. 1954) and *International Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974), cert. den. 417 U.S. 932 (1974). *See also L'Enfant Plaza Properties, Inc. v. Fitness Systems,*

*Inc.,* 354 A.2d 233, 237 (D.C. 1976)(Commenting on SCR-Civil 65 ©)[5].  And, where requiring a plaintiff to post a bond would serve no other purpose than to penalize the plaintiff, bond may be dispensed with by the Court.  ***See International Controls, supra,*** and ***L'Enfant Plaza Properties, Inc. v. Fitness Systems, Inc.****,* 354 A.2d 233, 237 (D.C. 1976). In the case of ***Hoechst Diafoil Co. v. Nan Ya Plastics Corp.****,* the Fourth Circuit Court of Appeals briefly discussed the history of Fed R. Civ. P. 65 © noting that the amount of the bond is well within the discretion of the trial court and that many courts have approved no bond or a nominal bond where there is little likelihood of harm to the defendants.  174 F.3d 411, 421 (4th Cir. 1999).  Although the ***Hoechst*** Court limits the Court's discretion to "a nominal bond," most circuits agree that, in cases in which little or no harm can be shown, no bond amount is necessary and, therefore, no bond is required.  ***See, e.g., Federal Prescription Service v. American Pharmaceutical Association****, supra, **Urbain v. Knapp Bros. Manufacturing Co., supra***, and ***International Controls Corp. v. Vesco, supra***.

        In this case, because the plaintiffs have been deprived of money and control of their business, and, more particularly, because the defendants will suffer no harm, even if the temporary restraining order and/or preliminary injunction is granted, requiring the plaintiffs defendants to post a bond in this matter would simply penalize them further, and no bond should be required.  Thus, plaintiffs respectfully requests that this Honorable Court use its discretion and dispense with, or set a nominal, bond for issuance of the temporary or preliminary injunctive relief needed by the plaintiffs. ***Id.**.* Simply put, the plaintiffs should not have to post bond in order to stop defendants' from taking the stock, business, property and assets to which the plaintiffs have an absolute right and documented interest in those assets and property.  To put it in a slightly different context, the plaintiffs are seeking

---

[5]SCR- Civil 65 (c) is identical to Fed. R.Civ. P. 65(c).

injunctive relief to preserve the assets of the Corporation and to preserve the Corporate books and records. The preservation of the assets, funds, books and records, is beneficial to all shareholders and parties, not just to the plaintiffs. No funds or property (other than obvious Corporate assets) is sought from the defendants and no money or property will be removed from them (other than obvious Corporate assets) except upon further proceedings before this Court. Therefore, there is no harm to the defendants and no bond should be required.

III. CONCLUSION:

Based on the matters and facts set forth above, and the allegations of the Verified Complaint and the exhibits attached thereto, the plaintiffs respectfully submit that they are entitled to a temporary restraining order preserving the status quo as it should be extant after the transaction consummated with the defendant, Watson, and a preliminary injunction thereafter until trial herein on the merits.

An appropriate proposed Temporary Restraining Order and proposed Preliminary Injunction are attached.

Dated: September 27, 2006                    HUGHES & BENTZEN, PLLC

By:  _____

Philip J. McNutt
Federal Bar No. MD08555
DC Bar No. 491258
1100 Connecticut Avenue, NW
Suite 340
Washington, D.C.  20036
Tel: (202) 293-8975

Attorneys for Plaintiffs

16

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

DATA MOUNTAIN SOLUTIONS,           )
     INC., et al.                                )
                          )
          Plaintiffs,                          )
                          )
v.                                                  )    Civil Action No. _____
                          )
                          )
GREGG GIORDANO, et al.                 )
                          )
          Defendants.                       )
                          )

## LOCAL CIVIL RULE 65.1 CERTIFICATE

I HEREBY CERTIFY that on September 27, 2006, at approximately 3:50 p.m., I gave "courtesy" copies of Plaintiffs' Application for a Temporary Restraining Order, Plaintiffs' Motion for a Preliminary Injunction, Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Application for a Temporary Restraining Order and Motion for a Preliminary Injunction, the proposed Temporary Restraining Order and proposed Preliminary Injunction Order therewith, together with the plaintiffs' Complaint and all Exhibits thereto, to: Defendant Gregg Giordano by hand-delivery to his attorney who has heretofore purported to represent said Defendant in the matters *sub judice* and whose name and address are as follows:

> David L. Bledsoe
> Attorney at Law
> 300 North Washington Street
> Suite 700
> Alexandria, VA 22314;

and to Defendant Anthony Watson, by electronic mail (e-mail) and by overnight hand-delivery (Federal Express) , to his last known address, as follows:

> Anthony Watson
> 303-F Holden Green
> Cambridge, MS 02138
> email: "aj_watson@yahoo.com";

and to defendant John W. Thomas by hand-delivery to the following address:

John W. Thomas
Luman, Lange, Thomas & McMullen, LLP
1660 L Street, N.W.
Suite 506
Washington, DC 20036.

Philip J. McNutt, Esquire
MD08555
DC Bar No. 491258
HUGHES & BENTZEN, PLLC
1100 Connecticut Avenue, NW
Suite 340
Washington, D.C. 20036
Tel: (202) 293-8975

<u>Attorneys for Plaintiffs</u>

2