IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DATA MOUNTAIN SOLUTIONS, INC., et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No 1:06CV01666 |
| | ) | Judge Paul L. Friedman |
| GREGORY GIORDANO, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### DEFENDANT JOHN W.THOMAS'S RESPONSE TO
### PLAINITFFS' MOTION FOR PRELIMINARY INJUNCTION

COMES NOW Defendant, John W. Thomas, and in response to the Plaintiffs' Motion for Preliminary Injunction, states as follows:

1. This matter presents to the Court a dispute between two sets of shareholders/officers of the Plaintiff corporation, Data Mountain Solutions, Inc. (DMS)—specifically, Frederick Hill and Derek McUmber on one side, and Gregory Giordano and Anthony Watson, on the other.

2. Defendant Thomas's only connection to this lawsuit is that he served as counsel for DMS, through Thomas's law firm, Luman, Lange, Thomas & McMullen, LLP (LLTM), and previously through LLTM's predecessor law firm, Luman, Lange & Wheeler. Further, the only issues raised in the Complaint and in the Motion for Preliminary Injunction which pertain to Thomas relate to his possession and handling of DMS's corporate books.

3. As Thomas represented during the course of the telephone conference with the Court held on October 6, 2006, Thomas has taken no actions regarding the corporate books within the past several months (other than providing counsel for all of the parties

with copies of such corporate books and records), and Thomas has further indicated that he will take no such actions regarding DMS's corporate books until either directed to by Court Order or by a written agreement executed by all of the parties.[1] Accordingly, Thomas does not object to the terms of the Preliminary Injunction sought by the Plaintiffs, and therefore does not oppose the Court's granting such relief.

4.    Thomas contends, however, that there are factual allegations contained in Plaintiffs' Motion for Preliminary Injunction and in the Memorandum of Points and Authorities in Support thereof that are incorrect such that Thomas provides this Response to contest these claims to correct the record in this matter.

5.    <u>Issuance of Stock to LLTM</u>:  Plaintiffs allege that LLTM has "taken shares of DMS stock without any record of authorization or approval."  See, Plaintiffs' Memorandum in Support, at 5.  It is true that on June 2, 2004, LLTM received 52 shares of DMS stock.  That distribution to LLTM, however, was fully authorized and approved by DMS.  On or about April 2, 2002, DMS entered into an engagement agreement with LLTM's predecessor firm, Luman, Lange & Wheeler, which specifically provided that DMS would pay a portion of its legal fees in cash and a portion in shares of DMS stock. This engagement agreement (a true copy of which is attached as Exhibit 1 hereto) was executed on behalf of DMS by Plaintiff, Frederick Hill, as President of DMS, and by Defendant, Anthony Watson, as Vice-President of DMS.[2]  Pursuant to this engagement agreement, on or about September 4, 2003, DMS distributed 140 shares of stock to

---

[1] Thomas has further suggested his willingness to interplead the DMS corporate books and to turn such books over to the Court until the parties' dispute is resolved.

[2] The engagement agreement was executed on behalf of Luman, Lange & Wheeler by "John Thomas, by CW"—CW stands for Christopher Wheeler, a former partner in Luman, Lange & Wheeler, and upon information and belief, a current attorney in the firm of Hughes & Bentzen, counsel for the Plaintiffs in this matter.

Luman, Lange & Wheeler, as partial payment of legal fees. Subsequently, on or about June 2, 2004, pursuant to the same engagement agreement, DMS distributed 52 shares of DMS stock to LLTM, as partial payment of legal fees.[3] DMS, and its officers and shareholders, were made aware of these distributions, and at no time prior to the dispute arising between the parties did DMS or any of its shareholders or officers ever contend that these distributions made pursuant to DMS's engagement agreement with Luman, Lange & Wheeler were not authorized and approved.

