IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

DATA MOUNTAIN SOLUTIONS, INC., et al.    )
                                          )
          Plaintiffs,                     )
                                          )
v.                                        )          Civil No 1:06CV01666
                                          )          Judge Paul L. Friedman
GREGG GIORDANO, et al.,                   )
                                          )
          Defendants.                     )
_____)

<u>DEFENDANT JOHN W.THOMAS'S ANSWER AND GROUNDS OF DEFENSE</u>

COMES NOW Defendant, John W. Thomas,[1] and for his Answer and Grounds of

Defense to the Complaint filed by the Plaintiffs in this matter, states as follows:

1.       The allegations contained in Paragraph 1 related to jurisdiction are statements of

legal conclusions to which no response is required.  To the extent a response is required,

Defendant Thomas denies such allegations and demands strict proof thereof.

2.       The allegations contained in Paragraph 2 related to venue are statements of legal

conclusions to which no response is required.  To the extent a response is required,

Defendant Thomas denies such allegations and demands strict proof thereof.

3.       Defendant Thomas states that to the best of his knowledge, information and

belief, Plaintiff Data Mountain Solutions, Inc., is a West Virginia corporation.  Defendant

---

[1]  Defendant Thomas responds to this Complaint in his individual capacity, although he contends that he is not the proper party in this matter.  See Affirmative Defense Five herein.  The gravamen of the Complaint, as it pertains to Defendant Thomas, relates to his actions as counsel for Plaintiff DMS.  Pursuant to an engagement agreement, dated April 2, 2002, and executed by Plaintiff Hill on behalf of DMS, and by Christopher Wheeler, signing Defendant Thomas's name, on behalf of Luman, Lange & Wheeler (LLW), DMS engaged the services of Luman, Lange & Wheeler as its counsel.   See Thomas Exhibit 1 attached hereto.  Upon the departure of Mr. Wheeler from LLW, Luman, Lange, Thomas & McMullen, LLP (LLTM) became the successor in interest to LLW.  At all relevant times, Defendant Thomas, in representing DMS, did so as an attorney of, and on behalf of, LLW and then LLTM.

Thomas further acknowledges that the By-Laws attached to the Complaint appear to be a true copy of DMS' By-Laws. With regard to the third sentence of Paragraph 3, Defendant Thomas states that to the best of his knowledge, information and belief, the statements regarding DMS's business are accurate. Defendant Thomas denies the remaining allegations contained in Paragraph 3.

4.     Defendant Thomas is without sufficient information or belief to respond to the allegations regarding McUmber's citizenship status, and therefore, denies them and demands strict proof thereof. To the best of his knowledge, information and belief, the remaining allegations contained within Paragraph 4 are admitted.

5.     Defendant Thomas is without sufficient information or knowledge to respond to the allegations regarding Hill's citizenship status, and therefore, denies them and demands strict proof thereof. To the best of his knowledge, information and belief, the remaining allegations contained within Paragraph 5 are admitted.

6.     Defendant Thomas is without sufficient information or knowledge to respond to the allegations regarding Giordano's citizenship status, and therefore, denies them and demands strict proof thereof. To the best of his knowledge, information and belief, the remaining allegations contained within Paragraph 6 are admitted.

7.     Defendant Thomas is without sufficient information or knowledge to respond to the allegations regarding Watson's citizenship status, and therefore, denies them and demands strict proof thereof. To the best of his knowledge, information and belief, the remaining allegations contained within Paragraph 7 are admitted.

8.     Thomas admits that he is a citizen of the Commonwealth of Virginia and that he is an attorney who practices law in, and transacts business from, offices in the District of

Columbia.  With regard to the second sentence of Paragraph 8, Thomas states that he has stated that he is/was counsel for DMS with reference to his status as the attorney with the firm of, first, Luman, Lange & Wheeler (LLW), and then, in 2003, due to the departure of Christopher Wheeler, became Luman, Lange, Thomas & McMullen, LLP (LLTM), which was actively involved in performing work on behalf of DMS.  At all times, DMS was a client of LLW and LLTM, as evidenced by the engagement agreement dated April 2, 2002, attached hereto as Thomas Exhibit 1.  Thomas specifically denies that he ever stated he did no work for DMS since 2003.  Thomas admits that on June 2, 2004, LLTM received 52 shares of DMS stock, as a fully authorized and approved payment of a portion of DMS' legal fees due to LLTM, pursuant to the engagement agreement between DMS and LLTM's predecessor firm, LLW (Thomas Exhibit 1 hereto).  Thomas further notes that Christopher Wheeler, an attorney with the firm representing the Plaintiffs in this matter, also received a distribution of his share of DMS stock on or about the same date pursuant to the same engagement agreement.

9.      Defendant Thomas states that, upon information and belief, the statements in Paragraph 9 are correct.  Answering further, Defendant Thomas states that the document attached to the Complaint as Exhibit 2 appears to be a true copy of the Shareholders Agreement among the initial shareholders.

10.     Defendant Thomas states that, to the extent that the allegations contained in Paragraph 10 reference the Shareholders Agreement, that is a written document that speaks for itself, and Defendant Thomas denies all allegations that are not consistent with the written terms contained therein.

11.     Defendant Thomas has insufficient information or knowledge regarding the allegations contained in Paragraph 11 to admit or deny such allegations, and therefore, Defendant Thomas denies these allegations and demands strict proof thereof.

12.     Defendant Thomas has insufficient information or knowledge regarding the allegations contained in Paragraph 12 to admit or deny such allegations, and therefore, Defendant Thomas denies these allegations and demands strict proof thereof.

13.     Defendant Thomas has insufficient information or knowledge regarding the allegations contained in Paragraph 13 to admit or deny such allegations, and therefore, Defendant Thomas denies these allegations and demands strict proof thereof.

14.     Defendant Thomas has insufficient information or knowledge regarding the allegations contained in Paragraph 14 to admit or deny such allegations, and therefore, Defendant Thomas denies these allegations and demands strict proof thereof.

15.     Defendant Thomas has insufficient information or knowledge regarding the allegations contained in Paragraph 15 to admit or deny such allegations, and therefore, Defendant Thomas these allegations and demands strict proof thereof.

