IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DATA MOUNTAIN SOLUTIONS, INC.,    :
et al
                                  :

            Plaintiffs
                                  :

      v.                          :          1:06-CV-01666-PLF

                                  :

GREGG GIORDANO, et al             :

            Defendants            :

                                  :

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH FILED BY THE DEFENDANT, GREGG GIORDANO

COME NOW, the Plaintiffs, Data Mountain Solutions, Inc. ("DMS"), Derek McUmber ("McUmber") and Frederick Hill "Hill"), by and through their counsel, and, submit the following Memorandum in Opposition to the Motions filed herein by the Defendant, Giordano:

### Background and Introduction

The Plaintiffs are seeking documents and testimony related to their Motion for Preliminary Injunction filed herein on or about September 28, 2006.[1]  Prior to filing their Complaint, the Plaintiffs, on several occasions, sought documents from the Defendants related to the issues raised in the Plaintiffs' pending Motion.  Except for a few corporate documents received from the Defendant, Thomas, no documents were produced.  The documents in question are all documents related to the stock ownership of DMS and the attempted stock transaction between the Defendants, Giordano and Watson, as well as documents related to DMS' contract

_____

[1]The Plaintiffs have filed, simultaneously herewith, a Motion requesting permission to cross exam the affiant, Gregg Giordano at the scheduled hearing on November 3, 2006 pursuant to LcvR 65.1 (d).

with Native Technologies, Inc. ("NTI"), DMS' largest source of income.

The Defendant, Giordano, stole approximately $60,000 from DMS' corporate account and used those funds for an illegal transaction whereby Giordano sought to purchase the stock of Defendant, Watson, for Giordano's own account. Giordano obviously does not want the Plaintiffs to have, or the Court see, documents related to that transaction because Giordano's theft of corporate funds and the illegality of the Watson transaction, is irrefutable and a significant basis for injunctive relief.

The $60,000 was paid by Giordano to himself from checks written, not from DMS regular, numbered checks, but from the "starter kit" checks which are unnumbered making them easier to hide from the Plaintiffs.

After commencement of this litigation the Defendant, Giordano, graciously offered to rescind his transaction with the Defendant, Watson. However, no similar offer has been made by Watson. Furthermore, no offer has been made to account for the funds stolen by Giordano, or the remaining consideration provided to the Defendant, Watson, in the same transaction. And, the Plaintiffs believe Giordano is still asserting he controls 60% of DMS stock. Without documentation regarding actual or alleged stock transactions, the Plaintiffs have only the allegations of Giordano to rely upon in preparation for the hearing on their Motion.

The remaining documents requested by the Plaintiffs are related to DMS contract with NTI which is DMS' largest source of income. Prior to July, 2006 all income from the NTI contract was deposited into DMS' regular corporate account. The total income under the contract is approximately $44,000 monthly. However, after June, 2006 the Plaintiffs have received no information concerning the NTI contract income or its disbursement. The money earned under

NTI's contract with GSA, under which DMS operates as a subcontractor, is supposed to be disbursed to DMS, McUmber and Giordano, in three separate checks for agreed amounts. Since June, 2006, no checks have been received by DMS or McUmber. The Plaintiffs believe, however, that Giordano has received his checks and he is holding the checks belonging to DMS and McUmber.

As part of his Motion to Dismiss filed herein, Giordano produced an agreement between NTI and DMS (the "Teaming Agreement") which, on its face, expired as early as January, 2005. This is the only documentation the Plaintiffs have seen regarding the NTI contract or DMS' rights and obligations under that contract.

Subsequent to the conference call with Judge Bates on September 29, 2006, the Plaintiffs made two additional attempts to obtain the documents which are the subject of the subpoenas of which the Defendant complains. The first was by letter to Mr. Bledsoe shortly after the hearing on September 29, 2006. In that letter the Plaintiffs suggested that having documents related to the stock transaction and the NTI contract and its income would be helpful in producing a meaningful settlement conference as directed by Judge Bates. Mr. Bledsoe declined to provide any documents in advance of the meeting, which took place on Tuesday, October 10, 2006.

The Plaintiffs again requested documents at the meeting on October 10th. Giordano declined again asserting that the Plaintiffs were not entitled to any documents.

All of the documents requested by the Plaintiffs as part of their discovery requests are documents which relate directly to corporate transactions (the attempted stock transaction) or are actual corporate records (stock transfers and corporate contracts). Yet, although Giordano, the corporate secretary, has those documents, the corporation and its President (Hill) and CEO

(McUmber) do not.

It is in the above context that the Plaintiffs sought discovery necessary for the hearing on its Motion for Preliminary Injunction.  It is in this context that Giordano's Motion for Protective Order should be considered.

## Argument

With the above as background, the Plaintiffs respond to Giordano's Motion as follows:

A.  The Defendant's first argument is that the requested discovery is prohibited by Fed. R. Civ. P. 26(d) because the parties have not yet developed the discovery plan required by Fed. R. Civ. P. 26(f).  However, the discovery sought by the Plaintiffs is limited to the Motion for Preliminary Injunction.  All of the Plaintiffs' prior attempts to obtain the documents, almost all of which belong to DMS, have been unsuccessful.  Since the discovery requested relates to the pending Motion for Preliminary Injunction and relates to information and documentation under the sole control of the Defendant, Giordano, it should be compelled to allow the Plaintiffs to fairly prepare for the hearing set for November 3, 2006.

