UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DATA MOUNTAIN SOLUTIONS, INC, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 06-1666 (PLF) |
| GREGG GIORDANO, et al., | ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant Gregg Giordano's motion under Rule 12(b) of the Federal Rules of Civil Procedure and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, to dismiss or, in the alternative, to stay the proceedings and compel arbitration.

The Federal Arbitration Act ("FAA") provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon any grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA applies to any transaction involving interstate commerce and creates a strong presumption in favor of the enforcement of agreements to arbitrate; any doubts regarding the scope of an agreement to arbitrate are to be resolved in favor of arbitration. See Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226-27 (1987) (with enactment of the FAA Congress mandated that arbitration agreements be rigorously enforced); see also Moses H. Cone Memorial Hospital v. Mercury Construction Corporation, 460 U.S. 1, 24-25 (1983);

Finegold, Alexander & Assocs. v. Setty & Assocs., 81 F.3d 206, 207-08 (D.C. Cir. 1996). The Supreme Court has stressed that "the liberal federal policy favoring arbitration agreements, manifested by this provision and the Act as a whole, is at bottom a policy guaranteeing the enforcement of private contractual arrangements." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985). Under the FAA, "[t]here is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" AT&T Technologies, Inc. v. Communication Workers of America, 475 U.S. 643, 650 (1986) (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960) (Brennan, J., concurring)).

      This strong public policy in favor of arbitration must be considered in the context of the equally important principle that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." AT&T Technologies, Inc. v. Communication Workers of America, 475 U.S. at 648 (internal quotation and citation omitted). See also EEOC v. Waffle House, Inc., 534 U.S. 279, 294 (2002) (FAA "does not require parties to arbitrate when they have not agreed to do so") (internal quotation and citation omitted); Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995) ("[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties."). As the court of appeals has noted, "this principle recognizes that 'arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration.'" National Railroad Passenger Corp. v. Boston & Maine Corp., 850

F.2d 756, 759 (D.C. Cir. 1988) (quoting <u>AT&T Technologies, Inc. v. Communication Workers of America</u>, 475 U.S. at 648).

In <u>Mitsubishi</u>, the Supreme Court provided the standard by which motions to compel arbitration should be evaluated. The Court's first task "is to determine whether the parties agreed to arbitrate [the] dispute," keeping in the forefront the strong policy favoring arbitration. <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. at 626. If the Court finds that the parties did agree to arbitrate the dispute at issue, the Court then must determine "whether legal constraints external to the parties' agreement foreclose[] the arbitration of those claims." <u>Id</u>. at 628. In other words, is there a competing statute or policy that outweighs the strong interest in referral to arbitration? There is no allegation in the papers submitted in connection with the instant motion that there is.

Generally, courts have interpreted broadly agreements providing for the arbitration of disputes "arising out of or relating to" the underlying contract. See <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. at 624 n.13 ("arising out of or relating to" is a "broad clause" applicable to antitrust claims); <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395, 398 (1967) ("arising out of or relating to" is a "broad" arbitration clause); <u>Genesco v. T. Kakiuchi & Co., Ltd.</u>, 815 F.2d 840, 855 (2d Cir. 1987) (language "sufficiently broad" to encompass fraudulent inducement claim). In order to determine whether the arbitration provision in the Shareholders Agreement encompasses plaintiffs' claims, the Court must "focus on the factual allegations in the complaint rather than the legal causes of action asserted." <u>Genesco Inc. v. T. Kakiuchi & Co.</u>, 815 F.2d at 846. "If the allegations underlying the claims 'touch matters' covered by the parties' . . . agreement, then those claims

3

must be arbitrated . . . ." Id. (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. at 624 n.13).

>Paragraph 10 of the Shareholders Agreement at issue in this lawsuit provides that:

>Any controversy or claim *arising out of or relating to this Agreement, or the breach thereof*, may, at the option of any party thereto, be resolved by arbitration by a panel of three (3) arbitrators in accordance with the Rules of the American Arbitration Association then prevailing . . . .

Exhibit 2 to Complaint, Shareholders Agreement ¶ 10(a) ("Agreement") (emphasis provided).

Paragraph 10 of the Agreement also provides that:

>*Subject to the foregoing*, inasmuch as the shares are closely held and the market for them is limited, irreparable damage would result if this Agreement is not specifically enforced. The parties hereto agree that their respective rights and obligations shall be enforceable in a court of equity by a decree of specific performance and that appropriate injunctive relief may be applied for and granted in connection herewith. Such remedies shall, however, be cumulative and not exclusive and shall be in addition to any other remedies which any party may have hereunder or otherwise.

Shareholders Agreement ¶ 10(b) (emphasis provided). The arbitration provision at issue in this case is as broad as those in the cases above. As a result, the Court concludes that this matter must be arbitrated before it may proceed.

>Accordingly, it is hereby

>ORDERED that defendant Gregg Giordano's motion to dismiss or, in the alternative, to stay is GRANTED in part and DENIED in part; more specifically, it is

>FURTHER ORDERED that the motion to dismiss for lack of subject matter and personal jurisdiction is DENIED without prejudice; it is

>FURTHER ORDERED that the motion to stay the proceedings pending

arbitration is GRANTED; it is

       FURTHER ORDERED that the parties are to submit their claims to arbitration pursuant to Paragraph 10(a) of the Shareholders Agreement; and it is

       FURTHER ORDERED that this case is STAYED pending the outcome of the arbitration. The parties shall submit a joint status report to the Court on or before March 1, 2007 and every 90 days thereafter.

       SO ORDERED.

                                             _____/s/_____
                                             PAUL L. FRIEDMAN
                                             United States District Judge

DATE: November 21, 2006