**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| DATA MOUNTAIN SOLUTIONS, INC., et al | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | Civil Action No. 06-1666- PLF |
| GREGG GIORDANO, et al | ) ) ) | |
| Defendants | ) ) ) | |

**MOTION FOR AN ORDER TO SHOW CAUSE, FOR INJUNCTIVE RELIEF AND FOR LEAVE TO ADD PARTIES DEFENDANT**

COME NOW, the Plaintiffs herein, Data Mountain Solutions, Inc., Derek McUmber, and Frederick S. Hill, Jr., by and through their attorneys, Hughes & Bentzen, PLLC, and, in support of their Motion, state as follows:

**Introduction**

In light of recent actions taken by the Defendant, Gregg Giordano ("Giordano"), and his willing accomplices, Joseph Abbate ("Abbate") and Native Technologies, Inc. ("NTI")[1] the Plaintiffs believe that this Court should either issue a show cause order to require the Defendant, Giordano, to show cause why he should not be held in contempt of this Court's Orders of September 29, 2006 and November 21, 2006 or why he has not waived his right to arbitration. Alternatively, if the Court determines that a show cause order is inappropriate, the Plaintiffs assert they are entitled to additional relief in the form of mandatory and/or prohibitory injunctive relief in order to preserve the status quo intended by this Court pending the Court ordered arbitration or other further action by this court.

---

[1] Abbate is the principal of NTI, the company which has a contract with the GSA to provide hardware and software integration and technical support for the federal government's .gov email system and platform.

Because of the deliberate actions of Abbate and NTI in recent months to interfere with DMS and McUmber contract rights and income, plus Abbate complicity in the conversion of DMS and McUmber business and assets, the Plaintiffs assert they should be given leave to add Abbate and NTI as parties Defendant pursuant to Fed. R. Civ. P. 19 and 20 (Joinder of Parties).

### Background for Relief Sought

The relief sought herein, is requested based upon the following circumstances:

1. On September 29, 2006, this Court entered an order which denied the Plaintiffs request for immediate injunctive relief based, in large part, on representations of the Defendants, Thomas (personally) and Giordano (through his counsel) that they would not alter the current status of the shares and management structure of DMS and that they would not take any action to deprive DMS of its contract income from current contracts, including the NTI contract.

2. On November 21, 2006 this Court issued a separate order denying the Motion of the Defendant, Giordano, to dismiss this case and staying all proceedings pending the arbitration proceeding demanded by Giordano. To date, Giordano has taken no steps to commence arbitration despite the express language of this Court's Order or the Shareholders' Agreement (which allows arbitration upon demand by a party). No party has demanded arbitration other than Giordano.

3. After commencement of this case, Giordano demanded arbitration. Arbitration is governed, in this instance, by paragraph 10(a) of the Shareholders Agreement. However, Giordano has failed to commence an arbitration proceeding under the procedures set forth in the Shareholders Agreement and the Rules of the American Arbitration Association ("AAA") and no arbitration proceeding is currently pending. The Plaintiffs assert that they

are not required to submit to arbitration under the clear language of paragraph 10(a) of the Shareholders Agreement. That paragraph provides only that disputes "...may, **at the option of any party** thereto, be resolved by arbitration..."

Moreover, paragraph 10 (b) of the Shareholders Agreement makes clear that the remedies sought by the Plaintiffs in the instant litigation, including injunctive relief and specific performance are proper remedies which the Plaintiffs may pursue unless a party demands arbitration. The Plaintiffs assert that, absent affirmative action by the Defendant, Giordano, to commence arbitration the Plaintiffs are entitled to proceed with the pending litigation and the stay should be removed.

This Court's Order of November 21, 2006 orders the parties to "submit their claims to arbitration pursuant to Paragraph 10(a) of the Shareholders Agreement." Paragraph 10(a) of the Shareholders Agreement provides only that disputes "...may, **at the option of any party** thereto, be resolved by arbitration..."

Commencement of Arbitration in the AAA is governed by Commercial Arbitration Rule R-4 which provides as follows:

> (A)(I) The initiating party ("the claimant") shall, within the time period, if any, specified in the contract(s), give to the other party (the "respondent") written notice of its intention to arbitrate (the "demand"), which demand shall contain a statement setting forth the nature of the dispute, the names and addresses of all other parties, the amount involved, if any, the remedy sought, and the hearing locale requested."

Rule R-4 of the Commercial Arbitration Rules of the American Arbitration Association (A copy of which is attached hereto.)

Finally, in light of the apparent complicity of DMS' contractor, Native Technologies, Inc. ("NTI"), in the attempts by Giordano to steal assets and business from the Plaintiffs, particularly McUmber, arbitration is an ineffective route, at least as to certain counts of the Complaint related to the seizure of DMS business and assets and McUmber assets

(compensation). Arbitration was not intended to resolve issues unrelated to the Shareholders Agreement and there is no means to compel arbitration with NTI.

Following this Court's order of November 21, 2006, the Plaintiffs did prepare a demand for arbitration on forms provided by the American Arbitration Association. The Plaintiffs also prepared a Statement of Claim to support their claims against the Defendants, including Mr. Giordano. However, under paragraphs 10(a) and (b) of the Shareholders Agreement, the Plaintiffs had, and have, the right to seek court redress for breaches of the Shareholders Agreement, including, specifically, injunctive relief and specific performance. Under the clear language of the Shareholders Agreement any party *may* demand arbitration of any disputes related to the Shareholders Agreement. Arguably, the Defendant, Giordano, has made such a demand. However he has not followed up as required by the Rules of the American Arbitration Association. The Plaintiffs believe, and therefore assert, that they may continue to assert their claims in this Court until or unless the Defendant, Giordano, or any other party, demands arbitration in accordance with Rule R-4, referenced above.

