IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DATA MOUNTAIN SOLUTIONS, INC., et al | : |
| | : |
| Plaintiffs | : |
| | : |
| v. | 1:06-CV-01666-PLF |
| | : |
| GREGG GIORDANO, et al | |
| | : |
| Defendants | |
| | : |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
THE MOTION TO DISMISS FILED BY THE DEFENDANT, GREGG GIORDANO**

COME NOW, the Plaintiffs, Data Mountain Solutions, Inc. ("DMS"), Derek McUmber ("McUmber") and Frederick Hill "Hill"), by and through their counsel, and, submit the following Memorandum in Opposition to the Motion to Dismiss filed herein by the Defendant, Giordano:

**Background and Introduction**

1. Through their Complaint filed herein, the Plaintiffs are seeking specific performance, injunctive and other legal and equitable relief to prevent the defendants from seizing control of the plaintiff corporation, Data Mountain Solutions, Inc. ("DMS" or the "Corporation"), in violation of the Shareholders Agreement executed by the shareholders holding approximately 90% of the Corporation and the Corporation's By-laws. The Plaintiffs are also seeking the return of funds in excess of $240,000 stolen, withheld and converted by the Defendant, Giordano, from DMS and McUmber and an accounting of those funds, particularly the proceeds from DMS' contract with Native Technologies, Inc. ("NTI").

2. In response to the Defendant's Motion, the Plaintiffs incorporate their Motion for an Order to Show Cause, for Injunctive Relief and for Leave to Add Parties Defendant filed herein along with the exhibits attached thereto.

3. Since the filing of this case, the Defendant, Giordano, has engaged in a consistent pattern of delay and obfuscation as follows:

a. Most directly related to the Defendant's pending Motion, the Defendant has demanded arbitration, but failed to commence arbitration asserting that the Plaintiffs are required to commence arbitration even though they have not elected arbitration as their means of redress.

b. The Defendants have refused all attempts to provide even the most rudimentary documentation and accounting for DMS' contract and contract income from NTI. Since even prior to the commencement of this case, the Defendant, with the assistance of NTI, has

   (I)   refused to turn over any of the proceeds of the NTI contract to DMS,

   (ii)  has refused to provide any documentation concerning the current agreements or understandings between DMS and NTI (which were negotiated in secret by Giordano),

   (iii) has refused to turn over the compensation due Mr. McUmber for his substantial work under the NTI contract,

   (iv)  has refused to provide any accounting for the proceeds of the NTI

contract due DMS and McUmber since at least June, 2006,

(v) has conducted an improper, defective and illegal meeting of the shareholders for the purpose of facilitating the Defendant's attempt to hide assets, and

(vi) has opened two bank accounts in the name of DMS, both without notice to, or approval from, the remaining shareholders, officers or directors, for the purpose of hiding proceeds from the NTI contract from DMS and McUmber.

4. Additionally, Giordano and NTI, as part of their obvious strategy to control the GSA contract under which DMS performs as a subcontractor to NTI, have made repeated threats and promises to the Plaintiffs regarding the continuation of DMS' subcontract with NTI. These threats and promises coincided with negotiations between NTI and GSA (with substantial participation by DMS) to renew the current GSA (dotGOV) contract, which culminated in a commitment by the GSA to renew on or about March 1, 2007. These threats and promises were designed to induce DMS and its principals to refrain from taking action to protect their rights and claims against Giordano and NTI. Giordano and NTI used alternate means. On the one hand, NTI and its principal, Joseph Abbate, made numerous promises, prior to March 1, 2007, that he would start making the monthly payments due DMS and McUmber directly to them rather than to Giordano.[1]

---

[1] Both McUmber and DMS, through its President, Hill, and its CEO, McUmber have made multiple demands, both orally and in writing, to Abbate and NTI to cease making payment

Unfortunately, those promises appear to have been nothing more than an attempt to mislead the Plaintiffs into assisting Abbate, Giordano and NTI in obtaining a renewal of the GSA (dotGOV) contract for the benefit of Giordano and Abbate.

5. On the other hand, Giordano and Abbate have threatened the Plaintiffs by constantly communicating to the Plaintiffs that any negative action by the Plaintiffs would prevent the renewal of the GSA contract. Under the theory propounded by the Defendant, Giordano and Abbate, that would have included any additional action in the instant litigation and commencement of arbitration. Yet, the Defendant now seeks to have this case dismissed for failure to commence arbitration demanded (only) by the Defendant, Giordano.

