**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| _____ | ) | |
| DATA MOUNTAIN SOLUTIONS, INC., <u>et al.</u>, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | CA 06-1666 (PLF) |
| | ) | |
| GREGG GIORDANO, <u>et al.</u>, | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

**DEFENDANT GREGG GIORDANO'S OPPOSITION TO PLAINTIFF'S**
**MOTION FOR AN ORDER TO SHOW CAUSE, FOR INJUNCTIVE RELIEF**
**<u>AND FOR LEAVE TO ADD PARTIES DEFENDANT</u>**

Defendant Gregg Giordano, by and through undersigned counsel, files this Opposition To Plaintiff's Motion For An Order To Show Cause, For Injunctive Relief And For Leave To Add Parties Defendant.

Defendant incorporates herein his arguments previously raised in its two previous Motions to Dismiss. Plaintiffs have failed to file arbitration as ordered by this Court, and thus this matter should be dismissed with prejudice for failure to prosecute. This Court has neither subject matter jurisdiction over this case, nor personal jurisdiction over defendant Giordano. This Court has twice denied the relief Plaintiffs seek again in this motion.

Plaintiffs seek herein to reargue matters already decided by this Court. Rather than engage in settlement discussions, Plaintiffs filed this litigation in court, seeking the extraordinary remedy of a temporary restraining order and preliminary injunction. On

September 29, 2006, this Court denied Plaintiffs' hearing for a Temporary Restraining Order, specifically finding that the plaintiffs would suffer no irreparable injury whatsoever.[1]  Defendant Giordano then filed a Motion to Dismiss or Stay, as Plaintiffs' Complaint was clearly and unmistakably subject to the mandatory arbitration provision in the Shareholder's Agreement.   On November 21, 2006, this Court granted the Motion to Dismiss or Stay, requiring that the Plaintiffs seek resolution of their claims by arbitration. On December 19, 2006, the Court denied Plaintiff's Motion for a Preliminary Injunction.

To date, and despite repeated requests by Defendant Giordano, Plaintiffs have failed to commence any such arbitration in direct violation of this Court's November 21, 2006 Order.  Undersigned counsel wrote to Plaintiffs' counsel on November 28, 2006, asking when plaintiffs intended to file the arbitration.  *Plaintiffs' counsel did not respond to that letter.*  Undersigned counsel wrote to Plaintiff's counsel again on January 9, 2007, asking when plaintiffs intended to file the arbitration.  *Plaintiffs' counsel did not respond to that letter either.*  Suddenly on February 7, 2007,[2] Plaintiffs' counsel for the first time addressed the arbitration, suddenly contending that the defendant had to pay half of Plaintiffs' filing fee, and that if defendant failed to do so *by noon the next day*,  "I will assume that your client is no longer interested in arbitration and will so advise the Court." Undersigned counsel wrote Plaintiffs' counsel on February 7, 2007, and informed him that if he did not file the arbitration by February 9, 2007, defendant would move to

---

[1] In support of their Motion for Temporary Restraining Order and Motion for Preliminary Injunction, both plaintiffs submitted false declarations, under penalty of perjury, that the bank account for DMS was near zero balance.  In fact, the bank account contained over $120,000.

[2]  The letter is dated February 5, but was sent by fax on February 7.

dismiss for failure to prosecute. [3] Rather than actually pursue the relief that they claim to

be entitled to, Plaintiffs have simply done nothing. [4]

The only claims before the court were Plaintiffs'.  Defendants are under no

obligation to fund Plaintiffs' filing fees.  This case has been stayed, and plaintiffs' tactic

is to simply do nothing, then come back to the Court and complain that nothing has

happened.

A failure to file arbitration, after having been ordered to do so, is a failure to

prosecute and constitutes grounds for dismissal under Rule 41.  Ames v. Standard Oil

Co., 108 F.R.D. 299, 302 (D.D.C. 1985); James v. McDonald Corp., 417 F.3d 672 (7th

Cir. 2005) (case dismissed where plaintiff failed to initiate arbitration) ; Tinsley v. Quick

& Reilly, Inc., 216 F.R.D.  337 (E.D.Va. 2001) (same) ; Gonino v. Unicare, Inc., 2005

WL 608158 (N.D. Tex. 2005) (obligation to file arbitration is on plaintiff as party seeking

damages).  In the matter at hand, Plaintiffs simply refuse to comply with the November

21, 2006 Order to commence arbitration.

