IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DATA MOUNTAIN SOLUTIONS, INC.,                    :
et al
                                                  :
                        Plaintiffs
                                                  :
        v.
                                                          1:06-CV-01666-PLF
                                                  :
GREGG GIORDANO, et al
                                                  :
                        Defendants
                                                  :

**PLAINTIFFS' MEMORANDUM IN REPLY TO DEFENDANT GREGG GIORDANO'S OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE, FOR INJUNCTIVE RELIEF AND FOR LEAVE TO ADD PARTIES DEFENDANT**

COME NOW the Plaintiffs herein, by and through their undersigned counsel, and for their Reply to the Defendant's Opposition, state as follows:

1. The Defendant, through his Opposition, seeks to paint a picture of the Plaintiffs as dilatory parties in this action. In the meantime, the Defendant continues to take all income from the Plaintiffs' main source of revenue, the dotGOV contract between GSA and Native Technologies, Inc. ("NTI"), under which the Plaintiffs', DMS and McUmber, provide all of the essential services as subcontractor to NTI.

2. The Plaintiffs submit that the following issues should be determined under the Plaintiffs' pending Motion:

   a. whether, in light of the above actions/inactions by the Defendant, the Plaintiffs are now entitled to additional relief, including injunctive relief; and

   b. whether the Defendant has violated the Court's existing Orders by *inter alia*:

(i) failing to deposit DMS funds into the DMS corporate account,

(ii) by converting money belonging to DMS and McUmber to Giordano,

(iv) by attempting to convert DMS' contract with NTI to himself or to an entity he controls, or

(v) conducting an illegal and improper meeting of shareholders to change his position in DMS and to further his attempts to steal the assets and business opportunities of DMS.

c.  whether the Defendant, Giordano, is obligated to commence the arbitration ordered by this Court's Order of November 21, 2006; and

d.  whether, in light of the new allegations set forth in the Plaintiffs' Motion, the Court should grant the Plaintiffs leave to add NTI and its principal, Joseph Abbate, as parties defendant.

3.  In his Opposition, the Defendant has not disputed any of the factual allegations in the Plaintiffs' Motion, nor has he argued against any of the legal grounds for relief asserted by the Plaintiffs.  Instead, he has only asserted that the Plaintiffs' case should be dismissed, with prejudice, for failing to commence an arbitration desired only by the Defendant, Giordano.  This Court should not be fooled by the Defendant's attempt to obfuscate the real issues in this case that are clearly spelled out in the Plaintiffs' Motion.  Two things should be obvious to the Court related to the Defendant's newest Motion to Dismiss:  (1) the Defendant has no desire to arbitrate.  The current delays only benefit the Defendant who continues to scheme against his own company for transparent, selfish reasons; (2)  the Defendant has no interest in paying the cost to arbitrate, even though he is the one demanding arbitration.

4. The Plaintiffs are not delaying arbitration. If the Court determines, or confirms, that the Court intended that the Plaintiffs commence arbitration, the Plaintiffs will proceed. They have already prepared the arbitration papers.[1] However, as stated in the Plaintiffs' Motion, they have concerns about commencing an arbitration when there is no mandatory clause related to any of the disputes among the parties and not all of the Plaintiffs' claims are related to the Shareholders' Agreement (compensation to DMS and McUmber under the NTI contract, for example.

5. None of the cases cited by the Defendant in support of his request for dismissal are germane, factually, or in legal argument, to the instant case. For example, all of the cases cited by the Defendant, involve mandatory arbitration clauses. Here, as the Court is well aware, the arbitration clause is not mandatory. In fact, the Shareholders' Agreement (paragraph 10(b)) spells out that, absent a demand for arbitration by "a party," injunctive relief and specific performance are permissible remedies in a court of law. Almost every case cited by the Defendant shows years of neglect and deliberate failure to comply with more than one court order. Moreover, in almost every instance, the Plaintiff was given more than one warning before the case was finally dismissed.

6. Moreover, the Defendant's lame attempt to shoe horn this case into the language and meaning of the ***James*** case cited by the Defendant is a sign of the lack of support for his position and his desperation. The Defendant first asserts that the Plaintiffs have failed to comply with this Court's order of November 21, 2006. The Plaintiffs have shown that they have attempted to comply. They have contacted the AAA, prepared the Arbitration documents and have even

---

[1] In fact, counsel represents that the Demand for Arbitration and Statement of Claim required to commence arbitration was prepared well prior to the Court ordered Status Report, due March 1, 2007. Counsel has also discussed the commencement of arbitration on more than one occasion with General Counsel at the American Arbitration Association ("AAA")in Washington, DC.

offered to split the arbitration costs with the Defendant and to file a joint arbitration. Given the fact that this Court's Order of November 21, 2006 directs "the parties" to proceed with arbitration in accordance with the Shareholders' Agreement and the additional fact that the Defendant, Giordano, is the only party that had demanded arbitration, the Plaintiffs' believe they have done more than they were required to do under the Court's order, absent further direction or clarification by the Court.