6.   <u>Legal Services provided by Thomas to DMS</u>: Plaintiffs further suggest that Thomas and LLTM "denied providing **any** such [legal] services" (emphasis in original) during the time period in which DMS incurred legal fees with LLTM and in which the DMS stock certificate was issued. See Plaintiffs' Memorandum in Support, at 5. Not only is this statement incorrect, it is a direct mischaracterization of Thomas's written statement contained in a letter that Plaintiffs have attached to and included in Plaintiffs' Complaint. See Plaintiffs' Complaint, Exhibit 7. In that letter, Thomas states: "After Mr. Wheeler left our firm, Luman, Lange, Thomas & McMullen, LLP, <u>had no significant contacts</u> with the Corporation for nearly three years." Complaint, Exhibit 7, at 2 (emphasis added). Thomas never stated, in writing or orally, that LLTM had not provided **any** legal services during the relevant time frame. Indeed, during the time period from October 2003 through February 2006, a period of nearly two and one-half years, LLTM billed DMS a total of 4.25 hours for legal services. Again, an exhibit

---

[3] At the same time as the distribution of DMS stock to LLTM, DMS also distributed 42 shares of stock to Christopher Wheeler separately because he had been a partner in the predecessor firm Luman, Lange & Wheeler at the time that DMS incurred some of their legal fees, and Mr. Wheeler was entitled to a portion of the fees received. Although DMS is disputing whether the stock distribution to LLTM was authorized and approved (which it was), it has not disputed the stock distribution to Mr. Wheeler, which was part of the same transaction.

3

attached to Plaintiffs' own Complaint—Exhibit 8 consisting of three billing statements from LLTM to DMS, and specifically the bill dated June 23, 2006—confirms Thomas' contention. The paucity of work performed related to communications Thomas received pursuant to his role as registered agent from DMS, and the contacts and the time spent were not "significant" during this two and one-half year period.

7.    Hiding Records.    Plaintiffs allege that Defendants are hiding corporate records or evidence of "what they have already done." See Plaintiffs' Memorandum in Support, at 6. Having provided full sets of copies of DMS' corporate records to all parties, Thomas denies that he is hiding any documents, and further denies that he has taken any action that has prejudiced or affected in any way the parties' rights or interests.

8.    Cancelling Plaintiff Hill's Shares.    In May 2006, Plaintiff Hill provided Thomas with copies of two stock sale agreements between Hill and DMS which set forth the terms of two transactions in which Hill sold a portion of his DMS stock back to the corporation. These agreements, attached hereto as Exhibit 2, were the basis for Thomas's conclusion that Hill had sold a portion of his DMS stock back to the corporation and further for Thomas's conclusion that it would be appropriate to memorialize these transactions by recording them in the DMS stock transfer book and by issuing a new stock certificate to Hill reflecting his reduced number of shares in the corporation. Accordingly, when Plaintiffs insinuate that Thomas proposed to make these changes in the DMS corporate records at Defendant Giordano's "order" (see Plaintiffs' Memorandum in Support, at 6), Thomas specifically denies such allegations. Further, Thomas notes that, on several occasions after the current controversy began, Thomas refused to make these changes to the DMS corporate records even after Defendant

Giordano had made a request that Thomas do so because Plaintiffs objected to Thomas's taking such actions.

WHEREFORE, Defendant John Thomas has no objection to the entry of a Preliminary Injunction in this matter, but requests that the Court take no further action that prejudices or adversely affects his rights in this matter.

Date: October 13, 2006

/s/ John W. Thomas
_____
John W. Thomas, pro se
1660 L Street, NW, Suite 506
Washington, DC  20036
Tel: (202) 463-1260
Fax: (202) 463-6328

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2006, I did serve a copy of the foregoing Response on the following persons by First Class Mail and e-mail.