16.     Defendant Thomas denies the allegations in Paragraph 16, as phrased, and further denies the characterization of the manner and the content of his responses to the Plaintiffs' informal demands for corporate records as set forth in Paragraph 16 of the Complaint.  Answering further, Defendant Thomas states that Plaintiffs' first letter, dated July 28, 2006, and hand-delivered to Thomas at 5:30 pm on Friday night, July 28, 2006, without prior communication from Plaintiffs or their counsel, demanded that Thomas, seemingly in his individual capacity, produce DMS' corporate records within his individual custody or control, within 30 days (see Complaint, Exhibit 6).  As is set forth

in Paragraph 16, Luman, Lange, Thomas & McMullen, LLP, responded by providing the requested documents on August 22, 2006—within 25 days of Plaintiffs' request. Answering further, by letter dated August 3, 2006 (see Complaint, Exhibit 7), Thomas responded in writing to Plaintiffs' attorney's initial letter of July 28 – one day after the Plaintiffs' attorney's arbitrary deadline of August 2, 2006.  Defendant Thomas does not recall that a group of messengers was involved in picking up the documents for the Plaintiffs—only that a messenger was sent by Plaintiffs (or their counsel) without coordination with Defendant Thomas or LLTM.  Answering further, Thomas admits that the documents provided to the Plaintiffs were "copies" of the corporate records described in Paragraph 16 of the Complaint.

Thomas denies the allegation in the footnote 3 that the "production was woefully incomplete"--all corporate records in the possession, custody and control of LLTM were copied and copies supplied to both the Plaintiffs and Defendant Giordano, and Defendant Thomas is not aware of any other DMS corporate records reflecting actions by the corporation or shareholders within his or LLTM's possession.

Defendant Thomas denies the allegations set forth in Paragraph 16 of the Complaint, as phrased.  Answering further, Defendant Thomas states that, as part of his production of documents to Plaintiffs, he did provide the following documents, which relate to Plaintiffs' allegations:

A.     Two stock sale contracts between Fred Hill and DMS for the sale of a total of 15,006 shares of his stock, signed by Hill for himself and by Derek McUmber on behalf of DMS (attached as Thomas Exhibit 2 hereto); Thomas has no written record of the approval thereof by the other two principals, Giordano or Watson;

B.       A print-out of a string of e-mails among the principals in early 2005, which was provided to Defendant Thomas this summer by Giordano which showed negotiations between Watson and the other principals regarding the sale of his stock.

To the extent that the last two sentences of Paragraph 16 state the Plaintiffs' interpretation of certain written documents, Defendant Thomas states that those documents speak for themselves, and denies all allegations that are not consistent with the written terms contained therein.  Defendant Thomas denies all remaining allegations contained in Paragraph 16.

17.      To the extent that the allegations contained in Paragraph 17 state the Plaintiffs' interpretation of certain written documents, Defendant Thomas states that those documents speak for themselves, and denies all allegations that are not consistent with the written terms contained therein.  Defendant Thomas denies all remaining allegations contained in Paragraph 17.

18.      Defendant Thomas denies the allegations contained in Paragraph 18.

19.      The allegations contained in Paragraph 19 of the Complaint are directed at and relate to Defendant Giordano, such that Defendant Thomas is without sufficient information or knowledge to admit or deny such allegations, and therefore he denies these allegations and demands strict proof thereof.

20.      The allegations contained in Paragraph 20 of the Complaint are directed at and relate to Defendant Giordano, such that Defendant Thomas is without sufficient information or knowledge to admit or deny such allegations, and therefore he denies these allegations and demands strict proof thereof.

21.    The allegations contained in Paragraph 21 of the Complaint are directed at and relate to Defendant Giordano, such that Defendant Thomas is without sufficient information or knowledge to admit or deny such allegations, and therefore he denies these allegations and demands strict proof thereof.

22.    The allegations contained in Paragraph 22 relate to a written document; accordingly, Defendant Thomas states that the document speaks for itself, and denies all allegations that are not consistent with the written terms contained therein.

23.    The allegations contained in Paragraph 23 relate to a written document; accordingly, Defendant Thomas states that the document speaks for itself, and denies all allegations that are not consistent with the written terms contained therein.

24.    To the extent that the allegations contained in the first sentence of paragraph 24, regarding "Thomas's claim" relate to a written document, Defendant Thomas states that the document speaks for itself, and denies all allegations that are not consistent with the written terms contained therein.  Defendant Thomas is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 24, and therefore he denies these allegations and demands strict proof thereof.  Defendant Thomas acknowledges that the documents attached as Exhibit 8 to the Complaint appear to be true copies of LLTM billing statements to DMS.

25.    To the extent that the allegations contained in Paragraph 25 relate to written documents, Defendant Thomas states that the documents speak for themselves, and denies all allegations that are not consistent with the written terms contained therein. Defendant Thomas further states affirmatively that the contents of the LLTM billing statements to DMS are consistent with Thomas's statements made regarding LLTM's

representation of DMS—specifically, for a period of about two and one-half years, beginning in November, 2003, the law firm performed a total of 4.5 hours of legal services for DMS, and most of that time consisted of receiving and forwarding corporate registration materials from the Virginia State Corporation Commission. Defendant Thomas further admits that DMS paid for legal services performed by LLTM and its predecessor firm LLW, both through monetary payments and through the issuance of DMS stock to LLTM and to Christopher Wheeler, in accordance with the terms of the engagement agreement between DMS and LLW, as executed by Plaintiff Hill on behalf of DMS and Defendant Thomas (but signed, with permission, by Christopher Wheeler). (Thomas Exhibit 1)

26.    To the extent that the allegations contained in Paragraph 26 relate to a written document, Defendant Thomas states that the document speaks for itself, and denies all allegations that are not consistent with the written terms contained therein.

27.    To the extent that the allegations contained in Paragraph 27 relate to a written document, Defendant Thomas states that the document speaks for itself, and denies all allegations that are not consistent with the written terms contained therein.

28.    Defendant Thomas admits that he sent the e-mail referenced in Paragraph 28, a true copy of which appears to be attached as Complaint Exhibit 11. To the extent that the allegations contained in Paragraph 28 relate to written documents, Defendant Thomas states that the documents speak for themselves, and denies all allegations that are not consistent with the written terms contained therein. Defendant Thomas denies the remaining allegations contained in Paragraph 28.

29.    Defendant Thomas denies the allegations contained in Paragraph 29.

30.     To the extent that the allegations contained in Paragraph 30 relate to a written document, Defendant Thomas states that the document speaks for itself, and denies all allegations that are not consistent with the written terms contained therein.