The Plaintiffs attempted to confer with the Defendants regarding the discovery sought by the subpoenas to which the Defendant, Giordano now objects.  Those attempts occurred through correspondence between counsel prior to the court ordered meeting on October 10, 2006 and at the October 10 meeting, as well.

B.      The Defendant's second argument, raised in a footnote, asserts that Fed. R. Civ. P. 45 cannot be used to avoid the requirements of Fed. R. Civ. P. 34.  *See* Giordano Memorandum in Support of Motion for Protective Order and Motion to Quash ("Giordano Memorandum"), at 1, footnote 1.  The Plaintiffs assert that Fed. R. Civ. P. 45 requires only a reasonable time within

which to produce documents which is why the Plaintiffs served the Defendants by subpoena instead of merely noticing them for deposition, through counsel, pursuant to Fed. R. Civ. P. 34. Since the documents requested are all held by Giordano and have been requested for three months (Since July 28, 2006), the Plaintiffs assert that requiring the production of such limited documentation on 10 days notice is reasonable.

C. The third argument raised by the Plaintiffs is that Judge Bates specifically refused permission for expedited discovery. *See* Giordano Memorandum, ¶ 3. However, the Plaintiffs asset that Judge Bates did not deny expedited discovery, he merely stated he would not grant it at that time. Moreover, there are four reasons why the Plaintiffs believe that Judge Bates' statement during the conference call does not apply to the discovery sought by the Plaintiffs' subpoenas which are now at issue: (1) at the time of the conference call, the parties had not yet had the settlement conference ordered by Judge Bates; (2) at the time of the conference call, the hearing on the Motion for Preliminary Injunction had not been set; (3) ruling on request for discovery would have taken the decision needlessly away from Judge Friedman, to whom the case had been assigned; and (4) at the time of the conference call, the Defendants had not filed any responsive pleadings.

Now, the Defendants have raised issues by their responsive pleadings for which discovery is appropriate prior to the hearing on the Motion for Preliminary Injunction. Furthermore, the Defendants have continued to provide to DMS, Hill, its President, and McUmber, its CEO, documents that are corporate records and belong to the corporation.

D. The final argument raised by Giordano in his Motion relates to the filing by the Defendant of a Motion to Dismiss. First, a response to the Motion is not yet due and no hearing

has been set.  Second, the apparent assumption that the Motion will be granted has no basis in

fact.  As the Plaintiffs have briefly set out in their Reply Memorandum to Giordano' s Opposition

to the Motion for Preliminary Injunction there is complete diversity of citizenship among the

parties as required for subject matter jurisdiction herein and the bad acts of the Defendant,

Giordano occurred in the District of Columbia.  The assertion that the matters in the Plaintiffs'

Complaint must be determined through arbitration is also misplaced.

There is a provision in the Shareholders' Agreement which discusses arbitration.

Although the arbitration clause, part of paragraph 10 of the Shareholders Agreement dated June

2, 2003 ("the Agreement") is inartfully  worded a careful reading makes it clear that arbitration

does not stand in the way of specific performance or injunctive relief, as sought here.

Furthermore, even if the arbitration clause prohibited any of the actions of the Plaintiffs'

Complaint, arbitration is clearly discretionary under the Agreement which states that any

"controversy or claim...may, at the option of any party thereto, be resolved by arbitration....  ***See***,

Shareholders Agreement, Complaint, Exhibit 2, at 10, ¶ 10(a).  However, the parties have already

undertaken to mediate their disputes through the use of Mr. Thomas' firm in D.C.  Thus, to the

extent arbitration would otherwise be available to the parties, the Plaintiffs assert that the

Defendant, Giordano, has waived his right to arbitration by agreeing to alternative mediation.

Moreover, the Plaintiffs assert that the wording of the Agreement provides for alternative

relief, that is, arbitration, if chosen, specific performance and injunctive relief and "any other

remedies which any party may have hereunder or otherwise."  Because of the wording of

paragraph 10 of the Agreement, the Plaintiffs assert that paragraph 10 does not preclude the

remedies sought in the Plaintiffs' Complaint and certainly does not preclude the remedy of

injunctive relief or other equitable remedies associated with injunctive relief, such as an accounting.

## Conclusion

For the reasons set forth above, the Defendant's Motions for a Protective Order and to Quash the Plaintiffs' Subpoenas should be denied and the Defendant should be compelled to produce documents and appear, as scheduled for his deposition on October 31, 2006.

Dated:  October 29, 2006                    HUGHES & BENTZEN, PLLC


By:    /s/Philip J. McNutt
                              Philip J. McNutt
                              Federal Bar No. MD08555
                              DC Bar No. 491258
                              1100 Connecticut Avenue, NW
                              Suite 340
                              Washington, D.C.  20036
                              Tel: (202) 293-8975

                              Attorneys for Plaintiffs

## Certificate of Service

I hereby certify that a copy of the foregoing Memorandum was served electronically on the 29th day of October, 2006 on counsel below and by regular, first class  mail, postage prepaid, this 30th day of October, 2006 to the following:

      David Bledsoe, Esquire
      300 North Washington Street
      Suite 700
      Alexandria, VA 22314

      and

      John W. Thomas, Esquire
      Luman, Lange, Thomas & McMullen

1660 L Street, NW
Washington, DC 20036

and

Anthony Watson
303-F Holden Green
Cambridge, MA 02138


  /s/Philip J. McNutt
Philip J. McNutt