The Defendant has asserted that it is the obligation of the Plaintiffs to proceed with the arbitration. That simply makes no sense and is not mandated by this Court's Order of November 21, 2006 which only directs "the parties" to arbitrate in accordance with paragraph 10(a) of the Shareholders Agreement. That paragraph required arbitration only when demanded by a party (Giordano). The Plaintiffs further assert that by stonewalling the arbitration as well as taking other actions outlined below, Giordano has added to his attempts to thwart the Plaintiffs' ability to have their causes resolved in a proper forum. In the meantime, the Plaintiffs have prepared a demand for arbitration, in good faith, along with an appropriate statement of claim in the event this court determines that the Plaintiffs must commence the arbitration, without Giordano's participation, let alone sole commencement.

The Plaintiffs are concerned that commencing an arbitration proceeding under the rules of the AAA will, in effect, constitute either a sole demand for arbitration from the Plaintiffs, who have not demanded Arbitration, and not from the Defendant, Giordano, who is the only party which has requested arbitration.  Alternatively the Plaintiffs are concerned that if they commence arbitration such action will constitute consent to arbitration not only of the disputes under the Shareholders' Agreement but also the remaining causes of action related to Giordano's conversion of the assets and property of McUmber and DMS.  The Plaintiffs assert that those latter issues are not arbitrable under the Shareholders Agreement.

Giordano is obviously using this Court's order staying proceedings pending arbitration to stall any action to recover the funds stolen by Giordano by preventing the Plaintiffs from having a forum to redress grievances.  This Court has stayed all proceedings and Giordano has failed to commence the AAA proceeding contemplated by paragraph 10a of the Shareholders Agreement.  Giordano continues to intercept and control all funds coming from NTI under NTI's dotGov contract with the GSA under which DMS serves as a subcontractor, providing essentially all contract services and requirements.  The seizure and control of all subcontract income means that Giordano is receiving in excess of $30,000 each month belonging to DMS and McUmber concerning which the Plaintiffs have been unable to obtain an accounting or other information despite demanding same from both Giordano and NTI.  Thus, McUmber is receiving no income from the dotGOV contract despite being the developer of the software platform for the subject contract and the person responsible for all of the technical requirements and services under the subject contract. It is now clear that NTI and its principal, Abbate are assisting Giordano's attempts to convert the Plaintiffs' business, income and assets.

Since June, 2004, DMS and its officers (McUmber and Giordano) have been receiving

substantial remuneration on account of the multi-million dollar federal government contract awarded to NTI by GSA. DMS designed and developed the software and operates and maintains the system on which the NTI contract is based. The software source code constitutes a proprietary asset and trade secret of DMS and is its most valuable asset. The software engineer who is the primary developer of the source code is the Plaintiff, Derek McUmber. Yet, while McUmber continues to support the subcontract and to perform all of the required support and maintenance requirements under the contract, he is receiving no compensation for his services. Furthermore, all payments to DMS have been diverted by Giordano in an obvious effort to squeeze out McUmber (and DMS) for the benefit of Giordano and NTI.

4. Based upon insufficient, inaccurate and improper notice, the Defendant, Giordano attempted to conduct a corporate meeting of DMS, on or about December 21, 2006, for the purpose of making Giordano Chairman of DMS. The minutes of the "meeting" at which apparently only Giordano was present, are attached hereto as Exhibit A to this Motion.

5. On or about December 29, 2006, Giordano, apparently using his newly created "status" as purported Chairman, opened two bank accounts in the name of DMS at branches of Bank of America. Based upon information obtained from representatives of the Bank of America, approximately $60,000 was deposited into each account. None of the Plaintiffs, including DMS have any access to the documentation, books or records of the accounts or their disbursements, if any. At the request of DMS, the funds in these accounts have been frozen pending court order.

6. Since October, 2006, Giordano has made consistent efforts to reduce or eliminate DMS' subcontract work with NTI using his dual role as a representative of NTI under the dotGov contract between GSA and NTI and, particularly, by attempting to replace McUmber

as the technical and support person responsible for DMS' technical requirements under the NTI subcontract, all with aid and assistance of Joseph Abbate, principal of NTI. This has occurred despite the assertions by both the customer (GSA) and the contractor (NTI through its owner, Joseph Abbate) that McUmber's work on the contract has been more than satisfactory.  In fact, Abbate has referred to McUmber, in meetings with GSA as a "superhero."

7.  The efforts of Giordano to undermine DMS' subcontract with NTI and his attempts to continue to withhold money from DMS and McUmber (no contract payments have been made to DMS or McUmber since June, 2006) have further eroded DMS' ability to enter into new contracts, thus having a direct (NTI) and an indirect, adverse effect on the future of DMS.

The Plaintiffs are further prejudiced in that they are parties to a contractual relationship between NTI and DMS whereby DMS employees provide essentially all of the services under NTI's dotGOV contract with the General Services Administration.  In fact, essentially all of the technical requirements and service under the subject contract are performed by Derek McUmber.[2]  Monthly payments are split as follows under the dotGov contract:

| | |
|---|---|
| NTI | 5% |
| Derek McUmber | 23% |
| Gregg Giordano | 23% |
| DMS | 49% |

---

[2]The Plaintiff, Derek McUmber is the only employee of NTI or DMS with the requisite engineering and IT degrees and background to provide the necessary support and maintenance for the dotGOV contract.

This arrangement has been in effect continuously since approximately March, 2003 and payments under that arrangement were made by NTI and acknowledged by all parties, from approximately April, 2003 through June, 2006. All payments due DMS were deposited into its corporate account at United Bank.

8. The payments to McUmber and Giordano are made to them as employees or consultants to NTI to comply with applicable law concerning minority contracts. However, since June, 2006, no payments have been made to McUmber and all payments to DMS have been intercepted and taken by Giordano. To the best of the Plaintiffs' knowledge, only NTI and Giordano have received the payments due under the subject contract. Yet, McUmber has been, and continues to, perform all technical services and support under the subject contract, despite not having been paid since June, 2006.