6. Since this Court's Order of November 21, 2006, the following actions have taken place which may bear on the pending Motions herein:

    a. on or about December 1, 2006, DMS and McUmber notified Abbate and NTI not to make any more payments (due DMS or McUmber) to the Defendant, Giordano. The Plaintiffs directed all such payments be made directly to DMS at its United Bank account and to McUmber at his bank account. Abbate and NTI refused to take direction from anyone other than Giordano; and

    b. in December, 2006, Giordano called an improperly noticed and conducted shareholders' meeting and produced a "proxy" from the Defendant, Watson,

---

due McUmber and DMS to Giordano and to make those payments directly to DMS and McUmber.

apparently originated months before[2]; and

      c.  in December, 2006, Giordano opened up two bank accounts at Bank of America in Virginia and deposited funds belonging to DMS and McUmber into those accounts; and

      d.  the Plaintiffs offer to jointly file an arbitration and to share costs was refused by the Defendant, Giordano; and

      e.  in February, 2007, with the obvious assistance of Giordano, prepared a "risk management plan" for the GSA to "explain" NTI's failure to pay its subcontractor (DMS) for 8 months; and

      f.  in January and February, 2007, NTI and Abbate threatened DMS with termination if DMS and McUmber to not go along with the "Risk Management Plan"; and

      g.  in February, 2007, NTI started efforts to use a new contractor, replace McUmber or change the dotGOV email platform facilities but the GSA makes it clear to NTI that it will not renew unless DMS and McUmber remain in place; and

      h.  NTI delivered a letter to GSA on March 1, 2007[3] assuring GSA that all

---

[2] The Watson proxy is part of the purported minutes of the December meeting attached as an exhibit to the Plaintiffs' Motion seeking an Order to Show Cause and other relief.

[3] In a continuation of a devious pattern of deceit by NTI and Giordano, NTI refused to show DMS the proposed letter prior to its submission to GSA. During the two months prior to contract renewal commitment on March 1, 2007, NTI consistently refused to allow DMS or McUmber to review or comment upon submissions to GSA, even though some representations were made related to DMS' continuing work and commitment.

monies owed to the subcontractor have been paid and the contract can be renewed in May, 2007 with the same subcontractors (DMS and McUmber). Yet NTI has continued to advise DMS that the subcontract needs to be "renegotiated" but will not even provide a copy of the purported existing subcontract. NTI also continues to refuse to pay DMS or McUmber. It makes payments only to Giordano who is, at best, an administrator for the contract (on behalf of NTI).

    7. The Defendant's Motion to Dismiss is based solely on the failure to commence arbitration. While the Plaintiffs are prepared to commence arbitration, they believe, and therefor assert, that they are not required to do so under paragraph 10 of the Shareholders Agreement, the basis of this Court's direction in its Order of November 21, 2006. Since arbitration is not mandatory, but is triggered upon election of a party, it is the demanding party, the Defendant, Giordano, who must commence the arbitration. He has not done so, choosing only to continue his pattern of delay and obfuscation by asserting that he need not commence arbitration, or pay for it, but the Plaintiffs, who have not sought arbitration, should not only commence the arbitration, but should pay for it, as well.

    8. Because this is a somewhat unusual situation (Arbitration is not mandatory and the Plaintiffs have sought redress in this Court in accordance with the express language of the Shareholders Agreement), the Plaintiffs sought to compromise their position by offering to commence the arbitration with the Defendant(s). However, Giordano refused, as he always has, opting instead for the avenue of most delay.