Plaintiffs' conduct clearly merits a dismissal with prejudice.  Plaintiffs came into

this Court frivolously seeking emergency relief, which this Court quickly and easily

denied.  Plaintiffs' complaint was clearly barred by the arbitration clause of the

Shareholders' Agreement.  This Court readily agreed, ordering the Plaintiffs to bring their

claims in arbitration.  Since that time, Plaintiffs have done absolutely nothing at all,

despite repeated demands by Defendant, to comply with this Court's order and file their

arbitration.  Plaintiffs' absolute indifference to filing arbitration shows how truly

---

[3] Correspondence on this issue is attached as Exhibit A.
[4]  The true reason that plaintiffs do not wish to file the arbitration is that they do not wish to pay the filing fee.  In order to bring their frivolous claims in arbitration, seeking nearly $3 million in damages (over a company with annual revenues of less than $300,000), they will be forced to pay a filing fee in excess of $15,000.

frivolous their initial requests for injunctive relief are: Plaintiffs have no desire whatsoever to have their claims actually heard.

It has been over three months since this Court ordered these claims to be brought in arbitration. Plaintiffs have failed to comply with that Order, and the Motion to Dismiss should be granted. As the Court in <u>James v. McDonald Corp.</u>, 417 F.3d 672 (7th Cir. 2005) noted:

> The district court noted that Ms. James continued to assert the same arguments that it already had ruled were not meritorious…This request comes far too late in the day…Our ruling did not give James the option of foregoing arbitration, waiting nearly a year, asking for another bite at the apple, and then reviving for appeal purposes a ruling made more than a year ago. …Once [the district court] so ordered, it was incumbent on Ms. James to abide by the district court's ruling and not to continue to submit arguments that the district court already had determined were meritless.

<u>Id</u>. at 681. Plaintiffs herein are using the same tactic: failing to file arbitration as ordered, and then seeking to have this Court reconsider and overturn its previous rulings.

Plaintiffs' reasons for delay are clear. Plaintiffs wish to pretend that the Court granted, rather than denied, their motion for a preliminary injunction, so that they may continue to illegally control the finances of the company and strip the company of its assets. On January 24, defendant demanded inspection of DMS's accounting records as is his right as a shareholder under West Virginia Code §31D-16-1602. Plaintiffs refused to permit such inspection. Plaintiffs are the minority shareholders, holding less than 40% of the Company's stock. They realize that if the shareholders of DMS discover their defalcations, and are allowed to vote, they will be removed as officers and employees of DMS. Plaintiffs also wish the stock book to remain frozen, because it incorrectly fails to record that plaintiff Fred Hill has sold back the vast bulk of his stock to the Company.

Plaintiffs seek absurd results herein.  For example, Plaintiffs, who have yet to abide by any order of this Court, seek an order to have Gregg Giordano held in contempt of orders that do not order him to do anything.  Plaintiffs fail to cite any provision of any order that Giordano has violated for obvious reasons:  he is in violation of no court order.

For the reasons stated herein, Defendant Gregg Giordano asks that the Court deny Plaintiff's Motion, dismiss with prejudice the action in controversy, and such other relief as to the Court seems proper.

Respectfully submitted,

By:  /s/ David I. Bledsoe
     DAVID I. BLEDSOE
     Attorney for Defendant Gregg Giordano
     Bar Number 422596
     bledsoelaw@earthlink.net
     300 North Washington Street
     Suite 700
     Alexandria VA 22314
     Tel.:  703-379-9424
     Fax:  703-684-1851

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 16, 2007, a copy of the foregoing **MOTION TO DISMISS CASE WITH PREJUDICE** was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing to:

> Philip J. McNutt, Esquire
> Hughes and Bentzen, PLLC
> 1100 Connecticut Avenue
> Suite 340
> Washington, DC  20036

> John W. Thomas, Esquire
> Luman, Lange, Thomas & McMullen
> 1660 L Street NW
> Suite 3506
> Washington, DC  20036

I further certify that on March 16, 2007,  notice of this filing was made to the following party by depositing a copy of the foregoing in the United States Mail, first class postage paid, addressed to:

> Anthony Watson
> 303-F Holden Green
> Cambridge, MA  02138

_____ /s/David I. Bledsoe _____
David I. Bledsoe

**DAVID I. BLEDSOE**
ATTORNEY AT LAW
300 NORTH WASHINGTON STREET
SUITE 708
ALEXANDRIA, VIRGINIA 22314
TELEPHONE (703) 379-9424
FACSIMILE (703) 684-1851

EMAIL: BLEDSOELAW@EARTHLINK.NET

ADMITTED IN VIRGINIA,
MARYLAND AND D.C.