7. It is the Defendant who has failed to comply with the direction and spirit, if not express language, of both this Court's Orders (September 29, 2006 and November 21, 2006). The only thing the Defendant has done is to demand that the Plaintiffs to continue to carry the burden of the arbitration only Giordano demanded, while Giordano continues to obtain, hold and convert all of the NTI contract proceeds due DMS and McUmber.

8. *James*, like all the cases cited by the Defendant to support his claim for dismissal, **with prejudice**, involves a substantial period of neglect, delay and confusion by the plaintiff, James. In *James*, for example, the Plaintiff attended two status conferences after arbitration was ordered, but failed to show any intent to proceed to arbitration. Almost a year after the order to arbitrate, James filed a Motion to Reconsider the Court's order compelling arbitration and also sought to change the venue of the case. After the court denied James' motion to reconsider as untimely, and without merit, the Court indicated that James did not appear willing to submit her claims to arbitration as required under a mandatory arbitration clause. The Court gave James one week to show cause why her case should not be dismissed. Three weeks later James filed another motion to reconsider. Only then did the court dismiss the case. It is obvious from the record in *James* that the Plaintiff did not have the funds to proceed with arbitration and was delaying in the apparent hope an alternate forum would become available.

9.  The cases cited by the Defendant  do not support dismissal under the circumstances of this case, even if the Defendant is correct that it is the Plaintiffs' responsibility to commence arbitration.   Indeed, the Plaintiffs could find no case which supported the conclusion that the failure to promptly file an arbitration under a non-mandatory arbitration clause was the basis for dismissal, let alone dismissal with prejudice.

10.  In his Opposition, the Defendant could find no D.C. cases supporting his position. The only D.C. case the Defendant cited, *Ames v. Standard Oil Co.*,[2] is factually distinguishable from the instant case.  *Ames*  also involves a mandatory arbitration clause. The Plaintiffs discussed Ames in their Memorandum in Opposition to the Defendant's Motion to Dismiss. Unable to find a D.C. Circuit case, or a case from any Circuit which supports his Motion, the Defendant relies on *Gonino v. Unicare, Inc.*[3] a case decided by the Northern District of Texas and not binding on this Court.  More importantly, the Fifth Circuit law upon which *Gonino* is decided does not support the Defendant's position. *Gonino* is a case involving a mandatory arbitration clause.  The Plaintiff, in that case, failed to commence arbitration for more than eighteen months after he was ordered to do so.  The case was 29 months old when it was finally dismissed.

10. In the Fifth Circuit, when considering whether to dismiss a case for lack of prosecution, a district court must weigh the court's need to manage its docket, the public interest in expeditious resolution of the litigation, the risk of prejudice to defendants from the delay, and the policy favoring disposition of cases on their merits.  *Morris v. Morgan Stanley & Co.,*  942 F.2d 648, 651 (9th Cir. 1991); *Citizens Utilities Company v. American Telephone & Telegraph*

---

[2] 108 F.R.D. 299 (D.D.C. 1985).
[3] *Gonino v. Unicare, Inc.*. 2005 WL 608158 (N.D. Tex. 2005)

**Company,** 595 F.2d 1171, 1174 (9th Cir.), **cert. denied**, 444 U.S. 931, 62 L. Ed. 2d 188, 100 S.

Ct. 273 (1979). In the case at bar, there is no prejudice to the Defendant from any delay.  In fact,

delays mean that the Defendant continues to act, unfettered, in his attempts to retain and convert

the funds and assets of the Plaintiffs and their business (the NTI subcontract).  The Plaintiffs

assert that the Court's policy of favoring disposition of cases on their merits controls, so that

appropriate relief should be granted consistent with the Plaintiffs' Motion to assure that this case

proceeds without any confusion by the parties as to their rights and obligations.  Moreover, it is

imperative that the Plaintiffs' Motion seeking permission to add NTI and Abbate as defendants

is granted.  It is clear that Abbate is acting upon express direction from Giordano. Without the

involvement of Abbate and NTI in this litigation, all of the issues concerning the NTI

subcontract and the disposition of the subcontract proceeds cannot be finally determined.

11.   The Fifth Circuit also determined, that only an "unreasonable" delay will support a

dismissal for lack of prosecution. **Ash v. Cvetkov,** 739 F.2d 493, 496 (9th Cir. 1984)**,** *cert.*

*denied*, 470 U.S. 1007, 84 L. Ed. 2d 387, 105 S. Ct. 1368 (1985); **Nealey v. Transportacion**

**Maritima Mexicana, S.A.,** 662 F.2d 1275, 1280 (9th Cir. 1980**)**; 9 CHARLES A. WRIGHT &

ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2370 at 357-64 (2d ed.