>David I. Bledsoe, Esq.
>300 North Washington Street, 7th Floor
>Alexandria, Virginia 22314
>
>Philip J. McNutt, Esq.
>Hughes & Bentzen, PLLC
>1100 Connecticut Avenue, N.W., Suite 340
>Washington, D.C. 20036
>
>Anthony Watson
>303-F Holden Green
>Cambridge, Massachusetts 02138

/s/ John W. Thomas
_____
John W. Thomas

5

LUMAN, LANGE & WHEELER
ATTORNEYS AT LAW
SUITE 506
1660 L STREET, N.W.
WASHINGTON, D.C. 20036-5603

GENE C. LANGE
SEAN P. MCMULLEN *†
JOHN W. THOMAS*
CHRISTOPHER WHEELER +

OF COUNSEL
JOSEPH C. LUMAN*

*ALSO ADMITTED IN VIRGINIA
+ALSO ADMITTED IN MARYLAND
†NOT ADMITTED IN DISTRICT OF COLUMBIA

TELEPHONE (202) 463-1260
FACSIMILE (202) 463-6328
E-MAIL LLW1660@AOL.COM

April 2, 2002

Frederick S. Hill, Jr.
Anthony Watson
Data Mountain Solutions, Inc.
1116 Smith Street
Charleston, West Virginia 25301-1305

Re:   Legal Representation

Dear Fred and Tony:

Our firm has represented Frederick S. Hill, Jr., and his business enterprises for a number of years. The venture that you are entering into now is substantially different than the previous matters, if for no other reason than the major involvement of other principals, such as Wave Interface, LLC, and its owners.

This letter sets forth a proposed agreement between Data Mountain Solutions, Inc. ("you" or "Client") and Luman, Lange & Wheeler ("Counsel") for legal services. If the terms are acceptable to you, please sign a copy of this letter and return it to us. Please do not hesitate to call if you have any questions.

Counsel has incorporated the business of Data Mountain Solutions, Inc., as a West Virginia corporation, reviewed Client's business plan, prepared stock offering term sheets, reviewed a proposed business agreement with a GE Capital unit, met and planned with the principals of Client and begun preparations of additional business agreements. Through March 15, 2002, Counsel's charges for these services equal $5350.00 (per the enclosed Statement).

The parties agree that the following agreements and other documents need to be completed as promptly as possible:

1. Draft template agreement with subcontractors to be hired by Client.

2. Draft template agreement with customer of Client.

3. Revise GE Capital IT Solutions subcontractor umbrella agreement.

4. Shareholders' agreement among company founders.

Data Mountain Solutions, Inc.
April 2, 2002
Page 2

      5. Bylaws and organizational meeting documents.

    By the terms of this Letter Agreement, Client agrees to pay Counsel for the performance of such legal services and to pay for expenses incurred in connection therewith. While counsel cannot now estimate what our time and fees will total, we will confer with you regularly on the status of our activities and accrued charges.

    <u>Method of Determining Fees</u>. The fees for professional services rendered will be determined on a time basis, to which the following hourly rates will apply: Attorney time will be charged at $200.00 per hour for Christopher Wheeler and Gene Lange, and $175.00 per hour for John W. Thomas. Law clerk time will be charged at $50.00 per hour. I will be the primary attorney working on this matter for the firm, but we will enlist the assistance of other members of the firm as needed.

    <u>Payment of Fees</u>. Client agrees to make prompt payment in full of the enclosed bill for services through March 15, 2002. For all subsequent services, the parties agree that Client will pay one-half the charges in cash and one-half in common stock of Client, valuing such shares at $0.50 each. The shares shall be held in the name of the law firm, Luman, Lange & Wheeler, and the law firm agrees to enter into and be bound by any applicable shareholders' agreement. Client shall have the option at any time to change over to payment of our legal fees entirely in monies.

    <u>Expenses</u>. Client also agrees to pay all expenses pertaining to this matter, including, but not limited to, filing fees, travel expenses, charges for serving and filing papers, recording and certifying documents, courier or messenger services, postage and copying costs, investigator's fees, expert witness fees, toll telephone calls, fees/charges for bond premiums, and notarial attestation, deposition, and transcription fees. If any of these expenses are paid by Counsel for Client, Client agrees to reimburse us promptly for the amount of such expenses.