31.     Defendant Thomas denies the allegations contained in the first sentence of Paragraph 31.  To the extent that the allegations contained in Paragraph 31 relate to written documents, Defendant Thomas states that the documents speak for themselves, and denies all allegations that are not consistent with the written terms contained therein. Thomas denies the remaining allegations contained in the second sentence of Paragraph 31.  To the extent that the remaining allegations contained in Paragraph 31 state a conclusion of law, no response is required.  Defendant Thomas denies all remaining allegations contained in Paragraph 31.

32.     Defendant Thomas denies the allegations contained in the first sentence of Paragraph 32.  Defendant Thomas acknowledges sending the e-mail as set forth in the remaining allegations of Paragraph 32, states that the document speaks for itself, and denies all allegations that are not consistent with the written terms contained therein

33.     To the extent that the allegations contained in Paragraph 33 relate to written documents, Defendant Thomas states that the documents speak for themselves, and denies all allegations that are not consistent with the written terms contained therein. Defendant Thomas denies the allegations contained in the second sentence (beginning, "Obviously, preservation…") of Paragraph 33.  Answering further, Defendant Thomas states that, because the principals of DMS did not agree among themselves regarding the action requested, Thomas did not take such action.  Thomas denies the remaining allegations contained in Paragraph 33.

34.     To the extent that the allegations contained in Paragraph 34 relate to written documents, Defendant Thomas states that the documents speak for themselves, and denies all allegations that are not consistent with the written terms contained therein. Answering further, Defendant Thomas acknowledges that he provided copies, but retained in the offices of LLTM the originals, of the DMS stock book and minute book among other documents, because the principals of DMS did not (and to the present, do not) agree to the disposition of the originals.  Defendant Thomas further states that the DMS stock book and minute book have been continuously within the possession, custody and control of LLTM and its predecessor law firm, LLW, since their creation, and that Defendant Thomas's statement, made in response to a request to him in his individual capacity, that he had no such documents in his individual possession, custody, and control, remains accurate to the present.   To the extent that the allegations contained in the second sentence of Paragraph 34 (beginning, "As suspected…") constitute legal conclusions to which no response is required.  In response to the last sentence of Paragraph 34, Defendant Thomas acknowledges that LLTM received an issuance of DMS stock, but specifically denies that such issuance was without consent, authorization, resolution or approval.  Defendant Thomas further states that, on June 2, 2004, DMS made a partial payment for legal services performed by LLTM and its predecessor firm LLW, through the issuance of 52 shares of DMS stock to LLTM and of 42 shares of DMS stock to Christopher Wheeler, in accordance with the terms of the engagement agreement between DMS and LLW, as executed by Plaintiff Hill on behalf of DMS and Defendant Thomas (signed, with permission, by Christopher Wheeler).  (Thomas Exhibit 1).  This follows the precedent of an earlier issuance of 140 shares of DMS stock to LLW

by a certificate dated September 4, 2003, in partial payment of earlier services.  DMS, and its officers and shareholders, were made aware of these distributions, DMS officers signed all three of the subject stock certificates, and at no time prior to the dispute arising between the parties did DMS or any of its shareholders or officers ever contend that these distributions made pursuant to DMS's engagement agreement with Luman, Lange & Wheeler were not authorized and approved.  Defendant Thomas denies the remaining allegations contained in Paragraph 34.

35.     To the extent that the allegations contained in Paragraph 35 relate to a written document, Defendant Thomas states that the document speaks for itself, and denies all allegations that are not consistent with the written terms contained therein.  Answering further, Defendant Thomas states that the referenced e-mail specifically reflects LLTM's and his reluctance to take the actions as requested, but that LLTM and he were willing to act based on Defendant Thomas's understanding that the four principals had unanimously approved the referenced transactions.  Answering further, Defendant Thomas states that Plaintiffs may be misleading the Court, to the extent that Plaintiffs appear to suggest that the referenced transaction between DMS and Hill did not occur, based on Plaintiffs' allegations contained in the last sentence of Paragraph 35, and their omission to include the fact that Plaintiffs Hill and McUmber have in fact executed two contracts setting forth the referenced transaction by which Plaintiff Hill sold a portion of his DMS stock back to DMS.  Those two contracts, both dated May 18, 2005, which were given to Thomas for the corporate records on or about May 25, 2006, and were included in the documents provided to the Plaintiffs on August 22, 2006, are attached hereto as Thomas Exhibit 2. Defendant Thomas denies the remaining allegations contained in Paragraph 35.

36.    To the extent that the allegations contained in Paragraph 36 relate to written documents, Defendant Thomas states that the documents speak for themselves, and denies all allegations that are not consistent with the written terms contained therein. Answering further, Defendant Thomas is without sufficient knowledge or information to admit or deny the allegations contained in the first sentence of Paragraph 36 related to Defendant Watson's current status related to DMS, and therefore, denies such allegations and demands strict proof thereof. Defendant Thomas denies the allegations contained in the second sentence of Paragraph 36.

37.    To the extent that the allegations contained in Paragraph 37 relate to written documents, Defendant Thomas states that the documents speak for themselves, and denies all allegations that are not consistent with the written terms contained therein.

38.    To the extent that the allegations contained in Paragraph 38 relate to written documents, Defendant Thomas states that the documents speak for themselves, and denies all allegations that are not consistent with the written terms contained therein. Defendant Thomas denies the remaining allegations contained in Paragraph 38.

39.    To the extent that the allegations contained in Paragraph 39 relate to written documents, Defendant Thomas states that the documents speak for themselves, and denies all allegations that are not consistent with the written terms contained therein. To the extent that the allegations contained in Paragraph 39 relate to what purpose or intent Defendant Giordano may have had, Thomas lacks sufficient information or knowledge to admit or deny such allegations, and therefore denies them and demands strict proof thereof. Defendant Thomas denies the allegations contained in the third sentence of Paragraph 39 to the extent that they can be read to relate to him.