9. As previously noted, the dotGOV contract is the largest source of income to DMS. The contract was up for renewal as of March 1, 2007. In the last two months, Giordano and Abbate have put immense pressure on the Plaintiffs to avoid even the appearance of a conflict or dispute so that the contract could be renewed for the benefit of all parties. During this period of time both Giordano and Abbate have refused to provide any writings related to current or prospective agreements concerning DMS' subcontract, or services provided by, and compensation payable to, McUmber. At various times during this period Abbate has made promises to McUmber that he would be compensated and that Abbate would assure that at least all future payments due DMS and McUmber in accordance with the longstanding percentage agreement set forth above, would be made as and when due. Unfortunately, now that the GSA has renewed the contract, it appears that all of the statements and promises by Abbate were done with the sole purpose of protecting NTI's and Giordano's income under the contract to the detriment of McUmber and/or DMS. NTI is now backing away from its

promises to assure the rightful compensation is paid to DMS and McUmber stating that such compensation will be paid directly to Giordano, despite numerous demands from the Plaintiffs to make those payments directly to DMS and McUmber as was done for more than three years, up to June, 2006.

10. As a result of the threats and promises made by Giordano and NTI, the Plaintiffs chose to take no action which would jeopardize the contract renewal since such renewal should be in the best interest of DMS. Now, Giordano and NTI are trying to take advantage of the resulting delays in the Plaintiffs' asserting their rights herein by seeking dismissal of the Plaintiffs causes of action, even those which are not covered by the Shareholders' Agreement.

Moreover, the Defendant, Giordano, seeks to compel the Plaintiffs to pay for the arbitration proceedings that the Defendant demanded. Even though the Plaintiffs believe they have no obligation to do so, they have offered to split the cost of arbitration with the Defendant. Giordano has repeatedly refused. This is just another indication that Giordano is trying to thwart the just adjudication of the Plaintiffs' claims while continuing to steal money belonging to DMS and McUmber. The Plaintiffs assert that the Court must take that action necessary to assure that the parties have an equitable status quo imposed upon them while the claims of the parties are pursued, whether in arbitration or in this Court.

11. It is now evident, based upon over two months of negotiations with Mr. Abbate and NTI, that they are little more than the puppets of Giordano. Abbate has said as much to Fred Hill and Derek McUmber, indicating that he continues to do as directed by Giordano even though Giordano has no authority to bind DMS or McUmber, and despite the contractual relationship established as early as April, 2003 whereby each party receives a portion of the dotGov contract proceeds represented by the percentages set forth above. At

various times in the past few weeks Abbate has promised to send checks directly to McUmber and to DMS' only authorized corporate account at United Bank. However, he has not done so to date and it now appears he will not do so in the future. In short, Abbate and NTI appear to be working closely together with Giordano to seize and control all the assets of DMS and McUmber out of the dotGOV contract while continuing to pressure and influence DMS and McUmber with misrepresentations so that NTI and Giordano will retain the benefit of the dotGOV contract at the expense of DMS and McUmber. This is certainly a violation of the spirit and purpose, if not the express language of this Court's Order of September 29, 2006.

Moreover, despite Abbate characterizing McUmber, in meetings with the customer (GSA), as a "superhero," Abbate and Giordano are now attempting to replace McUmber under the dotGOV contract for the sole purpose of enriching the pockets of Giordano, Abbate and NTI at the expense of McUmber and DMS. This violates the parties' agreements and their understandings regarding renewal of the subject contract. It also is symptomatic of a scheme whereby Giordano and Abbate used the threatened non-renewal of the subject contract as a means to improperly force the Plaintiffs into non-action respecting their rights to income from the subject contract, income they have not seen nor received since June, 2006. Giordano continues to act as if he is the sole officer and director of DMS. However, Giordano is only the secretary of DMS, as well as a minor shareholder and director, in addition to any equity position or officer position he may have at NTI. McUmber is the CEO of DMS as well as a shareholder and director. Hill is the President of DMS as well as a shareholder and director.

12. Regardless of the status of the arbitration, the Plaintiffs need additional relief from the Court in order to maintain the status quo, for all parties. The Plaintiffs assert that

the following relief is required to maintain the status quo consistent with this Court's previous Orders of September 29, 2006 and November 21, 2006:

a Show cause Order (or Orders):

a. requiring the Defendant, Gregg Giordano, to show cause why he should not be held in contempt of this Court's Orders of September 29, 2006 and November 21, 2006, by withholding payments due DMS and McUmber since June, 2006; and

b. requiring the Defendant, Gregg Giordano, to show cause why he has not waived his right to arbitration by failing to commence arbitration as required by paragraph 10(a) or the Shareholders Agreement and Rule R-4 of the Commercial Arbitration Rules of the American Arbitration Association; and

an Order granting temporary and preliminary relief as follows:

a. prohibiting the Defendant, Giordano, from interfering with the contract income from NTI, that is due to DMS and McUmber; and

b. requiring Giordano to close the two newly opened Bank of America Accounts, and any other accounts opened in the name of DMS or into which funds due DMS or McUmber have been deposited, and to transfer all funds from those accounts to DMS' established, operating account at United Bank; and

c. requiring Giordano to provide copies of all records of income and receipts from the NTI contract since June, 2006; and

d. requiring Giordano to provide copies of all documentation, including all records of deposits and disbursements to and from the newly opened Bank of America accounts, and any other accounts opened in the name of DMS or into which funds due DMS or McUmber have been deposited; and

e. voiding the corporate action purportedly taken by Giordano in December, 2006;

-11-

and

     f.  Requiring Giordano to either commence arbitration or waive his right to arbitration under the Shareholders Agreement; and

     an Order modifying the stay set forth in this Court's Order of November 21, 2006, as follows:

     a.  providing that the stay shall expire within 10 days unless the Defendant, Gregg Giordano, files an appropriate Demand for Arbitration with the American Arbitration Association; and

     b.  granting the Plaintiffs leave to amend their Complaint to add Native Technologies, Inc. and Joseph Abbate as parties defendant.