9. For the last two months, prior to the GSA commitment to renew the dotGOV contract[4], the Defendant, Giordano, with the assistance of NTI and its principal, Abbate, have systematically threatened the Plaintiffs, and made promises, in an effort to stop the Plaintiffs from taking any further action related to the contract, arguably including arbitration. The Defendant has also refused to participate in the commencement of the arbitration, or to pay any portion of the arbitration cost, even though he is the only party demanding arbitration. Now, once the contract has been renewed, the Defendant seeks to turn his efforts to delay into a Motion to Dismiss. In essence, the Defendant now argues, in his Motion, that this case should be dismissed for failure to commence an arbitration the Defendant (and NTI) have been threatening the Plaintiffs against filing in the first place, at least prior to March 1, 2007. The Defendant and Abbate have consistently warned the Plaintiffs to refrain from taking any action, or making any statements, that indicated a significant dispute among the parties, at least to the extent it might impact the contract renewal commitment. Those warnings and the promises of renewed payments to DMS and McUmber are the reasons why the Plaintiffs delayed filing their Motion for an Order to Show Cause, for Injunctive Relief and for Leave to Add Parties Defendant. Despite the Plaintiffs' severe suspicions that the Defendant and Abbate were not acting in good faith, and despite the fact that the Plaintiffs were not being paid, the Plaintiffs

---

[4]The contract renewal date is May 10, 2007. However, in order to determine whether to renew, the GSA needed to make a commitment to proceed with NTI (and DMS) on March 1, 2007. GSA made such commitment to NTI and the Plaintiffs.

determined to cooperate in the renewal of the subject contract, hoping that NTI would honor its promises.  Unfortunately, that did not happen. In the meantime, the Defendant has chosen to reward the Plaintiffs' cooperation by filing the pending Motion to Dismiss.

10.   The Defendant now asserts that dismissal is the only appropriate remedy for the alleged delay.  However, even if the Plaintiffs were at fault herein, this court is well aware that trial-court dismissal of a lawsuit is a harsh sanction which should be used only in extreme cases. **Camps v. C & P Telephone Company**, 692 F.2d 120, 124 (D.C. Cir. 1981); accord, **Jackson v. Washington Monthly Co.**, 569 F.2d 119, 123 (D.C. Cir. 1977).  The sensible rule is that dismissal is proper only where there is a clear record of delay and lesser sanctions are insufficient. **Boazman v. Economics Lab., Inc., supra,** note 11, 537 F.2d 210,  at 212 (5th Cir. 1976), quoted in **Jackson**, 569 F.2d at 124. The above rule is uniformly supported across the country.  **See, for example,   United States ex rel Drake v. Norton Systems**, 375 F.3d 248 (2d Cir. 2004**), Rogers v. Kroger Co.**, 669 F.2d 317 (5th Cir. 1982**), McCargo v. Hedrick**, 545 F.2d 393 (4th Cir. 1976).

11.   Furthermore, the cases which the Defendant cites for support of his Motion are all distinguishable from the facts of this case. In **Ames**[5], for example, the Court determined that the Plaintiff had been unresponsive to several court orders and had failed to prosecute the case for more than a year.  At best, in the present case, the Defendant can argue that the filing of an arbitration claim was the Plaintiffs' responsibility and that the Plaintiffs have failed to undertake that responsibility to date, a delay of a few months, at best, which has not prejudiced the

---

[5] 108 FRD 299 (D.D.C. 1985)

Defendant. It is important to emphasize here, however, that there is no mandatory arbitration clause in the case at bar as there was in *Ames*. Thus, it is questionable, at best, whether the Plaintiffs have any requirement to commence arbitration. This Court's Order of November 21, 2006 only requires that the "parties" arbitrate their disputes in accordance with the Shareholders Agreement. The Plaintiffs assert the reasonable interpretation of the Court's Order is that the parties are required to arbitrate upon the demand of the Defendant which means that the Defendant must commence the arbitration. The Plaintiffs did not seek or demand arbitration and were not obligated to participate in arbitration absent the demand of the Defendant.

Moreover, it is clear that the Plaintiffs have proceeded in good faith to support the underlying dotGOV contract renewal which favors Giordano and NTI, even while the Plaintiffs are not being paid. Thus, not only is there no prejudice to the Defendant for any delay that may have been caused by the Plaintiffs, the Plaintiffs have also proceeded to act in good faith to protect the asset at issue in the meantime.

Furthermore, the Plaintiffs have prepared the arbitration demand (and statement of claim) and have offered to split the arbitration costs with the Defendant indicating good faith attempts to pursue this matter and to comply with this Court's Order of November 21, 2006.[6] It is the Defendant's continual game playing, keeping all income, paying no costs, avoiding all discovery and accounting, that has delayed justice in this case, arbitration or not.