November 28, 2006

**BY FAX**
Philip J. McNutt, Esquire
Hughes and Bentzen
1100 Connecticut Avenue
Suite 340
Washington DC  20036

Re: Data Mountain Solutions, Inc.

Dear Mr. McNutt:

Please let me know when you are going to file the arbitration.

Sincerely,

David I. Bledsoe

**DAVID I. BLEDSOE**
ATTORNEY AT LAW
800 NORTH WASHINGTON STREET
SUITE 708
ALEXANDRIA, VIRGINIA 22314
TELEPHONE (703) 879-9424
FACSIMILE (703) 684-1851

ADMITTED IN VIRGINIA,
MARYLAND AND D.C.

EMAIL: BLEDSOELAW@EARTHLINK.NET

January 9, 2007

Philip J. McNutt, Esquire
Hughes and Bentzen
1100 Connecticut Avenue
Suite 340
Washington DC  20036

     Re: <u>Data Mountain Solutions, Inc.</u>

Dear Mr. McNutt:

     Enclosed please find a copy of the Minutes of the Special Shareholders' Meeting held last month.

     Contrary to your last letter, the Special Shareholders' Meeting is not only proper, but it is mandatory under West Virginia law upon Mr. Giordano's demand.  We have complied with all applicable statutory requirements.  It is also apparently the first shareholders' meeting held in 2006, and apparently only the second ever held in the corporation's life.  While I understand why your clients dislike permitting the shareholders to vote, it is a statutory requirement, and the actions taken there are binding, their wishes notwithstanding.  Also, contrary to your last letter, there are no orders of any court that my client has violated or is violating.

     Please note that the shareholders have passed a resolution requiring Mr. Hill to provide them with the financial data of the company's expenditures.  I hope he will comply.

     On November 16, I wrote you a letter detailing in three pages the numerous problems that your clients' actions were causing, many of which imperil DMS's survival. I have had no response to that letter, nor have any remedial actions been taken by your clients.  Nor do your clients have any apparent intention of filing the arbitration, as the Court ordered almost two months ago.  In my November 16 letter, I also suggested the use of a neutral third-party mediator, but again have had no response on that front either.

     One of the issues that requires addressing is that as the sole provider for technology service to NTI on their federal government contract with the GSA DotGov program, DMS is required to adhere to and abide by federal guidelines and to remain in compliance with the GSA Certification and Accreditation, including the need to have at least two system administrators with the ability to manage and maintain all aspects of the

DotGov systems. DMS currently only has one, Mr. McUmber. In addition to the missing System Administrator, DMS has failed to replace the Technical Helpdesk personnel that was filled by Kathleen Bowman. DMS's purposed manpower to NTI, which was mirrored to the GSA in NTI's winning proposal, called for the additional technical support personnel. Furthermore, the failure to have a escrowed source code and a redundant employee capable of handling source code issues also puts DMS in violation of government guidelines contained in the GSA Certification and Accreditation.

The Helpdesk personnel issues must be resolved by the January 16 meeting scheduled with the GSA, and the back-up System Administrator issue must be resolved immediately. Mr. Giordano has identified to fill these positions two former DMS contractors: Jing Xeu, who has assisted DMS in the past on building the DotGov backend systems, to help maintain all DMS source code that affect the GSA; and Jay Pendarvis to act as general system administrator and technical support. Given your clients' failure to remedy these glaring problems, my client in his capacity as an officer of DMS intends to hire them as DMS employees as soon as possible.

Mr. McUmber must work with these individuals to ensure that the contract is not affected. Mr. McUmber will need to turn over current copies of source code to Mr. Xeu and get him up to speed on the changes made since he last worked on the source code. Mr. McUmber will need to make Mr. Xeu aware of any changes to the source code and update him with that code within 24 hours of that change. Mr. McUmber will also need to work with Mr. Pendarvis, once Mr. Pendarvis is approved by the GSA DotGov Program Manager.