1995). A delay is unreasonable if there is a significant period of total inactivity by the plaintiff,

the plaintiff fails to adhere to repeated warnings that a dismissal will result from continued

failure to proceed, or the plaintiff fails to obey court rules and court orders**.** **Ramsay v. Bailey,**

531 F.2d 706, 708-09 (5th Cir. 1976**)**, **cert. denied,** 429 U.S. 1107, 51 L. Ed. 2d 559, 97 S. Ct.

1139 (1977).  Here the only inactivity (other than the continued conversion of the Plaintiffs'

assets and business) is by the Defendant.  The Plaintiffs have supported the subject subcontract

(now benefiting only the Defendant, Giordano and NTI) despite receiving no income or

compensation for doing so. They have contacted the AAA and prepared the papers necessary to commence arbitration and they have contacted the Defendant with respect to the joint filing of an arbitration in accordance with this Court's Order. That contact, however, was rebuffed by the Defendant. There has been no warning about an intended dismissal, and no lack of compliance with court rules or orders.

13. The Fifth Circuit has held a delay to be unreasonable when the plaintiff did not file any pleadings within a twenty-two **[*5]** month period. ***Harrelson v. United States,*** 613 F.2d 114, 116 (5th Cir. 1980). Although an exact time period has not been established for determining when a delay is unreasonable, even a relatively brief period of delay is "sufficient to justify the district court's sending a litigant to the back of the line." ***Ash, 739 F.2d at 497***. However, in ***Ash*** the Ninth Circuit was critical of the short period of delay asserted by the trial court as grounds for dismissal. The Ninth Circuit reluctantly acceded to the trial court's discretion, noting that "the **dismissal in this case was without prejudice** giving the plaintiff an [*497] opportunity to return and prosecute his claims another day." (emphasis added). ***Id.*** Although a dismissal without prejudice is not entirely without danger to the rights of the plaintiff, as for example when statute of limitations or service of process problems are present, we find that dismissal without prejudice is a more easily justified sanction for failure to prosecute. The Court of Appeals also noted that "Ash was notified of the impending dismissal and given an opportunity to preserve his action by explaining the delay and going forward with the case." ***Id.*** Only thereafter was the Ash's case dismissed (without prejudice).

14. Thus, it clear from the above discussion that not even the 7th Circuit (***James***), or the 5th Circuit (***Gonino***) support the Defendant's wishful contentions. This District and Circuit clearly do not as the Plaintiffs have pointed out in their Opposition to the Defendant's Motion.

15. In one final bald statement, the Defendant accuses the Plaintiffs of hiding what the Defendants terms "defalcations" although they are not identified. In the meantime, however, the Plaintiffs have identified that the Defendant has stolen funds belonging to both DMS and McUmber, has refused to account for those funds, has opened up an unauthorized bank account in the name of DMS and has conducted an illegal shareholders meeting. The Defendant and NTI continue to withhold subcontract documents from the Plaintiffs. The Defendant and NTI have also made written representations to GSA regarding DMS but have also refused to even let DMS see those documents.

16. The Plaintiffs assert that the Defendant's Motion to Dismiss lacks merit, is an attempt to obfuscate the real issues in this case and should be ignored by this Court.

17. Since no party has opposed the relief requested in the Plaintiffs' Motion, the Plaintiffs respectfully request that their Motion seeking permission to add NTI and Abbate as Defendants be granted pursuant to Fed. R. Civ. P 19 and 20. The Plaintiffs also request that this Court grant additional relief in the form of a Show Cause Order or Orders and/or Injunctive Relief, as set forth in the Plaintiffs' Motion.

WHEREFORE, the Plaintiffs pray for an Order granting the relief set forth in the Plaintiffs' Motion pending herein and for such other and further relief as may be just and proper.

Dated: March 19, 2007                                    HUGHES & BENTZEN, PLLC

By:     /s/Philip J. McNutt       
        Philip J. McNutt
        Federal Bar No. MD08555
        DC Bar No. 491258
        1100 Connecticut Avenue, NW
        Suite 340
        Washington, D.C.  20036
        Tel: (202) 293-8975

        Attorneys for Plaintiffs

## REQUEST FOR HEARING

The Plaintiffs request a hearing on all pending Motions.

         /s/ Philip J. McNutt      
        Philip J. McNutt

## Certificate of Service

I hereby certify that a copy of the foregoing Memorandum was served electronically on the 19th Day of March, 2007 on counsel below and by regular, first class  mail, postage prepaid, to the Defendant, Anthony Watson, as follows:

Electronically:

      David Bledsoe, Esquire

      and

      John W. Thomas, Esquire

First Class Mail:

      Anthony Watson
      303-F Holden Green
      Cambridge, MA 02138

 /s/Philip J. McNutt
Philip J. McNutt