    <u>Termination</u>. The relationship established by this Letter Agreement is subject to termination as follows:

      A. Counsel reserves the right to withdraw from this representation if Client fails to honor this Agreement or for any just reason as permitted or required under applicable Code of Professional Responsibility or as permitted by germane rules of courts. Notification of withdrawal shall be made to you in writing.

      B. Client has the right to terminate the representation for cause if Counsel fails to honor this Agreement. Notification of the termination shall be made in writing to Counsel. Client also has the right to terminate the representation without cause and shall notify Counsel in writing of any such termination. In the event of any such termination, Client agrees to promptly pay Counsel for attorneys' fees and expenses incurred pursuant to the terms of this Agreement prior to the date of such termination.

Data Mountain Solutions, Inc.
April 2, 2002
Page 3

      C. Upon termination of this representation for any reason, by either Client or Counsel, Counsel agrees to cooperate with any successor counsel to accommodate a smooth transition of the representation.

    We look forward to representing you in this matter.

                Yours truly,

                LUMAN, LANGE & WHEELER

          By: _____
                John W. Thomas

                ACCEPTED:

                DATA MOUNTAIN SOLUTIONS, INC.

_____    By: _____
Date                           Frederick S. Hill, Jr.
                President and Chief Executive Officer

                  _____
                Anthony J. Watson
                Vice President and Chief Operating Officer

## Stock Purchase Agreement ⌐ 1

THIS AGREEMENT is made and entered into this 1st day of May, 2004, by and between Fred Hill, (hereinafter referred to as "Seller") and Data Mountain Solutions, Inc., (hereinafter referred to as "Purchaser");

WITNESSETH:

WHEREAS, the Seller is the record owner and holder of the issued and outstanding shares of the capital stock of Data Mountain Solutions, Inc., (hereinafter referred to as the "Corporation"), a West Virginia corporation, which Corporation has issued capital stock of 11,250 shares of $ 0.01 par value common stock, and

WHEREAS, the Purchaser desires to purchase said stock and the Seller desires to sell said stock, upon the terms and subject to the conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained in this Agreement, and in order to consummate the purchase and the sale of the Corporation's Stock aforementioned, it is hereby agreed as follows:

1. PURCHASE AND SALE:

Subject to the terms and conditions hereinafter set forth, at the closing of the transaction contemplated hereby, the Seller shall sell, convey, transfer, and deliver to the Purchaser certificates representing such stock, and the Purchaser shall purchase from the Seller the Corporation's Stock in consideration of the purchase price set forth in this Agreement. The certificates representing the Corporation's Stock shall be duly endorsed for transfer or accompanied by appropriate stock transfer powers duly executed in blank, in either case with signatures guaranteed in the customary fashion, and shall have all the necessary documentary transfer tax stamps affixed thereto at the expense of the Corporation.

The closing of the transactions contemplated by this Agreement (the "Closing"), shall be held at, on May 15th ,2004, at the Corporate office, or such other place, date and time as the parties hereto may otherwise agree.

2. AMOUNT AND PAYMENT OF PURCHASE PRICE.

The total consideration and method of payment thereof are fully set out in Exhibit "A" attached hereto and made a part hereof.

3. REPRESENTATIONS AND WARRANTIES OF SELLER.

Seller hereby warrants and represents:

(a) Organization and Standing. Corporation is a corporation duly organized, validly existing and in good standing under the laws of the State of West Virginia and has the corporate power and authority to carry on its business as it is now being conducted.

(b) Restrictions on Stock.

i. The Seller is not a party to any agreement, written or oral, creating rights in respect to the Corporation's Stock in any third person or relating to the voting of the Corporation's Stock.

ii. Seller is the lawful owner of the Stock, free and clear of all security interests, liens, encumbrances, equities and other charges.

iii. There are no existing warrants, options, stock purchase agreements, redemption agreements, restrictions of any nature, calls or rights to subscribe of any character relating to the stock, nor are there any securities convertible into such stock.