40.     Defendant Thomas denies the allegations contained in Paragraph 40.

41.     Defendant Thomas admits that he and LLTM are still in possession of DMS'

original stock register and transfer records, as alleged in the first sentence of Paragraph

41.   To the extent that the allegations contained in the second sentence of Paragraph 41

relate to written documents, Defendant Thomas states that the documents speak for

themselves, and denies all allegations that are not consistent with the written terms

contained therein.  To the extent that the allegations contained in the second sentence of

Paragraph 41 relate to Defendant Giordano's intent, Defendant Thomas is without

sufficient knowledge or information to admit or deny such allegations, and therefore, he

denies these allegations and demands strict proof thereof.   Defendant Thomas denies the

allegations contained in the third sentence of Paragraph 41, and specifically denies any

allegations regarding what he is "likely" to do with regard to the corporate records.  As

indicated in the parties' telephone hearing before the Court related to Plaintiffs' TRO

application, Defendant Thomas states affirmatively that LLTM and he plan to take no

action with regard to DMS' corporate books and/or records unless by Order of the Court

or by unanimous agreement by DMS' four principals as evidenced by a written

agreement executed by all parties.

42.     Defendant Thomas denies the allegations contained in Paragraph 42 as they relate

to him, and further states that he is without sufficient information or knowledge to admit

or deny what Plaintiffs' allege may be the intent of any other party, and therefore,

Defendant denies all such allegations and demands strict proof thereof.

43.     Defendant Thomas takes no position with regard to the injunctive actions requested in Paragraph 43, as long as the Court takes no action that prejudices or adversely affects his rights in this matter.

44.     In response to the allegations contained in Paragraph 44, Defendant Thomas denies that he or LLTM is responsible for any damages to Plaintiffs for any reason whatsoever as alleged in Paragraph 44 of the Complaint.  Specifically, Defendant Thomas states that the damages alleged by Plaintiffs related to payment of legal fees by DMS to LLTM constituted fees for services rendered which provided multiple benefits to DMS and cannot be in any way characterized as "damages."  Defendant Thomas denies the remaining allegations contained in Paragraph 44.

45.     The allegations contained in Paragraph 45 constitute legal conclusions asserted by the Plaintiffs to which no response is required.  To the extent a response may be required, Defendant Thomas is without sufficient information or knowledge to admit or deny the allegations, and therefore, he denies such allegations and demands strict proof thereof.

## COUNT I – INJUNCTIVE RELIEF

46.     Defendant Thomas realleges and incorporates herein by reference the responses to Paragraphs 1-45 contained in his Answer.

47.     Defendant Thomas is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 47, and therefore, he denies such allegations and demands strict proof thereof.

48.     Defendant Thomas is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 48, and therefore, he denies such allegations and demands strict proof thereof.

49.    Defendant Thomas is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 49, and therefore, he denies such allegations and demands strict proof thereof.  To the extent that the allegations contained in Paragraph 49 relate to written documents, Defendant Thomas states that the documents speak for themselves, and denies all allegations that are not consistent with the written terms contained therein.

50.    To the extent that the allegations contained in Paragraph 50 relate to written documents, Defendant Thomas states that the documents speak for themselves, and denies all allegations that are not consistent with the written terms contained therein. Defendant Thomas is without sufficient information or knowledge to admit or deny the allegations contained in the first sentence of Paragraph 50, and therefore denies such allegations and demands strict proof thereof.  Defendant Thomas denies the allegations contained in the third sentence of Paragraph 50.

51.    In response to the allegations contained in the first sentence of Paragraph 51, Defendant Thomas admits that the original DMS stock book and minute book are currently in the possession, custody and control of LLTM, and that LLTM has in the past received payment from DMS in the form of shares of DMS stock.  Defendant Thomas denies the remaining allegations contained in the first sentence of Paragraph 51. Defendant Thomas denies the allegations contained in the second sentence of Paragraph 51 because no shares of stock in DMS have ever been issued to Defendant Thomas, individually; DMS stock has been issued to LLW, then to LLTM and Christopher Wheeler.  Defendant Thomas admits that the issuance of DMS stock to Defendant Thomas, individually, is not authorized, but states that the issuance of DMS stock to

LLTM is authorized.  In response to the allegations contained in the third sentence of Paragraph 51, Defendant Thomas admits that the original stock book is currently in the possession, custody and control of LLTM, and denies the remaining allegations contained therein.  To the extent that the allegations contained in the last sentence of Paragraph 51 relate to written documents, Defendant Thomas states that the documents speak for themselves, and denies all allegations that are not consistent with the written terms contained therein.  Defendant Thomas denies the remaining allegations contained in Paragraph 51.

52.    Defendant Thomas is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 52, and therefore denies such allegations and demands strict proof thereof.  To the extent that the allegations contained in Paragraph 52 may be directed at Defendant Thomas, he denies such allegations.

53.    To the extent that Paragraph 53(3) may be read to request the disgorgement or transfer of payments received for legal services by LLW and LLTM from DMS, whether in shares of stock or in cash, Defendant Thomas denies that Plaintiffs are entitled to such relief for any reason whatsoever.  Defendant Thomas takes no position regarding the remaining relief requested in this Paragraph 53, as long as the Court takes no action that prejudices or adversely affects his rights in this matter.

54.    To the extent that the allegations contained in Paragraph 54 relate to written documents, Defendant Thomas states that the documents speak for themselves, and denies all allegations that are not consistent with the written terms contained therein.  To the extent that the allegations contained in Paragraph 54 state legal conclusions, no response is required.

In response to the Prayer for Relief, Defendant Thomas states that, to the extent the Prayer for Relief appears to request the disgorgement or transfer of payments for legal services received by LLW and LLTM from DMS, whether in shares of stock or in cash, Defendant Thomas denies that Plaintiffs are entitled to such relief for any reason whatsoever. Defendant Thomas takes no position regarding the remaining relief requested, as long as the Court takes no action that prejudices or adversely affects his rights, or those of LLTM, in this matter.

## COUNT II – SPECIFIC PERFORMANCE

55.     Defendant Thomas realleges and incorporates herein by reference the responses to Paragraphs 1-54 contained in his Answer.

56.     To the extent that the allegations contained in Paragraph 56 relate to written documents, Defendant Thomas states that the documents speak for themselves, and denies all allegations that are not consistent with the written terms contained therein.

57.     To the extent that the allegations contained in Paragraph 57 relate to written documents, Defendant Thomas states that the documents speak for themselves, and denies all allegations that are not consistent with the written terms contained therein.

58.     To the extent that the allegations contained in Paragraph 58 relate to written documents, Defendant Thomas states that the documents speak for themselves, and denies all allegations that are not consistent with the written terms contained therein.