     13.  Rule 19 of the Federal Rules of Civil Procedure governs the procedure for Joinder of Persons Necessary for Just Adjudication.   Plaintiffs assert that they cannot obtain complete relief, in light of the matters and facts alleged hereinabove,  unless Abbate and NTI are joined as parties defendant, since they control the contract under which DMS and McUmber perform and since they also control the funds disbursed under the dotGOV contract, particularly those funds due DMS and McUmber.  ***See***, Fed. R. Civ. P. 19 (a)(1).

     Fed. R. Civ. P. 20 governs the permissive joinder of parties. The Plaintiffs assert that Abbate and NTI should be joined under Rule 20 since the rights to relief concerning the preservation and receipt of business (the dotGOV subcontract) and assets and property (the proceeds of the dotGOV contract payable to McUmber and DMS) are common to the Defendant, Giordano, and the prospective Defendants, Abbate and NTI, in light of the status of NTI as the subcontracting party under the dotGOV contract and the allegations set forth hereinabove.

     14.  In further support of the relief requested herein, the Plaintiffs incorporate their

Memorandum of Points and Authorities in Support of Plaintiffs' Application for a Temporary Restraining Order and Motion for Preliminary Injunction and Plaintiffs' Memorandum in Opposition to the Motion to Dismiss of the Defendant, Gregg Giordano.

15.    The matters and facts set forth herein are verified by Frederick S. Hill, Jr., President of DMS, by his verification under penalty of perjury, as set forth below.

WHEREFORE, the Plaintiffs pray for relief as follows:

A Show cause Order (or Orders):

a. requiring the Defendant, Gregg Giordano, to show cause why he should not be held in contempt of this Court's Orders of September 29, 2006 and November 21, 2006, by withholding payments due DMS and McUmber on and after July 1, 2006; and

b.  requiring the Defendant, Gregg Giordano, to show cause why he has not waived his right to arbitration by failing to commence arbitration as required by paragraph 10(a) or the Shareholders Agreement and Rule R-4 of the Commercial Arbitration Rules of the American Arbitration Association; and

An Order granting temporary and preliminary relief as follows:

a.  prohibiting the Defendant, Giordano, from interfering with the contract income from NTI, that is due to DMS and McUmber; and

b.  requiring Giordano to close the two newly opened Bank of America Accounts, and any other accounts opened in the name of DMS or into which funds due DMS or McUmber have been deposited, and to transfer all funds from those accounts to DMS' established, operating account at United Bank; and

c.  requiring Giordano to provide copies of all records of income and receipts from the NTI contract since June, 2006; and

d. requiring Giordano to provide copies of all documentation, including all records of

-13-

deposits and disbursements to and from the newly opened Bank of America accounts; and

e.  voiding the corporate action purportedly taken by Giordano in December, 2006; and

f.  Requiring Giordano to either commence arbitration or waive his right to arbitration under the Shareholders Agreement.

An Order modifying the stay set forth in this Court's Order of November 21, 2006, as follows:

a.  providing that the stay shall expire within 10 days unless the Defendant, Gregg Giordano, files an appropriate Demand for Arbitration with the American Arbitration Association; and

b.  granting the Plaintiffs leave to amend their Complaint to add Native Technologies, Inc. and Joseph Abbate as parties defendant.

For such other and further relief as this court deems just and proper.

VERIFICATION

I HEREBY VERIFY AND AFFIRM, under the penalty of perjury, that the matters and facts set forth in the foregoing Motion are true and correct to the best of my knowledge, information and belief.

   /s/ Frederick S. Hill, Jr.
Frederick S. Hill, Jr., President of Data
Mountain Systems, Inc.

RESPECTFULLY SUBMITTED,
HUGHES & BENTZEN, PLLC

By:    /s/ Philip J. McNutt

-14-

Philip J. McNutt
1100 Connecticut Avenue, N.W.
Suite 506
Washington, DC  20036
Tel: (202) 293-8975
Attorneys for Plaintiffs

## Certificate of Service

I hereby certify that a copy of the foregoing Motion was served, electronically, on David I. Bledsoe, Esquire, counsel for the Defendant, Gregg Giordano and Defendant, John W. Thomas, Esquire and a copy of the Motion was mailed, first class mail, postage prepaid to Anthony Watson, 303-F Holden Green, Cambridge, MA 02138.


  /s/ Philip J. McNutt_____
Philip J. McNutt

**DAVID I. BLEDSOE**
ATTORNEY AT LAW
300 NORTH WASHINGTON STREET
SUITE 708
ALEXANDRIA, VIRGINIA 22314
TELEPHONE (703) 379-9424
FACSIMILE (703) 684-1851

ADMITTED IN VIRGINIA,
MARYLAND AND D.C.

EMAIL: BLEDSOELAW@EARTHLINK.NET

January 9, 2007

Philip J. McNutt, Esquire
Hughes and Bentzen
1100 Connecticut Avenue
Suite 340
Washington DC  20036

  Re: Data Mountain Solutions, Inc.

Dear Mr. McNutt:

   Enclosed please find a copy of the Minutes of the Special Shareholders' Meeting held last month.

   Contrary to your last letter, the Special Shareholders' Meeting is not only proper, but it is mandatory under West Virginia law upon Mr. Giordano's demand.  We have complied with all applicable statutory requirements.  It is also apparently the first shareholders' meeting held in 2006, and apparently only the second ever held in the corporation's life.  While I understand why your clients dislike permitting the shareholders to vote, it is a statutory requirement, and the actions taken there are binding, their wishes notwithstanding.  Also, contrary to your last letter, there are no orders of any court that my client has violated or is violating.

   Please note that the shareholders have passed a resolution requiring Mr. Hill to provide them with the financial data of the company's expenditures.  I hope he will comply.

   On November 16, I wrote you a letter detailing in three pages the numerous problems that your clients' actions were causing, many of which imperil DMS's survival.  I have had no response to that letter, nor have any remedial actions been taken by your clients.  Nor do your clients have any apparent intention of filing the arbitration, as the Court ordered almost two months ago.  In my November 16 letter, I also suggested the use of a neutral third-party mediator, but again have had no response on that front either.