12. The Defendant also relies on the case of *James v. McDonald's Corporation*, 417

---

[6]The Court's Order of November 21, 2006 does not compel the Plaintiffs to file arbitration. It requires "the parties" to commence arbitration "pursuant to Paragraph 10(a) of the Shareholders Agreement."

F.3d 672 (7th Cir. 2005). In that case, the Court ordered the Plaintiff to arbitrate her claims under a mandatory arbitration clause. However, the Plaintiff delayed more than a year, failing to commence an arbitration proceeding as required by her agreement which provided that disputes "shall be resolved...by final and binding arbitration..." ***Id.***, at 675. There is no such mandatory arbitration clause in the case at bar. Moreover, the Plaintiff, in ***James*** engaged in several dilatory maneuvers over a period of more than a year, finally resulting in dismissal. No such delay exists here and the only failing of the Plaintiffs, if any there be, is a delay in the filing of arbitration. Thus, Plaintiffs have exhibited no history of delay or non compliance which would justify such a harsh result as dismissal, let alone dismissal with prejudice. ***See Camps, supra***, 692 F.2d at 124.

13. In the case of ***Morris v. Morgan Stanley & Co***, 942 F.2d 648 (9th Cir. 1991), also cited by the Defendants, the Plaintiffs' case was dismissed for failure to prosecute after *more than two years* of delays. ***Morris*** is hardly analogous to the instant case.

14. None of the cases relied upon by the Defendant are close to the facts of this case. The Plaintiffs vehemently deny any wrongdoing in this case. The Plaintiffs believe they have readily dispelled the notion that they have somehow acted in bad faith or have failed to prosecute this case. However, even assuming some delay or wrongdoing by the Plaintiffs, their actions do not rise to near the level of that required for dismissal at this stage of the case.

15. The Plaintiffs assert that dismissal in this instance requires the Court to find, *inter alia,* that the Plaintiffs have exhibited a history of delay, that the Defendant has been prejudiced by the Plaintiffs alleged delaying actions and that the Plaintiffs are acting in bad faith. ***See, for example, Poulis v. State Farm Fire and Casualty Company***, 747 F.2d 863, 868-70 (3rd Cir.

1984).  The Plaintiffs assert that they have not sought to delay anything but have been the victims of the Defendant's incessant dilatory tactics, the failure of the Defendant to participate in arbitration being just one of them.  Additionally, there has been no prejudice to the Defendant since he continues to wrongfully take all proceeds from the subject (dotGOV) contract, has paid himself at the expense of the Plaintiffs since June, 2006, and continues to enjoy the same status and income as he had in June, 2006[7].  Furthermore, the Plaintiffs have shown extreme good faith in cooperating, without compensation, in the renewal of the (dotGOV) contract through which Giordano and NTI (Abbate) are paid.  Plaintiffs have also prepared the necessary documents to commence arbitration of the arbitrable disputes between the parties and will file that arbitration forthwith if the Court Orders, or directs, the Plaintiffs to do so.

      WHEREFORE, the Plaintiffs respectfully request that this Court enter an Order denying the Motion to Dismiss filed herein by the Defendant, Giordano and for such other and further

Dated:  March 14, 2007                                    HUGHES & BENTZEN, PLLC

                          By:   /s/Philip J. McNutt
                                 Philip J. McNutt
                                 Federal Bar No. MD08555
                                 DC Bar No. 491258
                                 1100 Connecticut Avenue, NW
                                 Suite 340

---

[7] In fact, Abbate had told the Plaintiffs that he is paying Giordano twice his previous income (paying Giordano the compensation due both Giordano an McUmber).  He has not provided any explanation for the double payment to Giordano, on the one hand, and no payment to McUmber, on the other hand.

                                          Washington, D.C.  20036
                                          Tel: (202) 293-8975

                                          <u>Attorneys for Plaintiffs</u>

## Certificate of Service

      I hereby certify that a copy of the foregoing Memorandum was served electronically on the 15th Day of March, 2007 on counsel below and by regular, first class mail, postage prepaid, on the 15th day of March, 2007 to the Defendant, Anthony Watson, as follows:

    David Bledsoe, Esquire
    and
    John W. Thomas, Esquire
    and
    Anthony Watson
    303-F Holden Green
    Cambridge, MA 02138

                                          /s/Philip J. McNutt
                                          Philip J. McNutt