Finally, Mr. Hill keeps writing my client accusing him of "fiducial" violations and demanding that he deposit the NTI checks into the United bank account, the same bank account from which Mr. Hill, illegally and without any corporate authority, removed my client as a signatory. As we offered over ten times, both in writing and orally in the court-ordered settlement meeting, we are willing to put all assets of the company in an account that requires the assent of all parties for expenditures. Your clients repeatedly refused, demanding that they, and only they, have the ability to control DMS's funds, while simultaneously refusing to escrow the source code being held hostage by Mr. McUmber. The offer still stands open, but we have no intention of cooperating with your clients' illegal and improper acts.

Please let me know if you clients are going to file the arbitration.

Sincerely,

David I. Bledsoe

cc: All shareholders

MINUTES OF THE SPECIAL SHAREHOLDERS MEETING OF
DATA MOUNTAIN SOLUTIONS ON
DECEMBER 21, 2006

The meeting commenced at 10:00 am, but business was postponed until 10:30 am to
await the arrival of any additional Shareholders.

Notice of a Special Shareholders' Meeting was sent in accordance with Data Mountain
Solutions Bylaws and the West Virginia State Code.   Notice was sent by US Mail on
12/11/06 to all registered Shareholders at their last known address.  A copy of the Notice
is attached.

The Secretary noted that he had received Proxies from two of the Shareholders of record,
Tony Watson and John Millhiser.  Both Proxies grant Gregg Giordano the authority to
vote all shares of record on behalf of Mr. Watson and Mr. Millhiser. Copies of the
Proxies are attached.

The purpose of this meeting was to put before the Shareholders of DMS for voting the
three (3) specific issues described in the Notice.  The issues are as follows:

> Issue 1:  To amend Section 2.5 of the Bylaws by deleting the current provision
> and replacing it with the following Section:
>
> "Section 2.5. Chairman.  The Chairman of the Board of Directors shall
> be elected by the majority vote of the outstanding shares of the
> Corporation."
>
> Issue 2: To elect a Chairman of the Board of Directors.
>
> Issue 3: To require the Treasurer to immediately provide all shareholders with all
> financial records pertaining to the expenditures of the corporation.

In attendance:

Gregg Giordano

Voting by Proxy:

Tony Watson
John Millhiser

Record of stock

| Name | Number of shares |
|------|------------------|
| Tony Watson | 22,500 |
| Gregg Giordano | 22,500 |
| John Millhiser | 1,000 |
| Total Shares Present | 46,000 |

A quorum was present.

Discussion of Issues and Recorded Vote

Issue 1:
Votes to pass amendment to the DMS By-Laws <u>46,000 shares</u>
Votes to deny amendment to the DMS By-Laws <u>0</u>

Issue 2:
Proposed Chairman of the Board of Directors: Gregg Giordano
Votes received for Mr. Giordano <u>46,000 shares</u>
Votes received for other candidates <u>0</u>

Issue 3:
Votes to require Treasurer to provide financial records to Shareholders <u>46,000 shares</u>
Votes to not-require Treasurer to provide financial records to Shareholders <u>0</u>

There being no further business before the Shareholders, this meeting was adjourned.

_____ 1/9/07
DMS Secretary                    Date

## NOTICE OF DEMAND FOR SPECIAL SHAREHOLDERS' MEETING

I, Gregg Giordano, being the record owner of more than ten percent of the outstanding shares of the corporation, demand a Special Shareholder's Meeting be held to vote on the following subjects:

1). To amend Section 2.5 of the Bylaws by deleting the current provision and replacing it with the following Section:

"Section 2.5. Chairman. The Chairman of the Board of Directors shall be elected by the majority vote of the outstanding shares of the Corporation."

2) To elect a Chairman of the Board of Directors.

3) To require the Treasurer to immediately provide all shareholders with all financial records pertaining to the expenditures of the corporation.

Gregg Giordano

Dated: 12/10/06

## NOTICE OF SPECIAL SHAREHOLDERS' MEETING

**PLEASE TAKE NOTICE THAT** pursuant to Section 1.2 of the Bylaws of Data Mountain Solutions, Inc. and the West Virginia Code, upon demand of Gregg Giordano, being the record owner of more than ten percent of the outstanding shares of the corporation, a Special Shareholder's Meeting will be held on December 21, 2006 at 10 am at the offices of the Corporation at 8619 Westwood Center Drive, Suite 200, Vienna, VA 22182.