4. REPRESENTATIONS AND WARRANTIES OF SELLER AND PURCHASER.

Seller and Purchaser hereby represent and warrant that there has been no act or omission by Seller, Purchaser or the Corporation which would give rise to any valid claim against any of the parties hereto for a brokerage commission, finder's fee, or other like payment in connection with the transactions contemplated hereby.

5. GENERAL PROVISIONS

(a) Entire Agreement.

This Agreement (including the exhibits hereto and any written amendments hereof executed by the parties) constitutes the entire Agreement and supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter hereof.

(b) Sections and Other Headings.

The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

(c) Governing Law.

This agreement, and all transactions contemplated hereby, shall be governed by, construed and enforced in accordance with the laws of the State of Virginia. The parties herein waive trial by jury and agree to submit to the personal jurisdiction and venue of a court of subject matter jurisdiction located in Fairfax County, State of Virginia. In the event that litigation results from or arises out of this Agreement or the performance thereof, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other expenses, whether or not taxable by the court as costs, in addition to any other relief to which the prevailing party may be entitled.

IN WITNESS WHEREOF, this Agreement has been executed by each of the individual parties hereto on the date first above written.

Signed, sealed and delivered in the presence of:

_____          _____5/12/05_____
Fred Hill                                 Date

_____          _____5/18/05_____
DMS Corporate Officer                     Date

**EXHIBIT "A"**

AMOUNT AND PAYMENT OF PURCHASE PRICE

(a) Consideration.

As total consideration for the purchase and sale of the Corporation's Stock, pursuant to this Agreement, the Purchaser shall pay to the Seller the sum of Twenty four Thousand Dollars ($24,000) such total consideration to be referred to in this Agreement as the "Purchase Price".

(b) Payment.

The Purchase Price shall be paid as follows:

The sum of Two Thousand Dollars ($2,000) to be delivered to Seller upon the first day of each month for 12 months or until the total sum of Twenty Four Thousand Dollars ($24,000) is delivered toward the execution of this Agreement.

NOTICE

The information in this document is designed to provide an outline that you can follow when formulating business or personal plans. Due to the variances of many local, city, county and state laws, we recommend that you seek professional legal counseling before entering into any contract or agreement.

**Stock Purchase Agreement**

THIS AGREEMENT is made and entered into this 10th day of May, 2005, by and between Fred Hill, (hereinafter referred to as "Seller") and Data Mountain Solutions, Inc., (hereinafter referred to as "Purchaser");

WITNESSETH:

WHEREAS, the Seller is the record owner and holder of the issued and outstanding shares of the capital stock of Data Mountain Solutions, Inc., (hereinafter referred to as the "Corporation"), a West Virginia corporation, which Corporation has issued capital stock of 3,756 shares of $ 0.01 par value common stock, and

WHEREAS, the Purchaser desires to purchase said stock and the Seller desires to sell said stock, upon the terms and subject to the conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained in this Agreement, and in order to consummate the purchase and the sale of the Corporation's Stock aforementioned, it is hereby agreed as follows:

1. PURCHASE AND SALE:

Subject to the terms and conditions hereinafter set forth, at the closing of the transaction contemplated hereby, the Seller shall sell, convey, transfer, and deliver to the Purchaser certificates representing such stock, and the Purchaser shall purchase from the Seller the Corporation's Stock in consideration of the purchase price set forth in this Agreement. The certificates representing the Corporation's Stock shall be duly endorsed for transfer or accompanied by appropriate stock transfer powers duly executed in blank, in either case with signatures guaranteed in the customary fashion, and shall have all the necessary documentary transfer tax stamps affixed thereto at the expense of the Corporation.