59.     The allegations contained in the first sentence of Paragraph 59 are legal conclusions to which no response is required. Defendant Thomas does not have sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 59, and therefore denies such allegations and demands strict proof thereof.

60.    Defendant Thomas admits that LLTM continues to have possession, custody and control of the original DMS stock books and records.  Defendant Thomas denies that he, individually, has possession, custody or control of such documents.  The remaining allegations contained in the first sentence of Paragraph 60 constitute legal conclusions to which no response is required.  In response to the allegations contained in the second sentence of Paragraph 60, Defendant Thomas states as follows:  (1) LLTM acknowledges that Plaintiff Hill purported to terminate LLTM's legal representation of DMS, but that Defendant Giordano purported to retain LLTM as counsel for DMS, accordingly, LLTM does not know whether it has been terminated as counsel for DMS or not.  LLTM has represented to all parties and to the Court that it does not intend to take any actions with respect to DMS and its stock book and corporate records until Ordered by the Court, or until DMS' principals unanimously agree as evidenced by a written document executed by all principals; (2) with respect to the allegation that LLTM has "concurrent duties and obligations to return DMS' subject corporate records", based on the dispute between DMS' principals, it is not clear who speaks for DMS and to whom DMS' subject corporate records must be returned; and (3) neither Defendant Thomas nor LLTM is "conspiring" with anyone or taking any action to DMS' or anyone else's detriment. Defendant Thomas denies the remaining allegations contained in Paragraph 60.

61.    To the extent that the allegations contained and/or relief sought in Paragraph 61 appear to be directed at parties other than Defendant Thomas, then Defendant Thomas neither admits nor denies such allegations, and accordingly, Defendant Thomas takes no position regarding the relief sought therein, as long as the Court takes no action that

prejudices or adversely affects his rights in this matter.  Defendant Thomas denies any allegations contained in Paragraph 61 that are directed at him.

In response to the Prayer for Relief, Defendant Thomas states that, to the extent the Prayer for Relief requests the disgorgement of payments for legal services received by LLTM from DMS, whether in shares of stock or in cash, Defendant Thomas denies that Plaintiffs are entitled to such relief for any reason whatsoever.  Defendant Thomas takes no position regarding the remaining relief requested, as long as the Court takes no action that prejudices or adversely affects his rights, or those of LLTM, in this matter.

## COUNT III – ESTOPPEL

62.    Defendant Thomas realleges and incorporates herein by reference the responses to Paragraphs 1-61 contained in his Answer.

63-65.   Paragraphs 63 through 65 set forth allegations that are not directed at Defendant Thomas, and therefore, Defendant Thomas neither admits nor denies such allegations.

In response to the Prayer for Relief, Defendant Thomas states that, to the extent relief requested is not directed at Defendant Thomas, he takes no position regarding such relief, as long as the Court takes no action that prejudices or adversely affects his rights, or those of LLTM, in this matter.

## COUNT IV – RESCISSION

66.     Defendant Thomas realleges and incorporates herein by reference the responses to Paragraphs 1-65 contained in his Answer.

67.    To the extent that the allegations contained in Paragraph 67 relate to a written document, Defendant Thomas states that the document speaks for itself, and denies all allegations that are not consistent with the written terms contained therein.

68.    Defendant Thomas does not have sufficient information or knowledge to admit or deny the allegations contained in the first and second sentences of Paragraph 68, and therefore denies such allegations and demands strict proof thereof.  In response to the third sentence of Paragraph 68, Defendant Thomas admits that LLTM (as well as Christopher Wheeler) received DMS stock as partial payment for legal services.

69.    To the extent that the allegations contained in Paragraph 69 relate to a written document, Defendant Thomas states that the document speaks for itself, and denies all allegations that are not consistent with the written terms contained therein.  Answering further, Defendant Thomas states affirmatively that the issuance of DMS stock to LLTM as partial payment for legal services was fully authorized and approved by DMS.

70.    Defendant Thomas denies the allegations contained in Paragraph 70 and specifically denies that Plaintiffs are entitled to rescission of the transfer of any DMS stock issued to LLTM as partial payment for legal services because such transfer to LLTM was fully authorized and approved by DMS.

In response to the Prayer for Relief, Defendant Thomas denies that Plaintiffs are entitled to the rescission of the transfer of any DMS stock issued to LLTM for any reason whatsoever.

## COUNTS V –XII

71 – 105.  Counts V through XII and the allegations contained in Paragraphs 71 through 105 are all directed at parties other than Defendant Thomas; accordingly, Defendant Thomas neither admits nor denies the allegations contained therein, and takes no position on the relief sought therein.  To the extent that any of these allegations are determined to

be directed at Defendant Thomas, he denies such allegations, and opposes any relief that prejudices or adversely affects his rights, or those of LLTM, in this matter.

## COUNT XIII – DECLARATORY RELIEF

106.    Defendant Thomas realleges and incorporates herein by reference the responses to Paragraphs 1-105 contained in his Answer.

107.    To the extent that the allegations contained in Paragraph 107 relate to a written document, Defendant Thomas states that the document speaks for itself, and denies all allegations that are not consistent with the written terms contained therein.  The remaining allegations contained in Paragraph 107 state a legal conclusion to which no response is required.  To the extent a response may be required, Defendant Thomas denies such allegations.

108.    To the extent that the allegations contained in Paragraph 108 relate to a written document, Defendant Thomas states that the document speaks for itself, and denies all allegations that are not consistent with the written terms contained therein.  The remaining allegations contained in Paragraph 108 state a legal conclusion to which no response is required.  To the extent a response may be required, Defendant Thomas denies such allegations.

109.    To the extent that the allegations contained in Paragraph 109 relate to a written document, Defendant Thomas states that the document speaks for itself, and denies all allegations that are not consistent with the written terms contained therein.  The remaining allegations contained in Paragraph 109 state a legal conclusion to which no

response is required.  To the extent a response may be required, Defendant Thomas

denies such allegations.

With respect to the Prayer for Relief, Defendant Thomas states, in response to

paragraph C, that Plaintiffs are not entitled to such relief to the extent that Plaintiffs seek

a declaration that LLTM is not entitled to any of the shares of DMS stock issued to

LLTM as partial payment for legal services.  Further, with respect to paragraph A,

Defendant Thomas notes that LLTM and he have already provided to Plaintiffs copies of

all of the DMS corporate records in LLTM's possession, custody and control.  Defendant

Thomas takes no position regarding the remaining relief sought, as long as this Court

takes no action that prejudices or adversely affects his rights, or those of LLTM, in this

matter.