   One of the issues that requires addressing is that as the sole provider for technology service to NTI on their federal government contract with the GSA DotGov program, DMS is required to adhere to and abide by federal guidelines and to remain in compliance with the GSA Certification and Accreditation, including the need to have at least two system administrators with the ability to manage and maintain all aspects of the

DotGov systems. DMS currently only has one, Mr. McUmber. In addition to the missing System Administrator, DMS has failed to replace the Technical Helpdesk personnel that was filled by Kathleen Bowman. DMS's purposed manpower to NTI, which was mirrored to the GSA in NTI's winning proposal, called for the additional technical support personnel. Furthermore, the failure to have a escrowed source code and a redundant employee capable of handling source code issues also puts DMS in violation of government guidelines contained in the GSA Certification and Accreditation.

The Helpdesk personnel issues must be resolved by the January 16 meeting scheduled with the GSA, and the back-up System Administrator issue must be resolved immediately. Mr. Giordano has identified to fill these positions two former DMS contractors: Jing Xeu, who has assisted DMS in the past on building the DotGov backend systems, to help maintain all DMS source code that affect the GSA; and Jay Pendarvis to act as general system administrator and technical support. Given your clients' failure to remedy these glaring problems, my client in his capacity as an officer of DMS intends to hire them as DMS employees as soon as possible.

Mr. McUmber must work with these individuals to ensure that the contract is not affected. Mr. McUmber will need to turn over current copies of source code to Mr. Xeu and get him up to speed on the changes made since he last worked on the source code. Mr. McUmber will need to make Mr. Xeu aware of any changes to the source code and update him with that code within 24 hours of that change. Mr. McUmber will also need to work with Mr. Pendarvis, once Mr. Pendarvis is approved by the GSA DotGov Program Manager.

Finally, Mr. Hill keeps writing my client accusing him of "fiducial" violations and demanding that he deposit the NTI checks into the United bank account, the same bank account from which Mr. Hill, illegally and without any corporate authority, removed my client as a signatory. As we offered over ten times, both in writing and orally in the court-ordered settlement meeting, we are willing to put all assets of the company in an account that requires the assent of all parties for expenditures. Your clients repeatedly refused, demanding that they, and only they, have the ability to control DMS's funds, while simultaneously refusing to escrow the source code being held hostage by Mr. McUmber. The offer still stands open, but we have no intention of cooperating with your clients' illegal and improper acts.

Please let me know if you clients are going to file the arbitration.

Sincerely,

David I. Bledsoe

cc: All shareholders

MINUTES OF THE SPECIAL SHAREHOLDERS MEETING OF
DATA MOUNTAIN SOLUTIONS ON
DECEMBER 21, 2006

The meeting commenced at 10:00 am, but business was postponed until 10:30 am to
await the arrival of any additional Shareholders.

Notice of a Special Shareholders' Meeting was sent in accordance with Data Mountain
Solutions Bylaws and the West Virginia State Code.   Notice was sent by US Mail on
12/11/06 to all registered Shareholders at their last known address.  A copy of the Notice
is attached.

The Secretary noted that he had received Proxies from two of the Shareholders of record,
Tony Watson and John Millhiser.  Both Proxies grant Gregg Giordano the authority to
vote all shares of record on behalf of Mr. Watson and Mr. Millhiser. Copies of the
Proxies are attached.

The purpose of this meeting was to put before the Shareholders of DMS for voting the
three (3) specific issues described in the Notice.  The issues are as follows:

Issue 1:  To amend Section 2.5 of the Bylaws by deleting the current provision
and replacing it with the following Section:

"Section 2.5. Chairman.  The Chairman of the Board of Directors shall
be elected by the majority vote of the outstanding shares of the
Corporation."

Issue 2: To elect a Chairman of the Board of Directors.

Issue 3: To require the Treasurer to immediately provide all shareholders with all
financial records pertaining to the expenditures of the corporation.

In attendance:

Gregg Giordano

Voting by Proxy:

Tony Watson
John Millhiser

Record of stock

| Name | Number of shares |
|------|------------------|
| Tony Watson | 22,500 |
| Gregg Giordano | 22,500 |
| John Millhiser | 1,000 |
| Total Shares Present | 46,000 |

A quorum was present.

Discussion of Issues and Recorded Vote

Issue 1:
Votes to pass amendment to the DMS By-Laws  46,000 shares
Votes to deny amendment to the DMS By-Laws     0

Issue 2:
Proposed Chairman of the Board of Directors: Gregg Giordano
Votes received for Mr. Giordano   46,000 shares
Votes received for other candidates    0

Issue 3:
Votes to require Treasurer to provide financial records to Shareholders   46,000 shares
Votes to not-require Treasurer to provide financial records to Shareholders
    0

There being no further business before the Shareholders, this meeting was adjourned.

DMS Secretary                Date    1/9/07

## NOTICE OF DEMAND FOR SPECIAL SHAREHOLDERS' MEETING

I, Gregg Giordano, being the record owner of more than ten percent of the outstanding shares of the corporation, demand a Special Shareholder's Meeting be held to vote on the following subjects:

1). To amend Section 2.5 of the Bylaws by deleting the current provision and replacing it with the following Section:

"Section 2.5. Chairman. The Chairman of the Board of Directors shall be elected by the majority vote of the outstanding shares of the Corporation."

2) To elect a Chairman of the Board of Directors.

3) To require the Treasurer to immediately provide all shareholders with all financial records pertaining to the expenditures of the corporation.

Gregg Giordano

Dated: _12/10/06_

## NOTICE OF SPECIAL SHAREHOLDERS' MEETING

**PLEASE TAKE NOTICE THAT** pursuant to Section 1.2 of the Bylaws of Data Mountain Solutions, Inc. and the West Virginia Code, upon demand of Gregg Giordano, being the record owner of more than ten percent of the outstanding shares of the corporation, a Special Shareholder's Meeting will be held on December 21, 2006 at 10 am at the offices of the Corporation at 8619 Westwood Center Drive, Suite 200, Vienna, VA 22182.