The purposes of the Special Shareholders' Meeting shall be:

1). To amend Section 2.5 of the Bylaws by deleting the current provision and replacing it with the following Section:

"Section 2.5. Chairman. The Chairman of the Board of Directors shall be elected by the majority vote of the outstanding shares of the Corporation."

2) To elect a Chairman of the Board of Directors.

3) To require the Treasurer to immediately provide all shareholders with all financial records pertaining to the expenditures of the corporation.

DATA MOUNTAIN SOLUTIONS, INC.

By: _____

Gregg Giordano, Secretary

Dated: _12/10/06_____

## PROXY

We, John D. and Sandra O. Millhiser, the undersigned, being the joint owners of shares of capital stock of Data Mountain Solutions, Inc., a corporation organized and existing under the laws of the State of West Virginia, do hereby jointly and severally constitute and appoint Gregg Giordano, as our true and lawful attorney-in-fact, for us and in our name, place, and stead, with full power of substitution, for a period of ninety days from September 25, 2006, to vote as our proxy all our shares in such corporation, at any and all meetings, regular or special, of the stockholders of such corporation, or at any adjournments thereof which may be held during such period, giving and granting to our above named attorney-in fact all the powers the undersigned would possess if personally present.

We hereby revoke all proxies heretofore made by us.

The undersigned hereby reserve the right to cancel this proxy at any time upon and by filing with the Secretary of the corporation, written notice of such cancellation signed by the undersigned.

Proxy, page 2

In witness whereof, we have executed this proxy on _Sept. 25,_ , 2006.

_John D. Millhiser_
John D. Millhiser

CITY/COUNTY OF _Loudoun_ )
STATE OF _Virginia_ )

    Appeared before me this ___25th___ day of _September_ , 2006, John D. Millhiser, who signed the above in my presence and acknowledged the same to be his act and deed.

_Ruth Elizabeth Maye_
Notary Public

My Commission Expires: _July 31, 2008_

_Sandra O. Millhiser_
Sandra O. Millhiser

CITY/COUNTY OF _Loudoun_ )
STATE OF _Virginia_ )

    Appeared before me this __25th__ day of _September_ , 2006, Sandra O. Millhiser, who signed the above in my presence and acknowledged the same to be her act and deed.

_Ruth Elizabeth Maye_
Notary Public

My Commission Expires: _July 31, 2008_

### PROXY

*AJW*

*December 17, 2006*
*AJW*

I, Anthony J. Watson, the undersigned, being the owner of shares of capital stock of Data Mountain Solutions, Inc., a corporation organized and existing under the laws of the State of West Virginia, do hereby constitute and appoint Gregg Giordano, as my true and lawful attorney-in-fact, for me and in my name, place, and stead, with full power of substitution, for a period of ~~ninety~~ *sixty* days from ~~September 25~~, 2006, to vote as my proxy all my shares in such corporation, at any and all meetings, regular or special, of the stockholders of such corporation, or at any adjournments thereof which may be held during such period, giving and granting to my above named attorney-in fact all the powers the undersigned would possess if personally present.

I hereby revoke all proxies heretofore made by me.

The undersigned hereby reserves the right to cancel this proxy at any time upon and by filing with the Secretary of the corporation, written notice of such cancellation signed by the undersigned.

In witness whereof, I have executed this proxy on *12/17*             , 2006.

_____
Anthony J. Watson

CITY/COUNTY OF *FAIRFAX* )
STATE OF *VIRGINIA*         )

Appeared before me this *17th* day of *December*, 2006, Anthony J. Watson, who signed the above in my presence and acknowledged the same to be his act and deed.