The closing of the transactions contemplated by this Agreement (the "Closing"), shall be held at, on May 15th ,2005, at the Corporate office, or such other place, date and time as the parties hereto may otherwise agree.

2. AMOUNT AND PAYMENT OF PURCHASE PRICE.

The total consideration and method of payment thereof are fully set out in Exhibit "A" attached hereto and made a part hereof.

3. REPRESENTATIONS AND WARRANTIES OF SELLER.

Seller hereby warrants and represents:

(a) Organization and Standing. Corporation is a corporation duly organized, validly existing and in good standing under the laws of the State of West Virginia and has the corporate power and authority to carry on its business as it is now being conducted.

(b) Restrictions on Stock.

i. The Seller is not a party to any agreement, written or oral, creating rights in respect to the Corporation's Stock in any third person or relating to the voting of the Corporation's Stock.

ii. Seller is the lawful owner of the Stock, free and clear of all security interests, liens, encumbrances, equities and other charges.

iii. There are no existing warrants, options, stock purchase agreements, redemption agreements, restrictions of any nature, calls or rights to subscribe of any character relating to the stock, nor are there any securities convertible into such stock.

4. REPRESENTATIONS AND WARRANTIES OF SELLER AND PURCHASER.

Seller and Purchaser hereby represent and warrant that there has been no act or omission by Seller, Purchaser or the Corporation which would give rise to any valid claim against any of the parties hereto for a brokerage commission, finder's fee, or other like payment in connection with the transactions contemplated hereby.

5. GENERAL PROVISIONS

(a) Entire Agreement.

This Agreement (including the exhibits hereto and any written amendments hereof executed by the parties) constitutes the entire Agreement and supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter hereof.

(b) Sections and Other Headings.

The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

(c) Governing Law.

This agreement, and all transactions contemplated hereby, shall be governed by, construed and enforced in accordance with the laws of the State of Virginia. The parties herein waive trial by jury and agree to submit to the personal jurisdiction and venue of a court of subject matter jurisdiction located in Fairfax County, State of Virginia. In the event that litigation results from or arises out of this Agreement or the performance thereof, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other expenses, whether or not taxable by the court as costs, in addition to any other relief to which the prevailing party may be entitled.

IN WITNESS WHEREOF, this Agreement has been executed by each of the individual parties hereto on the date first above written.

Signed, sealed and delivered in the presence of:

_____          _____5/12/05_____
Fred Hill                                 Date

_____          _____5/18/05_____
DMS Corporate Officer                     Date

**EXHIBIT "A"**

AMOUNT AND PAYMENT OF PURCHASE PRICE

(a) Consideration.

As total consideration for the purchase and sale of the Corporation's Stock, pursuant to this Agreement, the Purchaser shall pay to the Seller the sum of Eight Thousand Dollars ($8,000) such total consideration to be referred to in this Agreement as the "Purchase Price". A $2,000 good faith advance has been accepted by the Seller from the Corporation in anticipation of this Agreement.

(b) Payment.

The Purchase Price shall be paid as follows:



The sum of Two Thousand Dollars ($2,000) to be delivered to Seller upon the first day of each month for ~~½~~ 4 months or until the total sum of Eight Thousand Dollars ($8,000) is delivered toward the execution of this Agreement.

(b) Termination.

The Termination terms of this agreement are as follows:

The sum of Two Thousand Dollars ($2,000) is to be delivered to Seller upon the first day of each month for 3 months or until the total sum of Six Dollars ($6,000) is delivered toward the execution of this Agreement. A ($2,000) advance has been delivered by the Corporation to the Seller in anticipation of this agreement for 939 shares. By written notice, prior to the delivery of a ($2,000) monthly purchase, the Seller may terminate this purchase agreement and retain the remaining shares of the Corporation's Stock.

NOTICE

The information in this document is designed to provide an outline that you can follow when formulating business or personal plans. Due to the variances of many local, city, county and state laws, we recommend that you seek professional legal counseling before entering into any contract or agreement.