## COUNT XIV – ACCOUNTING AND EQUITABLE LIEN/CONSTRUCTIVE TRUST

110.    Defendant Thomas realleges and incorporates herein by reference the responses to

Paragraphs 1-109 contained in his Answer.

111.    Defendant Thomas denies the allegations contained in Paragraph 111, and further

denies that there are any grounds or any need to require Defendant Thomas and/or LLTM

to participate in an accounting for receipts, expenditures, or anything else.  Defendant

Thomas does not oppose the entry of an Order by this Court by which LLTM and

Defendant Thomas would deliver to the Court the originals of the DMS corporate records

currently within the possession custody and control of LLTM.

112.    Defendant Thomas denies the allegations contained in Paragraph 112, and further

denies that that there are any grounds or any need to impose any equitable lien or

constructive trust on any assets of Defendant Thomas or LLTM for any reason and/or in any amount whatsoever.

In response to the Prayer for Relief, Defendant Thomas denies that Plaintiffs are entitled to any of the relief they seek in any amount or for any reason whatsoever.

Any allegations not specifically admitted are hereby denied.

WHEREFORE, having Answered fully, Defendant, John W. Thomas, requests that this Court dismiss this matter as to him, with prejudice, and grant him his costs expended, and such other relief as the Court deems appropriate.

## **GROUNDS OF DEFENSE**

COMES NOW the Defendant, John W. Thomas, and for his Grounds of Defense, states as follows:

1.     The Court is without subject matter jurisdiction over Plaintiffs' Complaint.

2.      Plaintiffs' have failed to state a claim against Defendant Thomas upon which relief can be granted.

3.     Plaintiffs' claims against Defendant Thomas are barred, in whole or in part, by the doctrine of estoppel.

4.     Defendant Thomas is not a proper party defendant in this matter; any relationship between Plaintiffs and Defendant Thomas arose in Thomas's capacity as an attorney with the law firm of Luman, Lange & Wheeler (LLW), and then, after the departure in 2003 of Christopher Wheeler, of Luman, Lange, Thomas & McMullen, LLP (LLTM), LLW's successor firm.  Pursuant to the engagement agreement between DMS, executed by Plaintiff Hill, and LLW, executed by Christopher Wheeler for and in the name of

Defendant Thomas, the LLW firm served as counsel on behalf of DMS, and then LLW's

successor firm, LLTM, served in that capacity.

5.    Defendant Thomas reserves the right to assert such defenses as may become

appropriate through discovery.

WHEREFORE, Defendant John W. Thomas requests that this Court dismiss this

matter as to him, with prejudice, grant him his costs expended, and grant such other relief

as it may deem appropriate.


|  | /s/ John W. Thomas |
|---|---|
| Date:  October 25, 2006 | _____ |
|  | John W. Thomas, pro se |
|  | 1660 L Street, NW, Suite 506 |
|  | Washington, DC  20036 |
|  | Tel: (202) 463-1260 |
|  | Fax: (202) 463-6328 |

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 25, 2006, a copy of the foregoing Answer was served on
the following persons by First Class Mail and e-mail.

David I. Bledsoe, Esq.
300 North Washington Street, 7th Floor
Alexandria, Virginia 22314

Philip J. McNutt, Esq.
Hughes & Bentzen, PLLC
1100 Connecticut Avenue, N.W., Suite 340
Washington, D.C. 20036

Anthony Watson
303-F Holden Green
Cambridge, Massachusetts 02138


/s/ John W. Thomas
_____
John W. Thomas

# LUMAN, LANGE & WHEELER

GENE C. LANGE
SEAN P. McMULLEN*†
JOHN W. THOMAS*
CHRISTOPHER WHEELER+

ATTORNEYS AT LAW

SUITE 506
1660 L STREET, N.W.
WASHINGTON, D.C. 20036-5603

OF COUNSEL
JOSEPH C. LUMAN*

___

*ALSO ADMITTED IN VIRGINIA
+ALSO ADMITTED IN MARYLAND
†NOT ADMITTED IN DISTRICT OF COLUMBIA

___

TELEPHONE (202) 463-1260
FACSIMILE (202) 463-6328
E-MAIL LLW1660@AOL.COM

April 2, 2002

Frederick S. Hill, Jr.
Anthony Watson
Data Mountain Solutions, Inc.
1116 Smith Street
Charleston, West Virginia 25301-1305

Re:    Legal Representation

Dear Fred and Tony:

Our firm has represented Frederick S. Hill, Jr., and his business enterprises for a number of years. The venture that you are entering into now is substantially different than the previous matters, if for no other reason than the major involvement of other principals, such as Wave Interface, LLC, and its owners.

This letter sets forth a proposed agreement between Data Mountain Solutions, Inc. ("you" or "Client") and Luman, Lange & Wheeler ("Counsel") for legal services. If the terms are acceptable to you, please sign a copy of this letter and return it to us. Please do not hesitate to call if you have any questions.

Counsel has incorporated the business of Data Mountain Solutions, Inc., as a West Virginia corporation, reviewed Client's business plan, prepared stock offering term sheets, reviewed a proposed business agreement with a GE Capital unit, met and planned with the principals of Client and begun preparations of additional business agreements. Through March 15, 2002, Counsel's charges for these services equal $5350.00 (per the enclosed Statement).

The parties agree that the following agreements and other documents need to be completed as promptly as possible:

1. Draft template agreement with subcontractors to be hired by Client.

2. Draft template agreement with customer of Client.

3. Revise GE Capital IT Solutions subcontractor umbrella agreement.

4. Shareholders' agreement among company founders.

Data Mountain Solutions, Inc.
April 2, 2002
Page 2

    5. Bylaws and organizational meeting documents.

    By the terms of this Letter Agreement, Client agrees to pay Counsel for the performance of such legal services and to pay for expenses incurred in connection therewith. While counsel cannot now estimate what our time and fees will total, we will confer with you regularly on the status of our activities and accrued charges.