The purposes of the Special Shareholders' Meeting shall be:

1). To amend Section 2.5 of the Bylaws by deleting the current provision and replacing it with the following Section:

"Section 2.5. Chairman. The Chairman of the Board of Directors shall be elected by the majority vote of the outstanding shares of the Corporation."

2) To elect a Chairman of the Board of Directors.

3) To require the Treasurer to immediately provide all shareholders with all financial records pertaining to the expenditures of the corporation.

DATA MOUNTAIN SOLUTIONS, INC.

By: _____
Gregg Giordano, Secretary

Dated: _12/10/06_____

## **PROXY**

We, John D. and Sandra O. Millhiser, the undersigned, being the joint owners of shares of capital stock of Data Mountain Solutions, Inc., a corporation organized and existing under the laws of the State of West Virginia, do hereby jointly and severally constitute and appoint Gregg Giordano, as our true and lawful attorney-in-fact, for us and in our name, place, and stead, with full power of substitution, for a period of ninety days from September 25, 2006, to vote as our proxy all our shares in such corporation, at any and all meetings, regular or special, of the stockholders of such corporation, or at any adjournments thereof which may be held during such period, giving and granting to our above named attorney-in fact all the powers the undersigned would possess if personally present.

We hereby revoke all proxies heretofore made by us.

The undersigned hereby reserve the right to cancel this proxy at any time upon and by filing with the Secretary of the corporation, written notice of such cancellation signed by the undersigned.

Proxy, page 2

In witness whereof, we have executed this proxy on _Sept. 25_, 2006.

_John D. Millhiser_ (signature)
John D. Millhiser

CITY/COUNTY OF _London_ )
STATE OF _Virginia_ )

Appeared before me this _25th_ day of _September_, 2006, John D. Millhiser, who signed the above in my presence and acknowledged the same to be his act and deed.

_Ruth Elizabeth Mayn_ (signature)
Notary Public

My Commission Expires: _July 31, 2008_

_Sandra O. Millhiser_ (signature)
Sandra O. Millhiser

CITY/COUNTY OF _London_ )
STATE OF _Virginia_ )

Appeared before me this _25th_ day of _September_, 2006, Sandra O. Millhiser, who signed the above in my presence and acknowledged the same to be her act and deed.

_Ruth Elizabeth Mayn_ (signature)
Notary Public

My Commission Expires: _July 31, 2008_

**PROXY**   APW   December 17, 2006   APW

    I, Anthony J. Watson, the undersigned, being the owner of shares of capital stock of Data Mountain Solutions, Inc., a corporation organized and existing under the laws of the State of West Virginia, do hereby constitute and appoint Gregg Giordano, as my true and lawful attorney-in-fact, for me and in my name, place, and stead, with full power of substitution, for a period of ~~ninety~~ days from ~~September 25~~, 2006, to vote as my proxy all my shares in such corporation, at any and all meetings, regular or special, of the stockholders of such corporation, or at any adjournments thereof which may be held during such period, giving and granting to my above named attorney-in fact all the powers the undersigned would possess if personally present.

    I hereby revoke all proxies heretofore made by me.

    The undersigned hereby reserves the right to cancel this proxy at any time upon and by filing with the Secretary of the corporation, written notice of such cancellation signed by the undersigned.

    In witness whereof, I have executed this proxy on _12/17_____, 2006.

_____
Anthony J. Watson

CITY/COUNTY OF _FAIRFAX_ )
STATE OF _VIRGINIA_____ )

    Appeared before me this _17th_____ day of _December_, 2006, Anthony J. Watson, who signed the above in my presence and acknowledged the same to be his act and deed.

Kathleen Bowman
NOTARY PUBLIC
Commonwealth of Virginia
My Commission Expires 3/31/2010

_____
Notary Public

My Commission Expires: _____

-1 through E-10 or
to any other portion
t in conflict with the

otherwise, the
omplex Commercial
ll cases in which the
erclaim of any party
usive of claimed interest,
s. Parties may also agree
cases involving claims
$500,000, or in
Procedures for
rcial Disputes shall
n Sections L-1
s, in addition to any
es that is not in conflict
arge, Complex

dministered in
s R-1 through R-54

)uties

te under these rules,
tration by the AAA
under these rules,
A to administer the
l duties of the AAA
nt of the parties and

## R-3. National Roster of Arbitrators

The AAA shall establish and maintain a National Roster of Commercial Arbitrators ("National Roster") and shall appoint arbitrators as provided in these rules. The term "arbitrator" in these rules refers to the arbitration panel, constituted for a particular case, whether composed of one or more arbitrators, or to an individual arbitrator, as the context requires.

## R-4. Initiation under an Arbitration Provision in a Contract

(a) Arbitration under an arbitration provision in a contract shall be initiated in the following manner:

   (i) The initiating party (the "claimant") shall, within the time period, if any, specified in the contract(s), give to the other party (the "respondent") written notice of its intention to arbitrate (the "demand"), which demand shall contain a statement setting forth the nature of the dispute, the names and addresses of all other parties, the amount involved, if any, the remedy sought, and the hearing locale requested.

   (ii) The claimant shall file at any office of the AAA two copies of the demand and two copies of the arbitration provisions of the

19

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DATA MOUNTAIN SOLUTIONS, INC., et al | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | | 1:06-CV-01666-PLF |
| | : | |
| GREGG GIORDANO, et al | : | |
| | : | |
| Defendants | : | |

**ORDER SHOW CAUSE**

UPON CONSIDERATION OF the foregoing Motion, good cause having been shown for the relief prayed, it is

ORDERED, that the Plaintiffs' Motion is GRANTED; and it is further

ORDERED, that the Defendant, Gregg Giordano, shall show cause on or before the _____ day of March, why he should not be held in contempt of this Court's Orders of September 29, 2006 and November 21, 2006, for seizing, controlling and withholding payments due Data Mountain Solutions, Inc. and Derek McUmber on and after July 1, 2006.