Kathleen Bowman
NOTARY PUBLIC
Commonwealth of Virginia
My Commission Expires 3/31/2010

_____
Notary Public

My Commission Expires: _____

# HUGHES & BENTZEN, PLLC

ATTORNEYS AT LAW
1100 CONNECTICUT AVENUE, NW
SUITE 340
WASHINGTON, DC 20036

(202) 293-8975
FACSIMILE (202) 293-8973

WWW.HUGHESBENTZEN.COM

MICHAEL P. BENTZEN, P.C., DC, MD
GEORGE J. HUGHES, DC, MD
ELIZABETH HUGHES, DC, MD
PHILIP J. MCNUTT, P.C., DC, MD
STUART H. SORKIN, P.C., DC, FL
CHRISTOPHER WHEELER, DC, MD

February 5, 2007

OTHER OFFICES:
ROCKVILLE, MARYLAND

## BY FACSIMILE TELECOPY (703-684-1851) AND REGULAR MAIL

David I. Bledsoe, Esquire
601 King Street
Alexandria, VA 22314

Re: Data Mountain Solutions, Inc., et al v. Giordano, et al

Dear Mr. Bledsoe:

It is my understanding from Native Technologies, Inc. that, since June, 2006, your client has received all of the payments due DMS and Derek McUmber under the contract commonly referred to as the .gov contract with the General Services Administration. It is also my understanding that your client has been paid for all of his services to date under the same contract.

You will recall that after my clients commenced litigation against Mr. Giordano you responded with a demand for arbitration. However, it is apparent that you have no intention of proceeding with arbitration, despite Judge Friedman's order of November 21, 2006, granting your Motion requiring Arbitration as provided in the Shareholders' Agreement. For your information, we have investigated arbitration before the American Arbitration Association, the forum required by the Shareholders' Agreement. In order to commence an arbitration proceeding concerning the disputes under the Shareholders' Agreement, the fee is approximately $3250. If you wish to proceed with arbitration of those issues, then let me know. I will be happy to ask my clients to contribute half of the arbitration cost upon receipt of your client's half, or your assurance that the funds for arbitration have been deposited into your account. Otherwise, I don't want to waste the AAA's time. If I don't hear from you on this issue by 12 p.m. Thursday, February 8, 2007, I will assume that your client is no longer interested in arbitration and will so advise the Court.

Additionally, I am aware that you have advised your client to proceed with a shareholders' meeting in December, 2006 which attempted to change the directors, officers, management and operating authority of the DMS, despite the representations made to Judge Bates on September 29, 2006. Those representations were the foundation of Judge Bates' order of September 29, 2006 which was entered "in light of the parties' representations to the Court...". Additionally, as you are aware it

David I. Bledsoe, Esquire
February 6, 2007
Page 2

was the clear intent of the Court that there be no changes in the corporate records, management or
authority of DMS absent a court order or final arbitration award (decision).

Moreover, despite your assurances that your client would take all necessary steps to "make or
facilitate making and standard and necessary corporate payments", your client has deliberately hidden
assets of DMS by opening up at least two bank accounts under the Federal Tax I.D. of DMS, without the
knowledge or consent of the corporation or my clients. We believe that all of the proceeds of the .gov
payments to DMS have been deposited into those accounts, except for payments which your client has
taken personally. It seems obvious that these actions were done with your consent if not directly upon
your advice. I want to bring these matters to the attention of the court. Before I do so, however, I
wanted to provide you the opportunity to explain to me why these actions do not violate the Court's prior
Orders entered herein and do not require additional court intervention.

Finally, it is my understanding that your client has made several demands for documentation and
information despite the Court's stay of discovery (and all proceedings). If you wish to commence
discovery we are willing to discuss a mutually agreeable exchange of documents, subject, of course, to
the court's approval.

Please let me have your response by 5 p.m. Thursday, February 8, 2007.

Please contact me if you have any questions regarding the above.

Sincerely,

Philip J. McNutt

cc:   Derek McUmber
      Frederick Hill

**DAVID I. BLEDSOE**
ATTORNEY AT LAW
300 NORTH WASHINGTON STREET
SUITE 708
ALEXANDRIA, VIRGINIA 22314
TELEPHONE (703) 379-9424
FACSIMILE (703) 684-1851

EMAIL: BLEDSOELAW@EARTHLINK.NET

ADMITTED IN VIRGINIA,
MARYLAND AND D.C.

February 7, 2007

**BY FAX**
Philip J. McNutt, Esquire
Hughes and Bentzen
1100 Connecticut Avenue
Suite 340
Washington DC  20036

     Re: <u>Data Mountain Solutions, Inc.</u>

Dear Mr. McNutt:

     I received your letter of February 7.