    <u>Method of Determining Fees</u>. The fees for professional services rendered will be determined on a time basis, to which the following hourly rates will apply: Attorney time will be charged at $200.00 per hour for Christopher Wheeler and Gene Lange, and $175.00 per hour for John W. Thomas. Law clerk time will be charged at $50.00 per hour. I will be the primary attorney working on this matter for the firm, but we will enlist the assistance of other members of the firm as needed.

    <u>Payment of Fees</u>. Client agrees to make prompt payment in full of the enclosed bill for services through March 15, 2002. For all subsequent services, the parties agree that Client will pay one-half the charges in cash and one-half in common stock of Client, valuing such shares at $0.50 each. The shares shall be held in the name of the law firm, Luman, Lange & Wheeler, and the law firm agrees to enter into and be bound by any applicable shareholders' agreement. Client shall have the option at any time to change over to payment of our legal fees entirely in monies.

    <u>Expenses</u>. Client also agrees to pay all expenses pertaining to this matter, including, but not limited to, filing fees, travel expenses, charges for serving and filing papers, recording and certifying documents, courier or messenger services, postage and copying costs, investigator's fees, expert witness fees, toll telephone calls, fees/charges for bond premiums, and notarial attestation, deposition, and transcription fees. If any of these expenses are paid by Counsel for Client, Client agrees to reimburse us promptly for the amount of such expenses.

    <u>Termination</u>. The relationship established by this Letter Agreement is subject to termination as follows:

        A. Counsel reserves the right to withdraw from this representation if Client fails to honor this Agreement or for any just reason as permitted or required under applicable Code of Professional Responsibility or as permitted by germane rules of courts. Notification of withdrawal shall be made to you in writing.

        B. Client has the right to terminate the representation for cause if Counsel fails to honor this Agreement. Notification of the termination shall be made in writing to Counsel. Client also has the right to terminate the representation without cause and shall notify Counsel in writing of any such termination. In the event of any such termination, Client agrees to promptly pay Counsel for attorneys' fees and expenses incurred pursuant to the terms of this Agreement prior to the date of such termination.

Data Mountain Solutions, Inc.
April 2, 2002
Page 3

      C.  Upon termination of this representation for any reason, by either Client or Counsel, Counsel agrees to cooperate with any successor counsel to accommodate a smooth transition of the representation.

    We look forward to representing you in this matter.

        Yours truly,

        LUMAN, LANGE & WHEELER

By: _____
        John W. Thomas

        ACCEPTED:

        DATA MOUNTAIN SOLUTIONS, INC.

By: _____
_____      Frederick S. Hill, Jr.
Date              President and Chief Executive Officer

        _____
        Anthony J. Watson
        Vice President and Chief Operating Officer

## Stock Purchase Agreement ⌐ 1

THIS AGREEMENT is made and entered into this 1st day of May, 2004, by and between Fred Hill, (hereinafter referred to as "Seller") and Data Mountain Solutions, Inc., (hereinafter referred to as "Purchaser");

W I T N E S S E T H:

WHEREAS, the Seller is the record owner and holder of the issued and outstanding shares of the capital stock of Data Mountain Solutions, Inc., (hereinafter referred to as the "Corporation"), a West Virginia corporation, which Corporation has issued capital stock of 11,250 shares of $ 0.01 par value common stock, and

WHEREAS, the Purchaser desires to purchase said stock and the Seller desires to sell said stock, upon the terms and subject to the conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained in this Agreement, and in order to consummate the purchase and the sale of the Corporation's Stock aforementioned, it is hereby agreed as follows:

1. PURCHASE AND SALE:

Subject to the terms and conditions hereinafter set forth, at the closing of the transaction contemplated hereby, the Seller shall sell, convey, transfer, and deliver to the Purchaser certificates representing such stock, and the Purchaser shall purchase from the Seller the Corporation's Stock in consideration of the purchase price set forth in this Agreement. The certificates representing the Corporation's Stock shall be duly endorsed for transfer or accompanied by appropriate stock transfer powers duly executed in blank, in either case with signatures guaranteed in the customary fashion, and shall have all the necessary documentary transfer tax stamps affixed thereto at the expense of the Corporation.

The closing of the transactions contemplated by this Agreement (the "Closing"), shall be held at, on May 15th ,2004, at the Corporate office, or such other place, date and time as the parties hereto may otherwise agree.

2. AMOUNT AND PAYMENT OF PURCHASE PRICE.

The total consideration and method of payment thereof are fully set out in Exhibit "A" attached hereto and made a part hereof.

3. REPRESENTATIONS AND WARRANTIES OF SELLER.

Seller hereby warrants and represents:

(a) Organization and Standing. Corporation is a corporation duly organized, validly existing and in good standing under the laws of the State of West Virginia and has the corporate power and authority to carry on its business as it is now being conducted.

(b) Restrictions on Stock.

i. The Seller is not a party to any agreement, written or oral, creating rights in respect to the Corporation's Stock in any third person or relating to the voting of the Corporation's Stock.

ii. Seller is the lawful owner of the Stock, free and clear of all security interests, liens, encumbrances, equities and other charges.

iii. There are no existing warrants, options, stock purchase agreements, redemption agreements, restrictions of any nature, calls or rights to subscribe of any character relating to the stock, nor are there any securities convertible into such stock.

4. REPRESENTATIONS AND WARRANTIES OF SELLER AND PURCHASER.

Seller and Purchaser hereby represent and warrant that there has been no act or omission by Seller, Purchaser or the Corporation which would give rise to any valid claim against any of the parties hereto for a brokerage commission, finder's fee, or other like payment in connection with the transactions contemplated hereby.

5. GENERAL PROVISIONS

(a) Entire Agreement.

This Agreement (including the exhibits hereto and any written amendments hereof executed by the parties) constitutes the entire Agreement and supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter hereof.

(b) Sections and Other Headings.

The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

(c) Governing Law.

This agreement, and all transactions contemplated hereby, shall be governed by, construed and enforced in accordance with the laws of the State of Virginia. The parties herein waive trial by jury and agree to submit to the personal jurisdiction and venue of a court of subject matter jurisdiction located in Fairfax County, State of Virginia. In the event that litigation results from or arises out of this Agreement or the performance thereof, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other expenses, whether or not taxable by the court as costs, in addition to any other relief to which the prevailing party may be entitled.

IN WITNESS WHEREOF, this Agreement has been executed by each of the individual parties hereto on the date first above written.