_____
JUDGE, UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
COLUMBIA

cc: electronically

David Bledsoe
Philip J. McNutt
John W. Thomas

by mail

Anthony Watson
303-F Holden Green
Cambridge, MA 02138

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DATA MOUNTAIN SOLUTIONS, INC.,          :
et al
                                        :
                    Plaintiffs
                                        :
        v.                                      1:06-CV-01666-PLF
                                        :
GREGG GIORDANO, et al
                                        :
                    Defendants
                                        :

_____

**ORDER SHOW CAUSE**

UPON CONSIDERATION OF the foregoing Motion, good cause having been shown for

the relief prayed, it is

ORDERED, that the Plaintiffs' Motion is GRANTED; and it is further

ORDERED, that the Defendant, Gregg Giordano, shall show cause on or before

the ____ day of March, 2007, why he has not waived his right to arbitration by failing to

commence arbitration as required by paragraph 10(a) or the Shareholders Agreement and

Rule R-4 of the Commercial Arbitration Rules of the American Arbitration Association.

_____
JUDGE, UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
COLUMBIA

cc: electronically

    David Bledsoe
    Philip J. McNutt
    John W. Thomas

by mail

Anthony Watson
303-F Holden Green
Cambridge, MA 02138

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

|                                       |     |                              |
|---------------------------------------|-----|------------------------------|
| DATA MOUNTAIN SOLUTIONS, INC. et al   | )   |                              |
|                                       | )   |                              |
|                                       | )   |                              |
| Plaintiffs,                           | )   |                              |
|                                       | )   |                              |
| v.                                    | )   | Civil Action No. 06-1666-PLF |
|                                       | )   |                              |
|                                       | )   |                              |
| GREGG GIORDANO, et al                 | )   |                              |
|                                       | )   |                              |
| Defendants.                           | )   |                              |
|                                       | )   |                              |

## <u>ORDER GRANTING PRELIMINARY INJUNCTIVE RELIEF</u>

Upon consideration of the Motion filed herein by the Plaintiffs, Data Mountain Solutions, Inc. ("DMS"),Derek McUmber ("McUmber") and Frederick Hill ("Hill"), and any opposition thereto, and upon consideration of the entire record herein, the Court finds that sufficient cause exists for the granting of a Preliminary Injunction in order to preserve the status quo of the parties relative to services being performed and income due from a subcontract between Native Technologies, Inc. and DMS, whereby, DMS, Gregg Giordano and McUmber receive monthly payments, and to prevent Corporate Waste, to protect the assets and continuing business and operations of DMS and to preserve the status quo until a determination can be made, based upon further documentation, evidence and proceedings, of the various rights, obligations and duties of the parties related to the business and assets of DMS and the stock ownership and management of DMS.

1. That the Plaintiffs' Motion be, and it hereby is, GRANTED as and against all defendants, and any officers agents, employees, subsidiaries, affiliates, and all other entities acting in concert with defendants, and any predecessors and/or successors in interest of the foregoing, for the following reasons:

2. The Court finds there is substantial likelihood that the plaintiffs will prevail on the merits, it clearly appearing from specific facts shown by the plaintiffs' Verified Motion as well as the record herein that the Defendant, Gregg Giordano is withholding income and receipts due DMS which is endangering the continuing operation of the business of DMS, which business includes the only platform and support for all of the federal government agencies email network (.gov) through the NTI contract. It also appears

that Giordano is receiving and withholding from McUmber, funds which are due McUmber for services he has provided, and continues to provide, under the NTI contract and has done so since June, 2006, without justification or authority.

3. The Court further finds from the facts shown by plaintiff's Verified Complaint that immediate and irreparable injury will result to the plaintiffs because it clearly appears from the specific facts shown by the Verified Complaint that the defendants are currently making efforts to control all of the assets and property of DMS and McUmber's right to income for services actually provided under the NTI contract, thus endangering the Corporation's ability to remain in business, and McUmber's major source of income, all for the obvious purpose of converting Corporate assets to the individual defendants and preventing McUmber from asserting his claims under the Complaint filed herein by denying him income he has earned, continues to earn and continues to provide services subject to the expectation of such income. Additionally, it appears that the defendants have made efforts  and are continuing to make immediate efforts to irreparably deprive the plaintiffs of their  rightful stock holdings in DMS, the value of the assets of the Corporation and the value of substantial business opportunities which the defendants, by their control of the stock of the Corporation could manipulate for their own benefit to the detriment of all shareholders, including the plaintiffs, McUmber and Hill;

4. The Court further finds that greater harm will result to the plaintiffs from denial of their requested injunctive relief than will result to defendants' from grant thereof, because if defendants ultimately prevail on the merits, they will not be damaged by requiring them to properly hold stock and assets of the Corporation.  However, if the injunction is not granted, the defendants will be free to manipulate, waste and dispose of the assets and property of DMS and McUmber, to the extreme detriment of the plaintiffs and all other shareholders of DMS;

5. The Court further finds that the requested Injunctive Relief is necessary to maintain the <u>status quo</u>, including to maintain the plaintiffs' present rights to the use of the Corporation's assets and income for the operations of the Corporation and the individual plaintiffs' rights to their proper stock holding in the Corporation as well as the protection of the Shareholders' Agreement among the four individual parties hereto;

6.  The Court also finds that if defendants ultimately prevail, sufficient assets will be available for costs as defendants may incur if found to have been wrongfully enjoined or restrained, such that no bond will be required of plaintiff.