     You clearly do not understand how this works.  Your clients as plaintiffs brought multiple claims in federal court; we did not.  The Court ordered your clients to bring those claims in arbitration as required by the arbitration provision in the shareholders' agreement.  I have asked you at least three times in writing when you are going to file the arbitration.  You have never responded to those requests.

     If you don't want to bring those claims in arbitration, then I will move to dismiss those claims for failure to prosecute.  Your claim that "you don't want to waste the AAA's time," while ironic, given the enormous waste of scanty resources that you and your clients have insisted upon, is immaterial: you've been ordered to file these claims in arbitration.  My client is under no obligation to pay your filing fees.  Thus, any representation that due to your failure to file the arbitration, my client is "no longer interested in arbitration" would be 1) a bizarre misinterpretation of your clients' obligations under the law and 2) yet another misrepresentation to the Court.  Please be advised that you are not authorized to represent to anyone my client's desires and intentions.

     Neither I nor my client have violated any order, as your failure to cite any actual provision of any order confirms.

     Likewise, I have continually sought your clients' cooperation in jointly managing the assets of the corporation, despite your client's removing him from the DMS checking account without any corporate authority.  Your clients have steadfastly refused, insisting that they and only they have sole authority over corporate funds, and indeed will not even

reveal to the shareholders or other officers what they are spending the corporate funds on. This required that we seek corporate records as a shareholder under West Virginia law. The request by Mr. Giordano for the records he is entitled to by West Virginia law is not "discovery," and isn't forbidden by any order, and indeed, could not be. Nonetheless, your clients have violated the inspection statute, apparently unwilling to reveal how DMS's funds are disappearing. We will take that issue up as West Virginia law permits.

The shareholders' meeting is actually required by West Virginia law and the bylaws. While I understand your clients' unwillingness to let the shareholders vote, there is no order forbidding a shareholders' meeting, and any such order would be difficult to imagine. For example, the docket will show that you filed two motions seeking to enjoin any "changes in corporate records or authority." Both were denied by the Court. I am uncertain as to how you believe a denial of the relief you sought is actually a grant of that relief. Thus, it will be impossible for you to maintain that we have violated any order, or any representation that I have made to the Court.

It has been almost three months since the Court ordered you to pursue your claims in arbitration. If you have not filed your arbitration by this Friday, I will move to dismiss the case.

Sincerely,

David I. Bledsoe

cc: John Thomas. Esq.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                          )
DATA MOUNTAIN SOLUTIONS, INC., et al.,     )
                                                          )
              Plaintiffs,                          )
                                                          )
v.                                                      ) CA 06-1666 (PLF)
                                                          )
GREGG GIORDANO, et al.,                          )
                                                          )
              Defendants.                        )
_____


**[PROPOSED] ORDER**

            THIS MATTER HAVING COME BEFORE THE COURT upon the Motion of

Plaintiffs For An Order To Show Cause, For Injunctive Relief And For Leave To Add

Parties Defendant., and it appearing to the Court that Plaintiffs have failed to file

arbitration as ordered by this Court's Order of November 21, 2006, and further that the

Court has already twice denied Plaintiffs the injunctive relief sought in the Motion, and

that the Motion is otherwise without merit, it is hereby

            ORDERED that the Motion is denied.

            Ordered this _____ day of _____, 2007.



                                                          _____
                                                          Judge Paul L. Friedman
                                                          United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                  )
DATA MOUNTAIN SOLUTIONS, INC., et al.,            )
                                                  )
               Plaintiffs,                        )
                                                  )
v.                                                ) CA 06-1666 (PLF)
                                                  )
GREGG GIORDANO, et al.,                           )
                                                  )
               Defendants.                        )
_____

**[PROPOSED] ORDER**

THIS MATTER HAVING COME BEFORE THE COURT upon the Motion of

Defendant Gregg Giordano to Dismiss, to Stay Proceedings, and to Compel Arbitration,

and it appearing to the Court that there is a valid and binding arbitration agreement

between the parties, and that the subject matter of the Complaint and plaintiffs' claims

are arbitrable under that agreement, further appearing to the Court that Defendant

Giordano is not subject to long-arm jurisdiction in this matter, it is hereby

ORDERED that the parties are to submit their claims to arbitration pursuant to the

Shareholders' Agreement, and this Complaint is dismissed.

Ordered this _____ day of _____, 2006.


                                        _____
                                        Judge Paul L. Friedman
                                        United States District Judge