Signed, sealed and delivered in the presence of:

_____          _____
Fred Hill                                  5/12/05
                                           Date

_____          _____
DMS Corporate Officer                      5/18/05
                                           Date

**EXHIBIT "A"**

AMOUNT AND PAYMENT OF PURCHASE PRICE

(a) Consideration.

As total consideration for the purchase and sale of the Corporation's Stock, pursuant to this Agreement, the Purchaser shall pay to the Seller the sum of Twenty four Thousand Dollars ($24,000) such total consideration to be referred to in this Agreement as the "Purchase Price".

(b) Payment.

The Purchase Price shall be paid as follows:

The sum of Two Thousand Dollars ($2,000) to be delivered to Seller upon the first day of each month for 12 months or until the total sum of Twenty Four Thousand Dollars ($24,000) is delivered toward the execution of this Agreement.

NOTICE

The information in this document is designed to provide an outline that you can follow when formulating business or personal plans. Due to the variances of many local, city, county and state laws, we recommend that you seek professional legal counseling before entering into any contract or agreement.

## Stock Purchase Agreement ‑ ᴧ

THIS AGREEMENT is made and entered into this 10th day of May, 2005, by and between Fred Hill, (hereinafter referred to as "Seller") and Data Mountain Solutions, Inc., (hereinafter referred to as "Purchaser");

W I T N E S S E T H:

WHEREAS, the Seller is the record owner and holder of the issued and outstanding shares of the capital stock of Data Mountain Solutions, Inc., (hereinafter referred to as the "Corporation"), a West Virginia corporation, which Corporation has issued capital stock of 3,756 shares of $ 0.01 par value common stock, and

WHEREAS, the Purchaser desires to purchase said stock and the Seller desires to sell said stock, upon the terms and subject to the conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained in this Agreement, and in order to consummate the purchase and the sale of the Corporation's Stock aforementioned, it is hereby agreed as follows:

1. PURCHASE AND SALE:

Subject to the terms and conditions hereinafter set forth, at the closing of the transaction contemplated hereby, the Seller shall sell, convey, transfer, and deliver to the Purchaser certificates representing such stock, and the Purchaser shall purchase from the Seller the Corporation's Stock in consideration of the purchase price set forth in this Agreement. The certificates representing the Corporation's Stock shall be duly endorsed for transfer or accompanied by appropriate stock transfer powers duly executed in blank, in either case with signatures guaranteed in the customary fashion, and shall have all the necessary documentary transfer tax stamps affixed thereto at the expense of the Corporation.

The closing of the transactions contemplated by this Agreement (the "Closing"), shall be held at, on May 15th ,2005, at the Corporate office, or such other place, date and time as the parties hereto may otherwise agree.

2. AMOUNT AND PAYMENT OF PURCHASE PRICE.

The total consideration and method of payment thereof are fully set out in Exhibit "A" attached hereto and made a part hereof.

3. REPRESENTATIONS AND WARRANTIES OF SELLER.

Seller hereby warrants and represents:

(a) Organization and Standing. Corporation is a corporation duly organized, validly existing and in good standing under the laws of the State of West Virginia and has the corporate power and authority to carry on its business as it is now being conducted.

(b) Restrictions on Stock.

i. The Seller is not a party to any agreement, written or oral, creating rights in respect to the Corporation's Stock in any third person or relating to the voting of the Corporation's Stock.

ii. Seller is the lawful owner of the Stock, free and clear of all security interests, liens, encumbrances, equities and other charges.

iii. There are no existing warrants, options, stock purchase agreements, redemption agreements, restrictions of any nature, calls or rights to subscribe of any character relating to the stock, nor are there any securities convertible into such stock.

4. REPRESENTATIONS AND WARRANTIES OF SELLER AND PURCHASER.

Seller and Purchaser hereby represent and warrant that there has been no act or omission by Seller, Purchaser or the Corporation which would give rise to any valid claim against any of the parties hereto for a brokerage commission, finder's fee, or other like payment in connection with the transactions contemplated hereby.

5. GENERAL PROVISIONS

(a) Entire Agreement.

This Agreement (including the exhibits hereto and any written amendments hereof executed by the parties) constitutes the entire Agreement and supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter hereof.

(b) Sections and Other Headings.

The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

(c) Governing Law.

This agreement, and all transactions contemplated hereby, shall be governed by, construed and enforced in accordance with the laws of the State of Virginia. The parties herein waive trial by jury and agree to submit to the personal jurisdiction and venue of a court of subject matter jurisdiction located in Fairfax County, State of Virginia. In the event that litigation results from or arises out of this Agreement or the performance thereof, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other expenses, whether or not taxable by the court as costs, in addition to any other relief to which the prevailing party may be entitled.

IN WITNESS WHEREOF, this Agreement has been executed by each of the individual parties hereto on the date first above written.

Signed, sealed and delivered in the presence of:

_____                        _____5/12/05_____

Fred Hill                                                                   Date

_____                        _____5/18/05_____

DMS Corporate Officer                                                Date

**EXHIBIT "A"**

AMOUNT AND PAYMENT OF PURCHASE PRICE

(a) Consideration.

As total consideration for the purchase and sale of the Corporation's Stock, pursuant to this Agreement, the Purchaser shall pay to the Seller the sum of Eight Thousand  Dollars ($8,000) such total consideration to be referred to in this Agreement as the "Purchase Price".  A $2,000 good faith advance has been accepted by the Seller from the Corporation in anticipation of this Agreement.

(b) Payment.

The Purchase Price shall be paid as follows:

 4

The sum of Two Thousand Dollars ($2,000) to be delivered to Seller upon the first day of each month for 12 months or until the total sum of Eight Thousand Dollars ($8,000) is delivered toward the execution of this Agreement.

(b) Termination.

The Termination terms of this agreement are as follows:

The sum of Two Thousand Dollars ($2,000) is to be delivered to Seller upon the first day of each month for 3 months or until the total sum of Six Dollars ($6,000) is delivered toward the execution of this Agreement. A ($2,000) advance has been delivered by the Corporation to the Seller in anticipation of this agreement for 939 shares.  By written notice, prior to the delivery of a ($2,000) monthly purchase, the Seller may terminate this purchase agreement and retain the remaining shares of the Corporation's Stock.

NOTICE

The information in this document is designed to provide an outline that you can follow when formulating business or personal plans. Due to the variances of many local, city, county and state laws, we recommend that you seek professional legal counseling before entering into any contract or agreement.