Based upon the foregoing it is, pursuant to Fed. R. Civ. P. 65(b),

ORDERED, ADJUDGED AND DECREED, as follows:

A.  the defendants are temporarily, preliminarily, and permanently enjoined from taking any actions as stockholders or directors of DMS until it is revealed and/or determined who has, or should have, proper shares of stock in that corporation, including temporarily, preliminarily, and permanently enjoining (1) any sales, transfers, or assignments to the defendants of any shares of DMS' stock, and (2) any actions or attempts by any of the Defendants to purportedly update, correct, change, modify, or otherwise alter the corporate books of DMS to cancel, reduce, or increase the shares of DMS stock  recorded as of July 28, 2006, as issued and outstanding to any shareholder or prospective shareholder of DMS; and

B.  the defendants are ordered, commanded, mandated and directed to deposit into the regular (operating) bank account of DMS at United Bank any and all contract proceeds, checks, drafts, vouchers, income and revenues of DMS or due DMS, including all contract payments under the NTI contract from and after July 1, 2006,  whether in the possession, custody and/or control of the Defendants, or a customer, client or other business relation of DMS, and to perform all actions and approve and execute all documents necessary to (1) continue the ordinary and necessary operations of DMS and (2) pay all reasonable and necessary obligations of DMS which are presently due, or overdue, but only to the extent necessary to maintain the business of DMS, including its contractual and support obligations under DMS's contract with Native Technologies, Inc. ("NTI"), it being understood that no payments or disbursements from DMS funds, receipts, billings or accounts shall be made to or for the benefit of any of the individual parties hereto except upon further order of this court upon no less than two days' notice to all

other parties hereto and their counsel, if any;  and

C.  the Defendants are ordered, commanded, mandated and directed to immediately pay to DMS and McUmber those sums that are due the plaintiffs for services performed for, on or behalf of DMS and/or its contract with NTI from and after July 1, 2006; and

D.  any transfer, sale, liquidation, or other disposition of any contract, contract right, property, business, business opportunity or other asset of DMS, without an express order of this Court through Motion made upon reasonable notice to all parties and all shareholders of DMS is hereby preliminarily enjoined and prohibited; and

E.  this Temporary Restraining Order is binding upon the parties to this action, their officers, agents, servants, employees, attorneys and representatives, and upon all persons in active concert or participation with them who receive actual notice of this Temporary Restraining Order, by personal service or otherwise;

F.  that no bond shall be required of Plaintiff;


_____
JUDGE, UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA


cc:    electronically
       Philip J. McNutt

       John Thomas, Esquire

       David Bledsoe, Esquire

       by Mail:

       Anthony Watson
       303-F Holden Green
       Cambridge, MA 02138

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

DATA MOUNTAIN SOLUTIONS, INC.          )
et al                                  )
                                       )
            Plaintiffs,                )
                                       )
v.                                     )    Civil Action No. 06-1666-PLF
                                       )
                                       )
GREGG GIORDANO, et al                  )
                                       )
            Defendants.                )
_____)

### ORDER GRANTING
### PLAINTIFFS' MOTION TO ADD PARTIES DEFENDANT

Upon consideration of the Motion filed herein by the Plaintiffs, Data Mountain Solutions, Inc. ("DMS"),Derek McUmber ("McUmber") and Frederick Hill ("Hill"), and any opposition thereto, and upon consideration of the entire record herein, the Court finds that sufficient cause exists for the granting of the relief prayed and that the parties which the Plaintiffs propose to add as Defendants are within the parties contemplated by Fed. R. Civ. P. 19 and 20, it is

ORDERED that the Plaintiffs Motion is GRANTED; and it is further

ORDERED that the Plaintiffs are granted leave to add Joseph Abbate and Native Technologies, Inc. as parties Defendant; and it is further

ORDERED, that the Plaintiffs shall file their amended Complaint adding new parties Defendant within 15 days of the date of this Order.

_____
JUDGE, UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

cc:    electronically
       Philip J. McNutt

       John Thomas, Esquire

David Bledsoe, Esquire

by Mail:

Anthony Watson
303-F Holden Green
Cambridge, MA 02138

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

DATA MOUNTAIN SOLUTIONS, INC.    )
et al    )
   )
          Plaintiffs,    )
   )
v.    )    Civil Action No. 06-1666-PLF
   )
   )
GREGG GIORDANO, et al    )
   )
          Defendants.    )
_____)

**ORDER GRANTING PLAINTIFFS' LIMITED REQUEST FOR AN ACCOUNTING**

Upon consideration of the Motion filed herein by the Plaintiffs, Data Mountain Solutions, Inc. ("DMS"), Derek McUmber ("McUmber") and Frederick Hill ("Hill"), and any opposition thereto, and upon consideration of the entire record herein, the Court finds that sufficient cause exists for the granting of the relief prayed in the foregoing Motion for an accounting of certain records related to bank accounts opened or established by the Defendant, Giordano and receipts and disbursements from those accounts as well as from the contract known as the dotGOV contract, as set forth in the foregoing Motion, it is

ORDERED that the Plaintiffs Motion for an accounting is GRANTED; and it is further

ORDERED that the Defendant, Giordano shall provide to this court, with a copy to the Plaintiffs, within 10 days of the date of this Order, an accounting of all income or receipts received by him, whether for himself, or on behalf of any Plaintiff, for all such income and receipts since June, 2006. Such accounting shall include copies of all bank records, including deposit or withdrawal records, checks, checkbook ledgers, check memos, vouchers, drafts, transfers, and any all bookkeeping or other records of all such income, receipts and disbursements from funds received from Native Technologies, Inc. for the period commencing July 1, 2006 to the present; and it is further

ORDERED that the Defendant, Giordano, shall provide to the Plaintiffs copies of all correspondence, memos, emails, contracts, invoices, or other documentation of whatever nature received from, or sent to, Native Technologies, Inc., by Giordano from and after July 1, 2006. Such documentation shall include copies of any contracts or proposals either conveyed, promised, negotiated

or executed, effect at any time during the period June 1, 2006 through the present, including any such

documentation related to the dotGOV contract and subcontract with Data Mountain Solutions, Inc.  The

Defendants shall provide such documentation within 12 days of the date of this Order.


_____
JUDGE, UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA


cc:     electronically
        Philip J. McNutt

        John Thomas, Esquire

        David Bledsoe, Esquire

        by Mail:

        Anthony Watson
        303-F Holden Green
        Cambridge, MA 02138